IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
— — —

KENNETH HASSON, et al.          :   Civil Docket 23-CV-5039
                                :
            v.                  :
                                :
COMCAST CABLE COMMUNICATIONS, LLC  :
D/B/A XFINITY                   :
CITRIX SYSTEMS, INC.            :   Pretrial Conference

─────────────────────────────────────────────────

BEFORE THE HONORABLE JOHN M. YOUNGE

─────────────────────────────────────────────────

                            James A. Byrne U.S. Courthouse
                            601 Market Street
                            Philadelphia, PA 19106
                            May 14, 2024 at 10:00 a.m.

─────────────────────────────────────────────────

APPEARANCES:

FOR THE MAJORITY PLAINTIFFS:        GARY F. LYNCH, ESQUIRE
                                    Lynch Carpenter, LLP
    NORMAN E. SIEGEL, ESQUIRE       1133 Penn Avenue, 5th Floor
    Stueve Siegel Hanson, LLP       Pittsburgh, PA 15222
    460 Nichols Road, Suite 200     Gary@lcllp.com
    Kansas City, MO 64113
    Siegel@stuevesiegel.com


FOR DEFENDANT COMCAST:              PAUL BOND, ESQUIRE
                                    HYUN YOON, ESQUIRE
                                    Holland & Knight, LLP
                                    1650 Market Street, Suite 3300
                                    Philadelphia, PA 19103
                                    Paul.bond@hklaw.com

                                    MARK MELODIA, ESQUIRE
                                    Holland & Knight, LLP
                                    787 Seventh Avenue, 31st Floor
                                    New York, NY 10019
                                    Mark.melodia@hklaw.com

                        * * *
            Bobbie J. Shanfelder, RDR, CRR
                  Official Court Reporter
        Bobbie_Shanfelder@paed.uscourts.gov

APPEARANCES CONTINUED:

FOR DEFENDANT CITRIX:

    W. KYLE TAYMAN, ESQUIRE
    Goodwin Procter, LLP
    1900 N Street NW
    Washington, DC 20036
    ktayman@goodwinlaw.com

COUNSEL FOR PLAINTIFF:

JOHN MACORETTA, ESQUIRE
DIANA ZINSER, ESQUIRE
Spector Roseman & Kodroff, P.C.
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Jmacoretta@srkattorneys.com
Dzinser@srkattorneys.com
    For Plaintiff Roseman

JAMES FRANCIS, ESQUIRE
Francis Mailman Soumilas, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Jfrancis@consumerlawfirm.com
    For Plaintiff Nanez

JOE LENISKI, JR., ESQUIRE
Herzfeld, Suetholz, Gastel
223 Rosa L. Parks Avenue
Suite 300
Nashville, TN 37203
Joey@hsglawgroup.com
    For Plaintiff Werner

AMANDA FIORILLA, ESQUIRE
Lowey Dannenberg, P.C.
44 South Broadway
White Plains, NY 10601
Afiorilla@lowey.com
    For Plaintiffs Remark and Keung

RYAN CLARKSON, ESQUIRE
Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
rclarkson@clarksonlawfirm.com
    For Plaintiff Prescott

MARK DAVID MCPHERSON, ESQUIRE
Goodwin Procter, LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
mmcpherson@goodwinlaw.com

CHARLES SCHAFFER, ESQUIRE
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
cschaffer@lfsblaw.com
    For Plaintiff Andros
    For Plaintiff Birnie

E. MICHELLE DRAKE, ESQUIRE
Berger Montague, P.C.
1229 Tyler Street NE
Minneapolis, MN 55413
emdrake@bm.net
    For Plaintiff Estevez
    For Plaintiff Wiley

KEVIN LAUKAITIS, ESQUIRE
Laukaitis Law, LLC
954 Avenida Ponce De Leon
San Juan, PR 00907
klaukaitis@ecf.courtdrive.com
    For Plaintiff Hendrickson
    For Plaintiff Verdier

MATTHEW LINES, ESQUIRE
Isicoff Ragatz
601 Brickell Key Drive
Miami, FL 33131
lines@irlaw.com
    For Plaintiffs Diamond,
              Elson, and Zinn

LEE ALBERT, ESQUIRE
Glancy, Prongay & Murray
230 Park Avenue, Suite 530
New York, NY 10169
lalbert@glancylaw.com
    For Plaintiff Zagacki

1   (Tuesday, May 14, 2024 at 10:00 a.m.)

2           THE COURT:  I am Judge John Milton Younge.  You all may

3   be seated.  I actually thought there would be more people here.

4   I am thoroughly disappointed.  I thought there would be 50 or 70

5   attorneys here.  All right.  This is a class action lawsuit or

6   class action of class action involving Comcast and Citrix.

7           Comcast is the owner and operator of Xfinity which

8   provides Internet and cable services and is the holder of the

9   personally identifiable information that was accessed in a data

10  breach.  Citrix is a technology services company that created the

11  software product used by Comcast that allegedly has an

12  exploitable vulnerability.

13          On October 10, 2023, as I understand it, Citrix, which

14  is the creator of the cloud software used by Comcast, announced a

15  security vulnerability that is now referred to as the Citrix

16  bleed.  Between October 16 and October 19th of 2023, hackers

17  allegedly exploited what Plaintiffs identify as a critical-rated,

18  unpatched security vulnerability to access the personally

19  identifiable information of allegedly 36 million Xfinity

20  customers.

21          This vulnerability had allegedly been actively

22  exploited at other companies since August 2023.  Allegedly the

23  personally identifiable information at issue included user names,

24  passwords, names, contact information, the last four digits of

25  social security numbers, dates of birth, security questions as

1    well as answers.

2           Customers were notified of the data breach starting on

3    December 8 of 2023, and the first related complaint was filed on

4    December 19 of 2023.  Certain complaints argue that this notice

5    was insufficient alleging that it neglected to include details

6    regarding the number of impacted persons, the personally

7    identifiable information actually obtained, and which product

8    contained the vulnerability, among others.

9           There are currently 26 cases that we know of or that

10   will be a part of this litigation.  25 of them have been

11   consolidated.  The main one, that is 24-CV-1701, was recently

12   transferred from Florida and is expected to be consolidated.  And

13   I expect it already has been consolidated.

14          Cause of actions generally against Comcast are

15   negligence, negligence per se, breach of implied contract, unjust

16   enrichment; against Citrix, negligence, negligence per se, breach

17   of third-party beneficiary contract, and unjust enrichment.

18          Present with me today are my law clerks Maya Bradley,

19   Jamie Camp, and Erika Vasant.  Mr. Campoli is the court officer

20   here.  That is the overview.  Judge Goldberg entered an order on

21   the 27th day of March ordering that the cases were consolidated

22   before me for purposes of addressing common issues of law and

23   fact prior to trial.

24          Before we get started, I am going to ask Mr. Campoli to

25   call the roll of the Plaintiffs' cases as we know it.  First, I

will identify the defense since it's only one of you.  One

Defendant.  You all can identify yourselves for the record.

MR. BOND:  Your Honor, Paul Bond for Comcast from

Holland & Knight.

MR. MELODIA:  Mark Melodia from Holland & Knight also

for Comcast.

MR. YOON:  Eric Yoon also from Holland & Knight on

behalf of Comcast.

MR. MCPHERSON:  Good morning, Your Honor.  Mark David

McPherson from Goodwin Procter on behalf of Citrix.

MR. TAYMAN:  Good morning, Your Honor.  Kyle Tayman

from Goodwin Procter also on behalf of Citrix.

THE COURT:  I know we don't normally identify the

defense first, but it's easier since there is just one Defendant

and you all are representing both Defendants; that is, Comcast

and Citrix.

Mr. Campoli, go down the line.  And when he calls your

case name, I would like you to rise and give us your name as to

who is representing this case, the Plaintiff in this case.

THE DEPUTY CLERK:  Counsel, please identify yourself in

the matter of Hasson versus Comcast, Civil Action 23-5039.

MR. LYNCH:  Good morning.  Gary Lynch on behalf of

Kenneth Hasson.  We are also here to speak on behalf of 23 of the

25 cases.

THE COURT:  I understand.  Just bear with me.  I like

1    the fact that you guys are so well organized, but let me do this.
2    Okay?  All right.
3              THE DEPUTY CLERK:  Prescott versus Comcast, 23-5040.
4              MR. CLARKSON:  Good morning.  Ryan Clarkson of the
5    Clarkson Law Firm appearing on behalf of Plaintiff Prescott.
6              THE DEPUTY CLERK:  Hendrickson versus Comcast, 23-5072.
7              MR. LAUKAITIS:  Good morning, Your Honor.  Kevin
8    Laukaitis, Laukaitis Law, on behalf of Plaintiff.
9              THE DEPUTY CLERK:  Wilson versus Comcast, 23-5091.
10             THE COURT:  No one is here for that, Wilson versus
11   Comcast.  Continue.
12             THE DEPUTY CLERK:  Nanez versus Comcast, 23-5092.
13             MR. FRANCIS:  Good morning, Your Honor.  Jim Francis on
14   behalf of the Plaintiff from Francis Mailman Soumilas.
15             THE DEPUTY CLERK:  Keung versus Comcast, 23-5110.
16   Verdier versus Comcast, 23-5137.
17             MR. LAUKAITIS:  That's me again, Your Honor.  Kevin
18   Laukaitis, Laukaitis Law, on behalf of Plaintiff.
19             THE COURT:  Thank you, sir.
20             THE DEPUTY CLERK:  Andros versus Comcast, 24-68.
21             MR. SCHAFFER:  May it please the Court?  Charles
22   Schaffer, Levin Sedran & Berman, Your Honor.
23             THE COURT:  Good morning.
24             THE DEPUTY CLERK:  Smith versus Comcast, 24-258.
25             MR. SIEGEL:  Good morning, Your Honor.  Norman Siegel,

1   Stueve Siegel Hanson, LLP in Kansas City for Plaintiff Smith.

2           THE COURT:  Good morning.

3           THE DEPUTY CLERK:  Roseman versus Comcast, 24-271.

4           MR. MACORETTA:  Good morning, Your Honor.  John

5   Macoretta from Spector Roseman & Kodroff here for Robert Roseman.

6           MS. ZINSER:  Good morning, Your Honor.  Diana Zinser

7   from Spector Roseman & Kodroff also on behalf of Plaintiff

8   Roseman.

9           THE DEPUTY CLERK:  McCauley versus Comcast, 24-280.

10  Munoz versus Comcast, 24-425.  Zagacki versus Comcast, 24-507.

11          MR. ALBERT:  Good morning, Your Honor.  Lee Albert from

12  the offices of Glancy, Prongay & Murray here for Mr. Zagacki.

13          THE COURT:  Thank you.

14          THE DEPUTY CLERK:  Werner versus Comcast, 24-599.

15          MR. LENISKI:  Good morning, Your Honor.  Joe Leniski,

16  Herzfeld, Suetholz, Gastel, Leniski and Wall in Nashville, on

17  behalf of Plaintiff Werner.

18          THE DEPUTY CLERK:  Durham versus Comcast, 24-639.

19          MR. SCHAFFER:  Charles Schaffer, Your Honor, Levin,

20  Sedran & Berman for the Plaintiff.

21          THE COURT:  Good morning, sir.

22          THE DEPUTY CLERK:  Remark versus Comcast, 24-793.

23          MS. FIORILLA:  Good morning, Your Honor.  Amanda

24  Fiorilla.

25          THE COURT:  I thought no one was coming.

    1           MS. FIORILLA:  Good morning, Your Honor.  Amanda

    2    Fiorilla from Lowey Dannenberg.

    3           THE COURT:  Thank you.

    4           THE DEPUTY CLERK:  Estevez versus Citrix Systems,

    5    24-800.

    6           MS. DRAKE:  Good morning, Your Honor.  Michelle Drake

    7    from Berger Montague on behalf of Plaintiff Estevez.

    8           THE COURT:  Good morning, ma'am.

    9           THE DEPUTY CLERK:  Carey versus Citrix Systems,

  10    24-1050.  Carey?

  11           Metzger versus Comcast, 24-1051.

  12           Clark versus Citrix Systems, 24-1128.

  13           Goodrow versus Citrix Systems, 24-1129.

  14           Nunn versus Citrix Systems, 24-1130.

  15           Wiley versus Citrix Systems, 24-1198.

  16           MS. DRAKE:  Your Honor, Michelle Drake.  That's also my

  17    case.

  18           THE COURT:  Yes, ma'am.  Good morning.  Thank you.

  19           THE DEPUTY CLERK:  Birnie versus Citrix Systems,

  20    24-1201.

  21           MR. SCHAFFER:  Charles Schaffer, Levin Sedran & Berman

  22    for the Plaintiffs, Your Honor.

  23           THE COURT:  Thank you.  Thank you, Mr. Campoli.

  24           To my notes, there's no counsel here for Wilson versus

  25    Comcast, Keung versus Comcast, McCauley versus Comcast, Munoz

1    versus Comcast, Carey versus Citrix, Metzger versus Comcast,

2    Clark versus Citrix, Goodrow versus Citrix, and Nunn versus

3    Citrix.  It's quite possible they have already made arrangements

4    with you -- I'm sorry.  Were you one of those cases?

5            MR. LINES:  No, Judge, but the recently transferred

6    case of Diamond --

7            THE COURT:  You are a little faster than me.  Remember

8    I said stay with me.  If I am in a Baptist church, I would say,

9    turn to your neighbor; he knows where he's going.  I know where I

10   am going.  I am only saying that these cases there's no attorney

11   that has raised their hand indicating that they are here for that

12   case.  Next I am -- I'm sorry, ma'am?

13           MS. FIORILLA:  Hi, Your Honor.  There's another case

14   Keung versus Comcast.  It's 5039.  I don't believe it was called.

15   I am also --

16           THE COURT:  We did mention Keung.  5110.  Is there

17   another Keung?

18           MS. FIORILLA:  I have 5039.

19           THE COURT:  I think that's the overall number.

20           MS. FIORILLA:  I apologize, Your Honor.  I am also here

21   on behalf of Plaintiff Keung.  My colleague Amber Schubert is

22   also involved in that case, but she could not be here today.

23           THE COURT:  Which one are you talking about?

24           MS. FIORILLA:  The Keung case.

25           THE COURT:  Yes.  I think Judge Goldberg consolidated

1    all of them under that docket number, 5039, which is Hasson, the

2    original number.  But all of them are consolidated under that

3    one.  Now, are there any other cases that are not reflected in

4    the list that I just called?  Now, sir.

5          MR. LINES:  Judge, good morning.  Matt Lines with

6    Isicoff Ragatz in Miami on behalf of Diamond, Elson, and Zinn

7    which was recently consolidated May 1st of this year.

8          THE COURT:  Very well.  And I am sure it will be on the

9    docket soon if it's not already.

10         MR. LINES:  Yes, Judge.

11         THE COURT:  Before we start going through our agenda, I

12   want to remind everyone about the rules.  And the rules that I

13   follow are rules of civility that are constantly in play

14   including expectations by the Court of transparency, candor, and

15   above all a rule of reasonableness.  That is, the Court expects

16   you to act reasonably even if there's no guideline in place.

17         Just be reasonable.  I am sure we can work out whatever

18   it is that needs to be worked out.  Because of the size of this

19   case and the number of lawyers, I want to put you on alert right

20   from the start.

21         The Court will respond very strongly to conduct that is

22   violative of these rules.  In other words, in the words of that

23   great prophet Rodney King, can't we all just get along?  I assure

24   you, I expect us to get along.

25         Now, there are competing motions for appointment of

lead counsel.  And I have to tell you all I got the status report from the majority Plaintiffs, and I said to myself, this is too easy.  I don't trust this.  This is this number of attorneys.  I just don't trust it.

I looked sideways at it and I said, all right, we will see.  There's a majority Plaintiffs' motion, and then there's another motion by Mr. Macoretta.  And I wanted to hear from all of you all, but first the majority Plaintiffs' motion which I understand is 23 out of the 24 cases.  But you didn't get the guy that just came in.  He's not on your slate yet, is he?

MR. LYNCH:  Your Honor, actually, he is.  I can't explain the missing case.  I can probably go through the roster again and try to find it.

THE COURT:  We can deal with that.  But your motion?

MR. LYNCH:  Yes, Your Honor.  Thank you.  Your Honor, if I could right at the outset try to explain exactly why you were looking at that status report sideways.  I think I have an explanation.

I think it's resolved of what's been a proliferation of data breach litigation in the last several years.  And in the consequence of that, there's been a bar that has been created within the Plaintiffs' bar that deals with those kinds of cases.

And so we have had to deal with each other from case to case, particularly on the larger cases like this one.  And we have been thrust into that environment and we have learned to

1    collaborate and work together as a result of it.  So I totally
2    understand the Court's slight cynicism looking at a
3    prepackaged --
4                THE COURT:  I am actually hopeful.  But like I said, I
5    learn never to trust it.  So --
6                MR. LYNCH:  I totally understand that, Your Honor.  And
7    I am here to tell you that there is cause for hope and because we
8    do have a history and there is a history of self-organizing
9    leaderships of these types of cases and falling in behind chosen
10   co-leads from case to case.
11               It's not always me.  It's not always Mr. Siegel, to my
12   left, but from case to case depending on the different cases,
13   where the case is located, what the factors are, we are able,
14   almost every time, to come to some consensus on leadership.  And
15   basically, Your Honor, that's what we have tried to do here.
16               And it wasn't initially just about who is going to lead
17   the case.  Initially, it was about where's the case going to be
18   litigated.  And we filed a petition with the JPML because we
19   didn't understand at the time that it was going to be exclusively
20   Comcast that was subjected to the Citrix bleed in resolving
21   litigation.
22               It turned out that's the case.  It's only Comcast.
23   Other companies had the vulnerability as well but they patched it
24   apparently on time not to generate any litigation as a result of
25   the Citrix bleed.

1        Because of that, we started then to work with all

2   counsel to try to see if 1404 would work for transfer purposes up

3   to this Court rather than let the panel address it.  That's the

4   panel's preference in every petition we have ever had in front of

5   it.  I think it's the preference here.

6        And they ultimately, because there was either dismissal

7   or transfer of the initial cases that were identified in the

8   petition, the panel actually dismissed it on its own because they

9   didn't have two different District Courts in play anymore, at

10  least with the initial cases.

11       That left several cases, though, in other District

12  Courts, Florida primarily, but other District Courts around the

13  country that Mr. Siegel and I then went out and talked to the

14  Plaintiffs' counsel and tried to convince everybody to use

15  Section 1404 transfer.

16       We were able to accomplish that.  We don't need a JPML

17  order now.  We don't need a transfer order.  We were able to

18  accomplish getting these cases all consolidated and transferred

19  into this court.

20       We then moved for consolidation in front of you, Your

21  Honor.  So there are a lot of cases.  There are a lot of lawyers.

22  There's no doubt about that.  We have worked really hard to try

23  to create a consortium here and a structure that everybody can

24  agree to.

25       THE COURT:  Let me ask you this, counsel, before you go

1  any further.  The cases where I noted there was no lawyer

2  present, are you here standing today on behalf of those lawyers?

3  In other words, did they alert you that they were not going to be

4  here?

5  MR. LYNCH:  I wasn't alerted about everybody not being

6  here to a person, but I am here on behalf of all of those cases,

7  so yes.

8  THE COURT:  All right.  Continue.

9  MR. LYNCH:  We have assembled, Your Honor, through this

10  process of trying to force a compromise, facilitate a compromise,

11  to coordinate the case among all these Plaintiffs' lawyers.  We

12  have assembled what we think is basically an all-star team of

13  lawyers that do this type of work.

14  And there is some specialty to it, candidly.  There's

15  particular knowledge that's based on having to work with the

16  experts both in terms of how the cases transpired; in other

17  words, how the breach occurred but also dealing with experts in

18  terms of damage theories.  And it all intertwines with ultimately

19  class certification which can be a hurdle in these cases.

20  From having done those cases over the last decade, I

21  myself, I know Mr. Siegel, we have devoted our careers to it.

22  That's all we work on.  Privacy of data breach cases for the last

23  decade.  And really it started with the Target data breach so

24  many years ago.

25  Most of the other lawyers in this group that we have

assembled and we have worked with to put that leadership slate in front of you, Your Honor, they also have devoted a substantial part, if not an exclusive part, of their careers to doing data breach litigation.

So when I tell you we have an all-star team of lawyers that know how to conduct discovery in these cases, know how to deal with the experts in these cases, know how to negotiate settlements in these cases, know how to structure those settlements, Mr. Siegel, I will let him toot his own horn, Your Honor. But I do want to get one toot in. Nobody has settled more of these cases on a large scale than Mr. Siegel in terms of coming up with creative --

THE COURT: Have any been tried?

MR. LYNCH: I have never tried a data breach case, but I have tried class action.

THE COURT: Data breach.

MR. SIEGEL: No, Your Honor, not yet. Some are getting close perhaps.

MR. LYNCH: Not yet. Oftentimes they will settle after the discovery, Your Honor, and sometimes either before or shortly after class certification. And I think my experience is in doing class work before I started to focus on data breach is the reason they settle instead of try is that the stakes are ratcheted up too high once there's a class certification order.

I have one. I have had one class action trial. It was

1    actually in front of Judge Brody in this courthouse.  But aside

2    from that, we have worked.  We have coordinated.  We have --

3           THE COURT:  Have there been any cases where the Court

4    did not certify the class?

5           MR. LYNCH:  I have not been involved in one where

6    certification wasn't achieved, and the question hasn't been put

7    to too many Courts.  There have been some certification decisions

8    that have come down.  A lot of them resolve even before that

9    issue because that's a high stakes game for the Defendant.

10           Once the certification order is entered, the stakes are

11    ratcheted up so high that it creates too much leverage for the

12    Plaintiffs, I believe.  I am not here to tell them their job.

13    But that's my assessment of it.  I think they try to avoid that.

14           THE COURT:  I am looking at their faces.  They are

15    saying, no, that's not it at all.  They are not scared at all.

16           MR. LYNCH:  So Your Honor, our credentials in terms of

17    our actual history and doing this work and our experience both

18    from Mr. Siegel and myself and the others of our proposed PSC,

19    they are all in the papers.  And I can go through all of that.

20           Largely I am here to emphasize for you that we have

21    worked.  We have achieved that consensus.  I don't think the

22    Court should have any concerns about it.  And I base that on the

23    history of working with these people in the past and our ability

24    to successfully represent Plaintiffs in these types of cases in

25    the past and work collaboratively with groups this size.

1        We have really tight protocols in terms of billing and

2    timekeeping and authorization to do work.  We have never had an

3    issue with any Court telling us that we have kind of bled it too

4    much in terms of the billing and not managing the work properly.

5    We have done it successfully time and again.

6        And unless the Court has any other questions, that's

7    primarily what I wanted to say.

8        THE COURT:  I am going to hear from the competing

9    proposal.  I'm sorry.  You want to say something?

10       MR. SIEGEL:  Do you mind if I tag team for a few

11   minutes, Your Honor, on the motion?

12       THE COURT:  No, I don't.

13       MR. SIEGEL:  Can I use the lectern?

14       THE COURT:  Certainly if you like.

15       MR. SIEGEL:  May it please the Court?  Norm Siegel.  I

16   am the second proposed co-lead counsel with Mr. Lynch in the

17   majority Plaintiffs' group.  I just wanted to fill in on some of

18   the questions the Court had.

19       First the organization.  What we put before the Court

20   were efforts even prior to the first case management order the

21   Court entered of Mr. Lynch and I talking to all of these folks

22   and the ones that are not in the courtroom who in some cases

23   agreed to step back, not seek any position at all.

24       Many of these folks in the courtroom have led other

25   data breach cases as lead counsel and agreed to step back to a

1   Plaintiff steering position.  We obviously communicated with

2   Mr. Macoretta and his firm about joining this group and others

3   that we couldn't convince to come in the group at that time.

4          So when we filed our original motion, there were four

5   people that had filed separately.  Your Honor issued your order

6   number 1, and we went back to work.  And we spoke to all of them.

7   We had a very productive conversation with Mr. Macoretta.  But

8   his view was there should be another lead.

9          Our view, as we reflected in our updated papers, is

10  that given the number of people that had stepped back off of

11  leadership, we just felt it was fundamentally unfair to do that.

12  But I want to be clear that it is no disrespect to Mr. Macoretta

13  or his firm at all.

14         And as we put in our papers, we would welcome him on

15  the PSC which would create a unified leadership for this case.  I

16  do want to give the Court a little more perspective on these

17  larger data breach cases.

18         THE COURT:  Hold on before you do that.

19         MR. SIEGEL:  Yes, Your Honor.

20         THE COURT:  I am glad you mentioned that.  On the

21  docket, that's ECF Number 20.  There's a motion to appoint

22  counsel from Todd Garber.

23         MR. SIEGEL:  Yes, Your Honor.

24         THE COURT:  Is Todd Garber here?

25         MR. SIEGEL:  I understood he was going to be present,

1    but he's not here.

2           THE COURT:  He's not here.

3           MR. MACORETTA:  Your Honor, I spoke to him last week.

4    I think he was planning to not be here today.

5           THE COURT:  As I understand it, he is withdrawing his

6    motion or at least he's agreeing to work with you and Mr. Siegel.

7           MR. SIEGEL:  With me and Mr. Lynch.  That's right.

8           THE COURT:  And then there's the ECF Number 21.  That's

9    Mr. Macoretta's motion, and I will hear from you shortly.  22 is

10   your motion for the majority Plaintiffs.

11          MR. SIEGEL:  Correct.

12          THE COURT:  ECF Number 23, Joe Leniski, Peter Jannance,

13   and Patrick Howard.  Are they here today?

14          MR. LENISKI:  Yes, Your Honor, Mr. Leniski.

15          THE COURT:  And Mr. Leniski, you agree you are now

16   working with Mr. Lynch and Mr. Siegel?

17          MR. LENISKI:  That's correct, Your Honor.

18          THE COURT:  Very well.  Thank you.  And then there's

19   the motion of ECF 24, Amber Schubert of Schubert Jonckheer &

20   Kolbe.

21          MS. FIORILLA:  Your Honor, Ms. Schubert couldn't be

22   here today.  She told me to pass along --

23          THE COURT:  It was too difficult to try to do anything

24   by video which would create all kinds of problems.  Her motion is

25   Number 24.  And it's my understanding that you all are working

1    with the majority Plaintiffs' group.

2         MS. FIORILLA:  Yes, Your Honor.

3         THE COURT:  Very well.  That just leaves the ECF 21 and

4    I will hear from them shortly.  Continue.

5         MR. SIEGEL:  Thank you, Your Honor.  So you brought us

6    up to present day with the modified motion and the attached order

7    as Exhibit B to our status report.  That includes the structure.

8    That includes everybody as reconstituted as the majority

9    Plaintiffs' group.  You had asked some questions about data

10   breach litigation generally.  As Mr. Lynch referenced --

11        THE COURT:  You may regret that you came up here.

12        MR. SIEGEL:  Hit me, Judge.  Whatever you got.

13        THE COURT:  Now that I have you, it's my understanding

14   that you all are using or at least it's a negligence per se

15   standard, common law negligence standard to be litigated as well

16   as breach of implied contract and unjust enrichment.

17        MR. SIEGEL:  That's right.

18        THE COURT:  Those are the issues.  Generally speaking,

19   how have you all been able to prove damages?

20        MR. SIEGEL:  Good question.

21        THE COURT:  Considering that if someone is hacked, how

22   do they know where it came from?

23        MR. SIEGEL:  Good question.  So Judge, this is an issue

24   typical in most data breach cases.  The case I litigated in this

25   Court in front of Judge Pappert is called Clemens versus

ExecuPharm.  That was a case that was dismissed on standing grounds because of the claim at the time, Post-TransUnion, which was a Supreme Court case that talked about the standing in these cases and whether what harm has to be suffered to state a claim.

That went up to the Third Circuit.  My firm argued successfully.  Got it reversed.  But it really set the standard for pleading to establish standing not only in the Third Circuit but as the first appellate case following TransUnion across the country in data breach cases.

So to directly respond to your question, how people are impacted by data breaches can vary.  But in this case, as in most of these cases where these common law claims are brought, you have a variety of common law damages that would flow from a breach of the duty.

So, for example, I was lead counsel in the Capital One data breach litigation that had 75 million Plaintiffs, so another case with tens of millions of Plaintiffs.  This was an MDL in front of Judge Trenga in the Eastern District of Virginia.  That case advanced through class certification.  Never got a ruling because it settled after that.

But we litigated summary judgment and these damages theories.  Among the damages theories that we developed in that case were all of these people are at risk and additional risk, imminent risk of harm as a result of this breach.

One of the ways you can calculate the harm on a

class-like basis is to put these people in the position they would have been in but for the breach. Which is the best way to do that is a product that allows each class member to monitor their data, to monitor whether they have been subject to a fraudulent account opening, the types of straight-up fraud that can happen when this information is leaked.

And so there are products out there that provide for that service, that provide a remedy and an insurance product attached to it. And then you can quantify that, bring that to present value as a class-wide damage. That is one way.

THE COURT: You don't believe that you all have to prove actual loss?

MR. SIEGEL: That is actual loss, Judge. I am looking forward to this argument. We have mixed this up quite a bit.

THE COURT: Maybe I am not using the proper language. When I say actual loss, I mean --

MR. SIEGEL: Out-of-pocket loss.

THE COURT: You don't have to prove that they have actually lost any money or other things because of the data breach.

MR. SIEGEL: So there are allegations in the underlying complaints that are part of this consolidated action that allege just that. That people are out-of-pocket as a result of fraud caused by this data breach.

You asked the question, I think, in the context of how

do we distinguish this breach from another breach.  I was lead counsel in Equifax.  I was lead counsel which had over 100 million victims.

THE COURT:  That's not actually the question I asked, but I am interested.

MR. SIEGEL:  I'm sorry.  I thought that's the way you framed it.

THE COURT:  No, no.  What I meant was, if someone is hacked and their identities were stolen, how do you prove that it was this breach that caused that?  In other words, there's 1,000 people looking to gain their personally identifiable information every day.  Who knows where it came from?  But your position is, you don't need to go that far.

MR. SIEGEL:  So this is -- it's a question that comes up in a lot of these cases, and it's a defense raised by many of our friends in defense bar in these cases.  And the answer -- and this goes back even to Equifax which was in front of Judge Thrash in the Northern District of Georgia.  This issue was framed just as you posed it.

And the answer is this common law negligence, two potential perpetrators of a harm, Summers versus Tice.  Two shooters.  One victim.  Each of those shooters in Summers versus Tice could be held liable for the victim's harm or damage even though the victim could not establish definitively whether it was Shooter A or Shooter B.  That concept which is grounded in common

1    law, that dates back quite a ways.  It applies to any common law
2    negligence claim like we have here.
3            Our view is, once we are able to establish that the
4    harms that we are going to quantify are tethered to the data that
5    the Defendant compromised in this breach, then it's on the
6    Defendant.  The burden would shift to the Defendant to say it
7    wasn't us, it's not our data, we could not have caused the harm.
8            And that's what we have argued with success in some of
9    these other larger data breach cases.  And I don't want to get
10   too ahead of the Court on the merits.
11           THE COURT:  No, no.  We're not going to.
12           MR. SIEGEL:  I do think this discussion is really
13   important because I think, from our perspective, and I think
14   going back to what Mr. Lynch was articulating in his remarks,
15   this experience over the last 10 years in these cases, we think,
16   matters.
17           And I think the reason our colleagues deferred to us to
18   lead this case, hopefully, if the Court finds our application is
19   in order and the elements of Rule 23(g) which provide what the
20   Court is to consider in appointing lead counsel, they are
21   deferring to us because we have this decades-long experience
22   litigating the exact issues that are at the forefront of the
23   Court's mind.
24           You asked about trials and class certification.
25   Several cases have been certified.  The Marriott data breach case

1    which we are involved in is now on appeal on a Rule 23(f) appeal

2    to the Fourth Circuit on the Trial Judge's certification of that

3    case.

4            The Eleventh Circuit just denied a 23(f) appeal in the

5    certification of a data breach case.  So they are out there.  And

6    Capital One, which is a case I was lead counsel that I mentioned,

7    that advanced quite a ways through all of discovery, experts.

8    And we were very deep into these very damages questions you

9    raised.

10           There's one of the things we also turned to is just

11   straight up application of the restatement to available damages

12   for breach of contract and negligence claims.  And again, the

13   core concept there of putting a Plaintiff back in the position

14   they would have been in but for this breach.

15           We talked to a lot of these victims, Judge, over the

16   last decade.  They spend a lot of time, which is a quantifiable

17   harm, monitoring their credit reports, ensuring they haven't been

18   harmed.  In fact, the Defendant tells them to do that.  If you

19   get a data breach notice, as is the case here with the Defendants

20   here, they told this class we have had a data breach.

21           One of the things you need to do, you can contact the

22   credit reporting agencies but pay attention to your credit

23   reports, your bank accounts.  Spend time monitoring them.  And

24   many Courts have found that time is a quantifiable loss.

25           The damage that might be individualized which I took

 1   from the Court's question is really perhaps what you were
 2   thinking about.  Well, I have an individual one-off harm where I
 3   ended up with a fraudulent mortgage.  I ended up with in medical
 4   cases -- that wouldn't be here.  But you have medical information
 5   compromised.  You might have Medicare or Medicaid fraud.
 6           So where somebody has a unique $10,000 harm, that is a
 7   claim that that person has and can be proved individually at the
 8   conclusion of a class case where class-wide damages are
 9   determined.
10           Finally, the last thing I will say about class-wide
11   damages that every Court that we have presented to accepted is
12   the concept of nominal damages.  And so --
13           THE COURT:  Nominal --
14           MR. SIEGEL:  Nominal damages.  So you meet the other
15   elements of the claim, the damage is assumed under common law.
16   And then, depending on what law is being applied, either the jury
17   decides, the Court may decide what is an appropriate
18   individualized nominal damage.  If it's $10 a head here, it's 400
19   million dollars that would be going to the class.
20           So the damages questions, I think, are top of mind for
21   all of us.  But again, I think the experience you have with the
22   team we have put together that has been working with the experts
23   in this field for the last decade will really benefit the class
24   and ultimately the Court on bringing this case either to
25   resolution or trial.

You asked about trials.  No case has been tried in a class case anyway in the data breach case.  My firm has tried six class actions of other types in the last several years.  So we are certainly looking forward to the day when one of those cases may be tried.  Maybe this is it.  Who knows.

THE COURT:  I also asked the question because for selfish reasons, I guess, about 17 of the cases are my cases and the other 7 are my colleague's cases.  So if there is going to be a trial, it will probably be one of my cases.

MR. SIEGEL:  Right.  I mean, our hope would be we have a process.  And let me just turn to kind of the case management points that Your Honor raised.  And I appreciated the Court's guidance on civility, candor, transparency, and reasonableness.

If you call any of the Judges that I have ever seen, any cases I have led or Mr. Lynch has led, that's what they are going to tell you, I am quite confident.  That's how we have handled ourselves both with the Court but really with opposing counsel, too.

We recognize our job as lead counsel is to not only represent the class and deliver the best result possible through settlement or trial but we are agents of the Court in making a complicated matter as simple as possible.  Try to resolve as many issues as possible without involvement of the Court.  And we are committed to that process, and we started to do it here.

Not trying to get in front of the Court but just in

response to your pretrial order number 1 talking about an initial
schedule, identifying potential discovery issue that may be
before the Court early in terms of the timing for commencement of
the discovery.

But we are 100 percent committed to the notion that
case management needs to be hand-in-hand with our colleagues on
the other side of the V.  And the approach that is guided by
reasonableness is certainly something we can assure the Court we
will do here.  You also asked about how we would assign work.  We
have laid that out in our papers.

THE COURT:  I am going to hold on to that for a second.

MR. SIEGEL:  So Judge, I don't really have anything
further.  I think I have been up here longer than I anticipated.
I appreciate you indulging me.

I would just say in terms of the manual of complex
litigation tells us we should try to self-order ourselves in
these situations where we have scores of Plaintiffs' lawyers.
Not always the easiest thing.  We have come a really long way.

We certainly, as I said, welcome Mr. Macoretta to our
team and present a unified front.  Absolutely respect his right
to want to go it solo.

THE COURT:  Let me hear from him.

MR. SIEGEL:  I just wanted to emphasize the work that
went into it and appreciate the Court's consideration of our
submission.  Thank you.

1    THE COURT:  Thank you.  Before we go any further, does
2  the defense have anything they would like to say as it pertains
3  to the motion by this group to be considered lead counsel?
4    MR. BOND:  Just briefly, Your Honor.
5    THE COURT:  First of all, do you even know this guy?
6  He says you could vouch for him that he's such a reasonable
7  person.
8    MR. BOND:  He strikes me as an awfully nice person.
9    THE COURT:  You just met him.  Right?
10    MR. BOND:  I will say Gary Lynch, we have been working
11  along opposite in cases for years.  And we have always had a
12  productive relationship and have no reason to believe we couldn't
13  work with them all.
14    And, Your Honor, just say in connection with what's
15  been discussed in the motion so far, obviously as Defendants, we
16  don't take a view as to which Plaintiffs' counsel should
17  represent the class.
18    I will just say in connection with the comments made so
19  far, the fact that there is a proposal for 23 different attorneys
20  to try to find the injury here indicates the sort of cases these
21  typically are.
22    In response to Your Honor's questions, there have been
23  class action decisions with respect to data security breaches.
24  One of the most prominent was an MDL for Hannaford Markets.  And
25  what happened there was the Court looked at a breach of credit

card information, dismissed all of the named Plaintiffs except
for the ones who had actually suffered credit card theft and then
said, you know what, there's no class here. How can there be a
class when I have to figure out for each individual Plaintiff
whether they were actually injured by this or by something else.

Another case in the Third Circuit was a case Enslin
versus Coca-Cola. It was a theft of relatively low-level
information, driver's license information where the District
Court, after full discovery, found in favor of summary judgment
for Coca-Cola and mooted, essentially, the class issues saying
there's no way the injury that this guy suffered because he was
an actual identity theft victim, there's no way that this injury
was caused by this low level of information. And that was upheld
on appeal by the Third Circuit.

I will say that is kind of -- obviously from the biased
defense point of view, that is the sort of trajectory we are
expecting here. The announcement on December 18th from Comcast
was that the last four social security numbers, as Your Honor
indicated, date of birth, and passwords were compromised.

It was actually hashes of passwords which is scrambled
using cryptographic methods. The passwords were already reset
before we sent the notice. So essentially the task here -- and
maybe this is why we need two dozen lawyers to do it -- is to
find a way for these Plaintiffs to say that the compromise of
their date of birth, which is semi-public knowledge and is all

over the place, and last four social security numbers caused
anyone any injury.

I will say with respect to credit monitoring, the
notice did say, as is required by statute, check your credit
monitoring.  That's mandatory language.  But I will also say
there is no one who uses -- there is no creditor, no financial
institution, no one who uses date of birth, last four of social
security numbers, and a busted password to give out loans.
There's no one who uses that information to give out jobs.  There
is no one who uses that very partial information in a way that
would cause actual loss to any of these named Plaintiffs.

It may be in the two dozen different complaints that
there is one or more Plaintiffs who say something actually
happened to them.  I will wait for the consolidated complaint
that they bring forward to see who it is and what they said
happened.

But I think a Court would have to be convinced that you
can draw a line from date of birth, last four of social security
which as an attorney I was filing on the public docket in my
signature in the District of New Jersey for most of my career,
between date of birth, last four of social security, busted
password, and something actually happening to someone.  I would
wait to see that and respond.

But I will say, there's also going to be a causation
issue.  Even the named Plaintiff under whose name this is all

1     consolidated, Mr. Hasson, he's on record as having also filed

2     class actions against Samsung and AT&T saying that, for example,

3     his full social security was breached by them.

4           How many times is he going to be able to say I didn't

5     have a care in the world until I got this data breach notice and

6     now I have to be on guard against everything in the world.  He

7     already said that twice before he came and said it against

8     Comcast.

9           The truth is, we have all gotten these data security

10     breach notices.  We have all been told by the Government to be

11     careful with respect to our personal information.  And the named

12     Plaintiffs are in no different position than everybody else who

13     has been given good advice to keep tabs on their accounts.  So

14     that was all I had to say.

15           THE COURT:  Thank you.  I will hear from the competing

16     proposal.  You may come forward or speak from there.  It's up to

17     you.

18           MR. MACORETTA:  I will speak from here if it's okay.

19     Good morning.  John Macoretta from Spector Roseman & Kodroff.  I

20     am in the slightly uncomfortable position.  I have to start by

21     agreeing with defense counsel on one point, and I will come back

22     to it.

23           Our principle objection here is that there are too many

24     lawyers on our team.  We like everybody on our team.  I am in

25     cases where my firm -- we are in cases with many of these other

lawyers.  We just think the team is a little too big.

Before I go to that, I want to disagree with defense counsel about a couple of things he said about damages and follow up on what Mr. Siegel said.  It's true that a lot of these cases are typically a fight about damages.  There's no doubt the data was breached.  That's not -- liability in that sense isn't at issue.

The issue is essentially the Defendants in some version of so what, what's your harm.  The theories Mr. Siegel put out are valid as well.  Nominal damages, the cost of protecting your information.  There are also arguments to be made that we made in other cases that the data has value.

Defense counsel is going to say, so what, it's a password, your date of birth, your social security number.  That information is used for other things.  Your password questions.  Everyone has personal questions to reveal your password.  If you are like me and most other people, you don't have a different set of questions or answers for every one of the hundred times you answer them.

Once somebody knows what elementary school you went to or your mother's maiden name from that, it can be used to breach something else.  So the data combined -- as these people do.  There are aggregation services out there -- creates a risk of the 30 some million users that it can be exploited in a way to get other bad things from them.

1    The fact that there are aggregators out there and data
2    available on the black market or the dark web shows that the data
3    has value.  And another argument for damages is all this data of
4    mine and everyone else's that you lost had value to me.  That's
5    another way the damages can be argued in these cases as well.  We
6    pursued in some other cases.  So I probably did what they tell
7    you not to do.  I went to the last thing somebody said first.
8         THE COURT:  That's all right.
9         MR. MACORETTA:  But that's okay.  Now I will talk about
10   the us.  As I said, we like the team.  We are in cases with most,
11   if not all, lawyers or have been in cases with most of the
12   lawyers on the team.  Our concern is that the team is too big.
13   Two Defendant case.
14        We have had a lot of success in this district and
15   before Your Honor over the years in class cases through trial.
16   My partner Gene Spector tried a case against SEPTA here.  Most of
17   the class cases, as you know, don't go to trial.
18        We were ready to go to trial in front of Judge Goldberg
19   in Provigil recently a couple of years ago and a lot of cases.
20   So we like to be on the team.  And it's true we have spoken
21   several times.  I have had calls with Mr. Lynch, Mr. Siegel, and
22   the other people who originally filed leadership motions.
23        We tried to work it out as well.  We just like to be
24   part -- a bigger part of a smaller team.  The manual for complex
25   litigation suggests that's part of your role to figure out who

1    exactly should be lead counsel, to not make it too big.  And you

2    can combine teams if you want.  Or I don't want to call us

3    factions.  Groups.  And that's why we are here.  I take it to

4    heart.  We try to work it out all the time as well.  It doesn't

5    always work.

6            THE COURT:  Are you saying you would reject being a

7    part of the executive committee?

8            MR. MACORETTA:  I'm saying -- no.  If you put us on it,

9    I would not say --

10           THE COURT:  I am not putting you on anything.  My

11   specific question to you is -- I love lawyers.  Lawyers never

12   answer the questions you ask them.  Lawyers answer the questions

13   they think you should have asked them.  But I am asking what I

14   want to know.  Are you saying that you would absolutely reject

15   being on the executive committee?  In other words, if I am not

16   lead counsel, then I don't want to be on the executive committee.

17   Is that what you are saying?

18           MR. MACORETTA:  That offer was made to me and we

19   rejected it, yes, because we think that team is too big.  Being

20   at least firm Number 12 in this 2 Defendant case is too many

21   people, yes.  That's the best non-lawyer answer I can give you.

22           THE COURT:  Is that your final answer?

23           MR. MACORETTA:  Yes.

24           THE COURT:  The Court would like to have at least one

25   local firm on the executive committee.

1          MR. MACORETTA:  I think Mr. Lynch and Mr. Siegel will

2     tell you there are a couple other local firms that are already on

3     there.

4          THE COURT:  On the executive committee?

5          MR. LYNCH:  Yes, Your Honor.  We have several.  We have

6     Michelle Drake from Berger Montague.

7          THE COURT:  Hold on.  When I looked at your list,

8     Mr. Lynch, I saw Ms. Drake is from Minneapolis, Minnesota.

9          MR. LYNCH:  She lives there.  She works remotely

10    through the Philadelphia Office of Berger Montague.  That's the

11    headquarters of that firm.

12         THE COURT:  She's from Philadelphia?

13         MR. LYNCH:  She's not from Philadelphia.

14         THE COURT:  I mean, is she working in Philadelphia now?

15         MR. LYNCH:  She's here in Philadelphia.

16         MS. DRAKE:  Your Honor, I am here.  My "O"s are way too

17    long to pretend like I am from Philadelphia.

18         THE COURT:  I understand.  But are you stationed here?

19         MS. DRAKE:  I am not.  I run the firm's Minneapolis

20    office.

21         THE COURT:  Thank you.  That was my point.  I like to

22    have at least one counsel on the executive committee who is in

23    Philadelphia.

24         MS. DRAKE:  I would mention that Mr. Schaffer and

25    Mr. Francis are both in Philadelphia who we worked repeatedly.

1    MR. LYNCH:  We have them listed as liaison counsel.

2    THE COURT:  I said your executive committee.  I would

3    like to have at least one local firm on the executive committee.

4    MR. LYNCH:  I see.

5    MR. SCHAFFER:  Your Honor, I would gladly switch from

6    liaison to executive committee member.  I serve at the Court's

7    pleasure, and I have been lead counsel in cases, liaison,

8    executive.

9    THE COURT:  I am still dealing with Mr. Macoretta's

10   motion, and I have had dealings with his firm on other class

11   action matters.  But if you don't want to be a part of it, I

12   understand.

13   MR. MACORETTA:  I just want to be a bigger part of a

14   smaller team, yes.

15   THE COURT:  All right.

16   MR. MACORETTA:  I will sit down unless you have another

17   question.

18   THE COURT:  No.  I will listen to your presentation.  I

19   am not ruling right here, but I did want to give you all an

20   opportunity to discuss this.

21   MR. MACORETTA:  We are all friends, so I am sure --

22   THE COURT:  I can see that you all are not enemies.

23   MR. MACORETTA:  Thank you.

24   THE COURT:  Is there anything else the defense would

25   like to add?

          MR. MCPHERSON:  Your Honor, Mark David McPherson from
Goodwin Procter on behalf of the Citrix Defendant.  The only
thing I wanted to add, like Comcast, we don't take positions on
the Plaintiffs' motions for proposals for how that group will be
structured.  The only thing I wanted to add, both Mr. Siegel and
Mr. Bond got into the merits on damages and standing.  Obviously
Citrix takes a very different view from Mr. Siegel on the damages
and --
          THE COURT:  Obviously.
          MR. MCPHERSON:  -- standing question.  But especially
because Citrix is in a unique position in this particular case in
that there's no allegation or at least no well-pleaded allegation
that Citrix actually had any of the data at issue for any of the
Plaintiffs.  Citrix provided software to Comcast.  Comcast used
that software with their own data.  And the allegation against
Comcast is different than the allegation against Citrix.  So I
just wanted to make the point.
          THE COURT:  That raises an interesting question.  I
thought you all were presenting a unified defense.  You are not?
          MR. MCPHERSON:  We are, Your Honor.
          THE COURT:  You just threw them under the bus a second
ago.
          MR. MCPHERSON:  No, no.
          THE COURT:  I just gave them the software.  I don't
know what they did with it.

1          MR. MCPHERSON:  What I am saying, Your Honor, is there

2     still is all of the arguments that Mr. Bond raised, we completely

3     agree with.  But in addition to all of those, there's another

4     hurdle that the Plaintiffs have to go through even if they get

5     over the hurdles that Mr. Bond raised.  And that is that as to

6     Citrix, they can't even establish that Citrix ever had the data

7     that is alleged to have been accessed without authorization.

8          THE COURT:  I am not dealing with the merits of the

9     case.  Good to know.

10          MR. MCPHERSON:  Exactly.  All I wanted to do was plant

11     that seed for the future because there was a lot of talk about

12     the merits, and I didn't want to let that go by without

13     commenting.

14          THE COURT:  Understood.  On the competing motions, I am

15     cognizant of the fact of your position, counsel.  It seemed that

16     the parties pretty much have a structure in place that they all

17     believe works.

18          It would be good to have someone from the Philadelphia

19     area that practices regularly here in the Eastern District and

20     from Philadelphia and that's read parenthetically who knows they

21     are going to see us again and is not going to give us a hard

22     time.

23          We like to see local counsel because they know we are

24     going to see them again and they will make sure nothing strange

25     happens.  But as I said before, if they absolutely refuse to do

1     it, then I don't know what to say. Let's go on to the discovery

2     issues.

3             I want to say for the record now that believe it or not

4     this Court has its own schedule and own inventory of cases. We

5     can handle some matters of discovery. However, with this number

6     of attorneys, I will tell you right now it would be probably a

7     good thing to agree ahead of time that either you are going to

8     hire a discovery master or you may request that our Chief Judge

9     appoint a Magistrate.

10           Now, please understand, every district handles its

11     discovery and handles its relations with its Magistrates

12     differently. In some districts, the Magistrates do all the

13     discovery. Our Magistrates don't do any of our discovery. I do

14     all my discovery.

15           And to the extent it's complicated, I generally suggest

16     that you get a discovery master because as I said before, I have

17     several other hundred cases and I can't devote all of my time to

18     your case. If it's a rather minor matter, certainly.

19           But to the extent that it can be an ongoing thing, I

20     suggest you either hire a discovery master as both Plaintiff and

21     defense come together, come up with someone that you recommend

22     and then the Court can appoint them.

23           We are very used to dealing with reports and

24     recommendations and we handle discovery matters in the same way

25     which is that the discovery master would make a ruling and then

the Court would receive that and decide whether we are going to go along with it or not go along with it. That is, either affirm it or overrule it. But that's the way we handle that.

Or you can make a motion to our Chief Judge. In this district, that is the Eastern District of Pennsylvania, the Magistrate Judges only work on big cases at the direction of the Chief Judge. So you have to file a motion with the Chief Judge. As I said before, he only does that for matters that are complex.

Also, however, when you look around at the ability of the parties here to hire their own, that weighs a lot in his attention also because we are down a couple of Magistrates. So do we have a Magistrate that could devote a lot of time and attention to this? Probably not. But that's the decision the Chief Judge would have to make.

So I would expect that if you wanted to do that, you would have to file a motion, say whether the Chief Judge consolidated on all the cases, the Chief Judge would consider that motion. I just got off the phone with him. He said if that's what you want to do, file a motion and he and I will discuss it. And you will get the recommendation after that.

As far as scheduling issues. Mr. Macoretta, I didn't notice that you put a scheduling proposal. There was one in the majority Plaintiffs.

MR. MACORETTA: I thought I joined in that, Your Honor. You said to file a joint report, so that was --

 1          THE COURT:  I didn't understand that.  So you did join

 2     in that?

 3          MR. MACORETTA:  There's a footnote in there that says

 4     we are in there.  Since you said joint report, I intentionally

 5     didn't file something separate.

 6          THE COURT:  Understood.  I didn't know if you were

 7     opposing that.  But if you were in agreement with that, the

 8     proposals call for it to be a consolidated complaint filed within

 9     a certain amount of time after the Court appoints interim counsel

10     which I intend to do by tomorrow.

11          And the only other thing was, I think there's a

12     statement Mr. Lynch, Mr. Siegel, where you indicate when would

13     discovery start.  The defense prefers discovery not to start

14     until after the motions are decided.  And the Plaintiffs request

15     commencement of discovery after filing of consolidated complaint.

16     I agree with that.

17          I put it this way.  I don't mind working on your case,

18     but I am not going to be the only one working on your case.  You

19     all should be working on your case, too.  So discovery will

20     commence after the filing of the consolidated complaint.  I think

21     I have kept you all here long enough.  Are there other issues

22     that we have to deal with?  Questions or concerns?

23          MR. SIEGEL:  Your Honor, Norm Siegel again.  Just in

24     response to the Court's inquiries about truly local folks on the

25     executive committee, given Mr. Macoretta's response --

THE COURT:  I am only using the labels you use which is lead counsel, executive committee, and liaison counsel.  I understand liaison counsel deals with my clerks and the court clerk.  And it should be someone local so we can always have good communication in the same time zone.  So that makes sense.  But I am talking on the executive committee itself.

MR. SIEGEL:  Right.  What I was going to suggest is that we offer a proposal to the Court, one or both of Mr. Francis and Mr. Schaffer to be on the executive committee.  And they have experience in this field.  They obviously know this courthouse very well.  Either or both of them can serve in that capacity on the executive committee, and we will eliminate the label.  But they can also serve as liaison.  They can have dual hats here, Judge, for the Court's benefit.

MR. SCHAFFER:  Your Honor, Charles Schaffer from Levin Sedran & Berman.  We have been in this district for almost 50 years.  We have litigated some of the biggest cases from diet drugs, Three Mile Island, pioneered the use of class action.  I am lead counsel in one of the biggest data breach cases.  I have tried cases and been appointed over 20 times.

I stepped back in this case from being lead counsel because I recognize that these two gentlemen should lead it.  And while I was proposed to be a liaison, I was going to be working on the case and row the boat.  But I am happy to move and be an executive committee member.

1          And I will put my whole firm and myself and whatever

2    this case needs at the direction of Mr. Lynch and Mr. Siegel.

3    And I have worked with Mr. Macoretta's firm for years.  And we

4    are working on cases now, too.  So put before the Court, I am

5    willing to serve in any capacity the Court sees fit.

6          THE COURT:  Thank you.  And you are Mr. Francis?

7          MR. FRANCIS:  I am Mr. Francis.  And I echo what

8    Mr. Schaffer just said.  I've been practicing in this district,

9    Your Honor, for over 25 years.  Many class actions.  If you look

10   at our bio, some of the cases cited, you will see that Your

11   Honor's colleagues here have commended the work of my firm and my

12   work in representing class actions.

13          I have been appointed over 70 times to represent

14   classes throughout the country.  I was trial counsel and

15   appellate counsel in the Ramirez TransUnion case which

16   established the standard for standing and Article III.  So just

17   like Mr. Schaffer, I am willing to serve in any capacity and at

18   the direction of Mr. Lynch and Mr. Siegel.

19          MR. SIEGEL:  Final comment, Your Honor.  We were

20   conferring based on the Court's comments.

21          Ms. Zinser, who is Mr. Macoretta's colleague, has

22   agreed to serve on the executive committee if that is acceptable

23   to the Court as well.  So we will have local representation.  We

24   will have everybody under one tent as directed by the Court.  And

25   I think that should resolve the competing motions, Your Honor.

1    And we are happy to submit a revised order to that effect if it's
2    accepted.
3            THE COURT:  I don't know if that resolves it.
4            MR. MACORETTA:  One firm.  Ms. Zinser and I.  That's
5    fine.  I see where this is going.  I understand, yes, we want
6    universal happiness.  And we agree to it.
7            THE COURT:  Let me see.  At least two of the -- at
8    least three of you on the defense side haven't said anything.
9    You don't have to prove that you were here, do you?  Do you want
10   to say something for the record?
11           MR. TAYMAN:  No, Your Honor.
12           MR. MELODIA:  I entered my appearance.
13           MR. YOON:  I am good.
14           THE COURT:  Before we close out, are there any other
15   comments or questions or concerns?
16           MR. LYNCH:  We don't have any, Your Honor.
17           I do want to say one thing, Your Honor, at the risk of
18   sacrificing my loyalty to the Pittsburgh Steelers.  I consider
19   myself a lawyer that practices in this court.  I have had more
20   cases here than any other district court.  It's a 4-hour drive.
21           THE COURT:  I know.  You are still a Steelers fan.
22           MR. SCHAFFER:  Your Honor, I have to hear that all the
23   time.
24           THE COURT:  I love the Steelers.  I do.  Actually I
25   love Pittsburgh.  And my clerk is from Pittsburgh, so she's

1    partial to you also.

2          Any final comments from anyone?  Listen.  Thank you.  I

3    know you all had to come in from around the country, and I know

4    it's a little difficult on you to do this.  I considered doing

5    this first one by video, but it was too many lawyers and you

6    can't say anything.

7          And besides that, I really wanted to be able to look

8    you in the face and you look me in mine.  And as I said before,

9    let's try to move through this as easily as we can and work

10   together and we will see what happens.  But as long as the

11   lawyers are working together, I found in my going on 29 years as

12   being a jurist, when the lawyers work together, it's a joy and

13   there's no real problems we can't resolve when we work together.

14         So thank you very much.

15         (The pretrial conference concluded at 11:05 a.m.)

16

17                    C E R T I F I C A T I O N

18

19         I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22   /s/ Bobbie J. Shanfelder

23   Bobbie J. Shanfelder, RDR, CRR

24   Official Court Reporter

25   Date:  May 17, 2024

**$**

**$10** [1] - 26:18
**$10,000** [1] - 26:6

**/**

**/s** [1] - 46:22

**0**

**00907** [1] - 2:16

**1**

**1** [2] - 18:6, 28:1
**1,000** [1] - 23:10
**10** [2] - 3:13, 24:15
**100** [2] - 23:2, 28:5
**10018** [1] - 2:4
**10019** [1] - 1:22
**10169** [1] - 2:24
**10601** [1] - 2:21
**10:00** [2] - 1:10, 3:1
**1133** [1] - 1:14
**11:05** [1] - 46:15
**12** [1] - 35:20
**1229** [1] - 2:12
**14** [2] - 1:10, 3:1
**1404** [2] - 13:2, 13:15
**15222** [1] - 1:14
**16** [1] - 3:16
**1600** [1] - 2:12
**1650** [1] - 1:19
**17** [2] - 27:7, 46:25
**18th** [1] - 30:17
**19** [1] - 4:4
**1900** [1] - 2:4
**19103** [3] - 1:19, 2:9, 2:13
**19106** [2] - 1:10, 2:8
**19th** [1] - 3:16
**1st** [1] - 10:7

**2**

**2** [1] - 35:20
**20** [2] - 18:21, 43:20
**200** [1] - 1:15
**2001** [1] - 2:8
**20036** [1] - 2:4
**2023** [5] - 3:13, 3:16, 3:22, 4:3, 4:4
**2024** [3] - 1:10, 3:1, 46:25
**21** [2] - 19:8, 20:3
**22** [1] - 19:9
**223** [1] - 2:16
**22525** [1] - 2:24
**23** [4] - 5:23, 11:9,

19:12, 29:19
**23(f** [2] - 25:1, 25:4
**23(g** [1] - 24:19
**23-5039** [1] - 5:21
**23-5040** [1] - 6:3
**23-5072** [1] - 6:6
**23-5091** [1] - 6:9
**23-5092** [1] - 6:12
**23-5110** [1] - 6:15
**23-5137** [1] - 6:16
**23-CV-5039** [1] - 1:3
**230** [1] - 2:24
**24** [3] - 11:9, 19:19, 19:25
**24-1050** [1] - 8:10
**24-1051** [1] - 8:11
**24-1128** [1] - 8:12
**24-1129** [1] - 8:13
**24-1130** [1] - 8:14
**24-1198** [1] - 8:15
**24-1201** [1] - 8:20
**24-258** [1] - 6:24
**24-271** [1] - 7:3
**24-280** [1] - 7:9
**24-425** [1] - 7:10
**24-507** [1] - 7:10
**24-599** [1] - 7:14
**24-639** [1] - 7:18
**24-68** [1] - 6:20
**24-793** [1] - 7:22
**24-800** [1] - 8:5
**24-CV-1701** [1] - 4:11
**25** [3] - 4:10, 5:24, 44:9
**2510** [1] - 2:12
**26** [1] - 4:9
**27th** [1] - 4:21
**29** [1] - 46:11

**3**

**30** [1] - 33:24
**300** [1] - 2:17
**31st** [1] - 1:22
**3300** [1] - 1:19
**33131** [1] - 2:20
**3420** [1] - 2:8
**36** [1] - 3:19
**37203** [1] - 2:17

**4**

**4-hour** [1] - 45:20
**400** [1] - 26:18
**44** [1] - 2:20
**460** [1] - 1:15

**5**

**50** [2] - 3:4, 43:16

**500** [1] - 2:8
**5039** [3] - 9:14, 9:18, 10:1
**510** [1] - 2:8
**5110** [1] - 9:16
**530** [1] - 2:24
**55413** [1] - 2:12
**5th** [1] - 1:14

**6**

**601** [2] - 1:9, 2:20
**620** [1] - 2:3
**64113** [1] - 1:15

**7**

**7** [1] - 27:8
**70** [2] - 3:4, 44:13
**75** [1] - 21:16
**787** [1] - 1:22

**8**

**8** [1] - 4:3

**9**

**90265** [1] - 2:24
**954** [1] - 2:16

**A**

**a.m** [3] - 1:10, 3:1, 46:15
**ability** [2] - 16:23, 41:9
**able** [7] - 12:13, 13:16, 13:17, 20:19, 24:3, 32:4, 46:7
**above-entitled** [1] - 46:20
**absolutely** [3] - 28:20, 35:14, 39:25
**acceptable** [1] - 44:22
**accepted** [2] - 26:11, 45:2
**access** [1] - 3:18
**accessed** [2] - 3:9, 39:7
**accomplish** [2] - 13:16, 13:18
**account** [1] - 22:5
**accounts** [2] - 25:23, 32:13
**achieved** [2] - 16:6, 16:21
**act** [1] - 10:16
**action** [9] - 3:5, 3:6, 15:15, 15:25, 22:22, 29:23, 37:11, 43:18

**Action** [1] - 5:21
**actions** [5] - 4:14, 27:3, 32:2, 44:9, 44:12
**actively** [1] - 3:21
**actual** [6] - 16:17, 22:12, 22:13, 22:16, 30:12, 31:11
**add** [3] - 37:25, 38:3, 38:5
**addition** [1] - 39:3
**additional** [1] - 21:23
**address** [1] - 13:3
**addressing** [1] - 4:22
**advanced** [2] - 21:19, 25:7
**advice** [1] - 32:13
**affirm** [1] - 41:2
**afiorilla@lowey.com** [1] - 2:21
**agencies** [1] - 25:22
**agenda** [1] - 10:11
**agents** [1] - 27:21
**aggregation** [1] - 33:23
**aggregators** [1] - 34:1
**ago** [3] - 14:24, 34:19, 38:22
**agree** [6] - 13:24, 19:15, 39:3, 40:7, 42:16, 45:6
**agreed** [3] - 17:23, 17:25, 44:22
**agreeing** [2] - 19:6, 32:21
**agreement** [1] - 42:7
**ahead** [2] - 24:10, 40:7
**al** [1] - 1:3
**Albert** [1] - 7:11
**ALBERT** [2] - 2:23, 7:11
**alert** [2] - 10:19, 14:3
**alerted** [1] - 14:5
**all-star** [2] - 14:12, 15:5
**allegation** [3] - 38:12, 38:15, 38:16
**allegations** [1] - 22:21
**allege** [1] - 22:22
**alleged** [1] - 39:7
**allegedly** [5] - 3:11, 3:17, 3:19, 3:21, 3:22
**alleging** [1] - 4:5
**allows** [1] - 22:3
**almost** [2] - 12:14, 43:16
**AMANDA** [1] - 2:19
**Amanda** [2] - 7:23, 8:1

**Amber** [2] - 9:21, 19:19
**amount** [1] - 42:9
**Andros** [2] - 2:9, 6:20
**announced** [1] - 3:14
**announcement** [1] - 30:17
**answer** [7] - 23:16, 23:20, 33:19, 35:12, 35:21, 35:22
**answers** [2] - 4:1, 33:18
**anticipated** [1] - 28:13
**anyway** [1] - 27:2
**apologize** [1] - 9:20
**appeal** [4] - 25:1, 25:4, 30:14
**appearance** [1] - 45:12
**APPEARANCES** [2] - 1:12, 2:1
**appearing** [1] - 6:5
**appellate** [2] - 21:8, 44:15
**application** [2] - 24:18, 25:11
**applied** [1] - 26:16
**applies** [1] - 24:1
**appoint** [3] - 18:21, 40:9, 40:22
**appointed** [2] - 43:20, 44:13
**appointing** [1] - 24:20
**appointment** [1] - 10:25
**appoints** [1] - 42:9
**appreciate** [2] - 28:14, 28:24
**appreciated** [1] - 27:12
**approach** [1] - 28:7
**appropriate** [1] - 26:17
**area** [1] - 39:19
**argue** [1] - 4:4
**argued** [3] - 21:5, 24:8, 34:5
**argument** [2] - 22:14, 34:3
**arguments** [2] - 33:11, 39:2
**arrangements** [1] - 9:3
**Article** [1] - 44:16
**articulating** [1] - 24:14
**aside** [1] - 16:1
**assembled** [3] - 14:9, 14:12, 15:1
**assessment** [1] - 16:13

**assign** [1] - 28:9
**assumed** [1] - 26:15
**assure** [2] - 10:23, 28:8
**AT&T** [1] - 32:2
**attached** [2] - 20:6, 22:9
**attention** [3] - 25:22, 41:11, 41:13
**attorney** [2] - 9:10, 31:19
**attorneys** [4] - 3:5, 11:3, 29:19, 40:6
**August** [1] - 3:22
**authorization** [2] - 17:2, 39:7
**available** [2] - 25:11, 34:2
**Avenida** [1] - 2:16
**Avenue** [5] - 1:14, 1:22, 2:3, 2:16, 2:24
**avoid** [1] - 16:13
**awfully** [1] - 29:8

**B**

**bad** [1] - 33:25
**bank** [1] - 25:23
**Baptist** [1] - 9:8
**bar** [3] - 11:21, 11:22, 23:16
**base** [1] - 16:22
**based** [2] - 14:15, 44:20
**basis** [1] - 22:1
**bear** [1] - 5:25
**BEFORE** [1] - 1:7
**behalf** [17] - 5:8, 5:10, 5:12, 5:22, 5:23, 6:5, 6:8, 6:14, 6:18, 7:7, 7:17, 8:7, 9:21, 10:6, 14:2, 14:6, 38:2
**behind** [1] - 12:9
**beneficiary** [1] - 4:17
**benefit** [2] - 26:23, 43:14
**Berger** [4] - 2:11, 8:7, 36:6, 36:10
**Berman** [5] - 2:7, 6:22, 7:20, 8:21, 43:16
**best** [3] - 22:2, 27:20, 35:21
**between** [2] - 3:16, 31:21
**biased** [1] - 30:15
**big** [5] - 33:1, 34:12, 35:1, 35:19, 41:6
**bigger** [2] - 34:24, 37:13
**biggest** [2] - 43:17,

43:19
**billing** [2] - 17:1, 17:4
**bio** [1] - 44:10
**Birnie** [2] - 2:10, 8:19
**birth** [7] - 3:25, 30:19, 30:25, 31:7, 31:18, 31:21, 33:14
**bit** [1] - 22:14
**black** [1] - 34:2
**bled** [1] - 17:3
**bleed** [3] - 3:16, 12:20, 12:25
**boat** [1] - 43:24
**Bobbie** [3] - 1:24, 46:22, 46:23
**Bobbie_Shanfelder @paed.uscourts. gov** [1] - 1:25
**bond** [3] - 38:6, 39:2, 39:5
**Bond** [1] - 5:3
**BOND** [5] - 1:17, 5:3, 29:4, 29:8, 29:10
**Bradley** [1] - 4:18
**breach** [41] - 3:10, 4:2, 4:15, 4:16, 11:20, 14:17, 14:22, 14:23, 15:4, 15:14, 15:16, 15:22, 17:25, 18:17, 20:10, 20:16, 20:24, 21:9, 21:14, 21:16, 21:24, 22:2, 22:20, 22:24, 23:1, 23:10, 24:5, 24:9, 24:25, 25:5, 25:12, 25:14, 25:19, 25:20, 27:2, 29:25, 32:5, 32:10, 33:21, 43:19
**breached** [2] - 32:3, 33:6
**breaches** [2] - 21:11, 29:23
**Brickell** [1] - 2:20
**briefly** [1] - 29:4
**bring** [2] - 22:9, 31:15
**bringing** [1] - 26:24
**Broadway** [1] - 2:20
**Brody** [1] - 16:1
**brought** [2] - 20:5, 21:12
**Building** [1] - 2:3
**burden** [1] - 24:6
**bus** [1] - 38:21
**busted** [2] - 31:8, 31:21
**Byrne** [1] - 1:9

**C**

**CA** [1] - 2:24

**CABLE** [1] - 1:5
**cable** [1] - 3:8
**calculate** [1] - 21:25
**Camp** [1] - 4:19
**Campoli** [4] - 4:19, 4:24, 5:17, 8:23
**candidly** [1] - 14:14
**candor** [2] - 10:14, 27:13
**capacity** [3] - 43:11, 44:5, 44:17
**Capital** [2] - 21:15, 25:6
**card** [2] - 30:1, 30:2
**care** [1] - 32:5
**career** [1] - 31:20
**careers** [2] - 14:21, 15:3
**careful** [1] - 32:11
**Carey** [3] - 8:9, 8:10, 9:1
**Carpenter** [1] - 1:13
**case** [61] - 5:18, 5:19, 8:17, 9:6, 9:12, 9:13, 9:22, 9:24, 10:19, 11:12, 11:23, 11:24, 12:10, 12:12, 12:13, 12:17, 12:22, 14:11, 15:14, 17:20, 18:15, 20:24, 21:1, 21:3, 21:8, 21:11, 21:17, 21:19, 21:23, 24:18, 24:25, 25:3, 25:5, 25:6, 25:19, 26:8, 26:24, 27:1, 27:2, 27:11, 28:6, 30:6, 34:13, 34:16, 35:20, 38:11, 39:9, 40:18, 42:17, 42:18, 42:19, 43:21, 43:24, 44:2, 44:15
**cases** [72] - 4:9, 4:21, 4:25, 5:24, 9:4, 9:10, 10:3, 11:9, 11:22, 11:24, 12:9, 12:12, 13:7, 13:10, 13:11, 13:18, 13:21, 14:1, 14:6, 14:16, 14:19, 14:20, 14:22, 15:6, 15:7, 15:8, 15:11, 16:3, 16:24, 17:22, 21:4, 21:9, 21:12, 23:15, 23:16, 24:9, 24:15, 24:25, 26:4, 27:4, 27:7, 27:8, 27:9, 27:15, 29:11, 29:20, 32:25, 33:4, 33:12, 34:5, 34:6, 34:10, 34:11, 34:15,

34:17, 34:19, 37:7, 40:4, 40:17, 41:6, 41:17, 43:17, 43:19, 43:20, 44:4, 44:10, 45:20
**causation** [1] - 31:24
**caused** [5] - 22:24, 23:10, 24:7, 30:13, 31:1
**certain** [2] - 4:4, 42:9
**certainly** [5] - 17:14, 27:4, 28:8, 28:19, 40:18
**certification** [10] - 14:19, 15:21, 15:24, 16:6, 16:7, 16:10, 21:19, 24:24, 25:2, 25:5
**certified** [1] - 24:25
**certify** [2] - 16:4, 46:19
**CHARLES** [1] - 2:7
**Charles** [4] - 6:21, 7:19, 8:21, 43:15
**check** [1] - 31:4
**Chief** [7] - 40:8, 41:4, 41:7, 41:14, 41:16, 41:17
**chosen** [1] - 12:9
**church** [1] - 9:8
**Circuit** [6] - 21:5, 21:7, 25:2, 25:4, 30:6, 30:14
**cited** [1] - 44:10
**CITRIX** [2] - 1:6, 2:2
**Citrix** [29] - 3:6, 3:10, 3:13, 3:15, 4:16, 5:10, 5:12, 5:16, 8:4, 8:9, 8:12, 8:13, 8:14, 8:15, 8:19, 9:1, 9:2, 9:3, 12:20, 12:25, 38:2, 38:7, 38:11, 38:13, 38:14, 38:16, 39:6
**City** [2] - 1:15, 7:1
**Civil** [2] - 1:3, 5:21
**civility** [2] - 10:13, 27:13
**claim** [5] - 21:2, 21:4, 24:2, 26:7, 26:15
**claims** [2] - 21:12, 25:12
**Clark** [2] - 8:12, 9:2
**CLARKSON** [2] - 2:23, 6:4
**Clarkson** [3] - 2:23, 6:4, 6:5
**class** [36] - 3:5, 3:6, 14:19, 15:15, 15:21, 15:22, 15:24, 15:25,

16:4, 21:19, 22:1, 22:3, 22:10, 24:24, 25:20, 26:8, 26:10, 26:19, 26:23, 27:2, 27:3, 27:20, 29:17, 29:23, 30:3, 30:4, 30:10, 32:2, 34:15, 34:17, 37:10, 43:18, 44:9, 44:12
**class-like** [1] - 22:1
**class-wide** [3] - 22:10, 26:8, 26:10
**classes** [1] - 44:14
**clear** [1] - 18:12
**Clemens** [1] - 20:25
**clerk** [2] - 43:4, 45:25
**CLERK** [16] - 5:20, 6:3, 6:6, 6:9, 6:12, 6:15, 6:20, 6:24, 7:3, 7:9, 7:14, 7:18, 7:22, 8:4, 8:9, 8:19
**clerks** [2] - 4:18, 43:3
**close** [2] - 15:18, 45:14
**cloud** [1] - 3:14
**co** [2] - 12:10, 17:16
**co-lead** [1] - 17:16
**co-leads** [1] - 12:10
**Coast** [1] - 2:24
**Coca** [2] - 30:7, 30:10
**Coca-Cola** [2] - 30:7, 30:10
**cognizant** [1] - 39:15
**Cola** [2] - 30:7, 30:10
**collaborate** [1] - 12:1
**collaboratively** [1] - 16:25
**colleague** [2] - 9:21, 44:21
**colleague's** [1] - 27:8
**colleagues** [3] - 24:17, 28:6, 44:11
**combine** [1] - 35:2
**combined** [1] - 33:22
**Comcast** [41] - 3:6, 3:7, 3:11, 3:14, 4:14, 5:3, 5:6, 5:8, 5:15, 5:21, 6:3, 6:6, 6:9, 6:11, 6:12, 6:15, 6:16, 6:20, 6:24, 7:3, 7:9, 7:10, 7:14, 7:18, 7:22, 8:11, 8:25, 9:1, 9:14, 12:20, 12:22, 30:17, 32:8, 38:3, 38:14, 38:16
**COMCAST** [2] - 1:5, 1:17
**coming** [2] - 7:25, 15:12
**commence** [1] - 42:20

commencement [2] - 28:3, 42:15
commended [1] - 44:11
comment [1] - 44:19
commenting [1] - 39:13
comments [4] - 29:18, 44:20, 45:15, 46:2
committed [2] - 27:24, 28:5
committee [16] - 35:7, 35:15, 35:16, 35:25, 36:4, 36:22, 37:2, 37:3, 37:6, 42:25, 43:2, 43:6, 43:9, 43:12, 43:25, 44:22
common [8] - 4:22, 20:15, 21:12, 21:13, 23:20, 23:25, 24:1, 26:15
communicated [1] - 18:1
communication [1] - 43:5
COMMUNICATIONS [1] - 1:5
companies [2] - 3:22, 12:23
company [1] - 3:10
competing [5] - 10:25, 17:8, 32:15, 39:14, 44:25
complaint [5] - 4:3, 31:14, 42:8, 42:15, 42:20
complaints [3] - 4:4, 22:22, 31:12
completely [1] - 39:2
complex [3] - 28:15, 34:24, 41:8
complicated [2] - 27:22, 40:15
compromise [3] - 14:10, 30:24
compromised [3] - 24:5, 26:5, 30:19
concept [3] - 23:25, 25:13, 26:12
concern [1] - 34:12
concerns [3] - 16:22, 42:22, 45:15
concluded [1] - 46:15
conclusion [1] - 26:8
conduct [2] - 10:21, 15:6
Conference [1] - 1:6
conference [1] - 46:15
conferring [1] - 44:20
confident [1] - 27:16

connection [2] - 29:14, 29:18
consensus [2] - 12:14, 16:21
consequence [1] - 11:21
consider [3] - 24:20, 41:17, 45:18
consideration [1] - 28:24
considered [2] - 29:3, 46:4
considering [1] - 20:21
consolidated [15] - 4:11, 4:12, 4:13, 4:21, 9:25, 10:2, 10:7, 13:18, 22:22, 31:14, 32:1, 41:17, 42:8, 42:15, 42:20
consolidation [1] - 13:20
consortium [1] - 13:23
constantly [1] - 10:13
contact [2] - 3:24, 25:21
contained [1] - 4:8
context [1] - 22:25
continue [3] - 6:11, 14:8, 20:4
CONTINUED [1] - 2:1
contract [4] - 4:15, 4:17, 20:16, 25:12
conversation [1] - 18:7
convince [2] - 13:14, 18:3
convinced [1] - 31:17
coordinate [1] - 14:11
coordinated [1] - 16:2
core [1] - 25:13
correct [3] - 19:11, 19:17, 46:19
cost [1] - 33:10
COUNSEL [1] - 2:6
counsel [36] - 5:20, 8:24, 11:1, 13:2, 13:14, 13:25, 17:16, 17:25, 18:22, 21:15, 23:2, 24:20, 25:6, 27:18, 27:19, 29:3, 29:16, 32:21, 33:3, 33:13, 35:1, 35:16, 36:22, 37:1, 37:7, 39:15, 39:23, 42:9, 43:2, 43:3, 43:19, 43:21, 44:14, 44:15
country [4] - 13:13, 21:9, 44:14, 46:3

couple [4] - 33:3, 34:19, 36:2, 41:11
court [5] - 4:19, 13:19, 43:3, 45:19, 45:20
COURT [94] - 1:1, 3:2, 5:13, 5:25, 6:10, 6:19, 6:23, 7:2, 7:13, 7:21, 7:25, 8:3, 8:8, 8:18, 8:23, 9:7, 9:16, 9:19, 9:23, 9:25, 10:8, 10:11, 11:14, 12:4, 13:25, 14:8, 15:13, 15:16, 16:3, 16:14, 17:8, 17:12, 17:14, 18:18, 18:20, 18:24, 19:2, 19:5, 19:8, 19:12, 19:15, 19:18, 19:23, 20:3, 20:11, 20:13, 20:18, 20:21, 22:11, 22:15, 22:18, 23:4, 23:8, 24:11, 26:13, 27:6, 28:11, 28:22, 29:1, 29:5, 29:9, 32:15, 34:8, 35:6, 35:10, 35:22, 35:24, 36:4, 36:7, 36:12, 36:14, 36:18, 36:21, 37:2, 37:9, 37:15, 37:18, 37:22, 37:24, 38:9, 38:18, 38:21, 38:24, 39:8, 39:14, 42:1, 42:6, 43:1, 44:6, 45:3, 45:7, 45:14, 45:21, 45:24
Court [43] - 1:25, 6:21, 10:14, 10:15, 10:21, 13:3, 16:3, 16:22, 17:3, 17:6, 17:15, 17:18, 17:19, 17:21, 18:16, 20:25, 21:3, 24:10, 24:18, 24:20, 26:11, 26:17, 26:24, 27:17, 27:21, 27:23, 27:25, 28:3, 28:8, 29:25, 30:9, 31:17, 35:24, 40:4, 40:22, 41:1, 42:9, 43:8, 44:4, 44:5, 44:23, 44:24, 46:24
Court's [9] - 12:2, 24:23, 26:1, 27:12, 28:24, 37:6, 42:24, 43:14, 44:20
courthouse [2] - 16:1, 43:10
Courthouse [1] - 1:9
courtroom [2] - 17:22, 17:24
Courts [5] - 13:9,

13:12, 16:7, 25:24
create [3] - 13:23, 18:15, 19:24
created [2] - 3:10, 11:21
creates [2] - 16:11, 33:23
creative [1] - 15:12
creator [1] - 3:14
credentials [1] - 16:16
credit [7] - 25:17, 25:22, 29:25, 30:2, 31:3, 31:4
creditor [1] - 31:6
critical [1] - 3:17
critical-rated [1] - 3:17
CRR [2] - 1:24, 46:23
cryptographic [1] - 30:21
cschaffer@lfsblaw.com [1] - 2:9
customers [2] - 3:20, 4:2
cynicism [1] - 12:2

**D**

D/B/A [1] - 1:5
damage [6] - 14:18, 22:10, 23:23, 25:25, 26:15, 26:18
damages [18] - 20:19, 21:13, 21:21, 21:22, 25:8, 25:11, 26:8, 26:11, 26:12, 26:14, 26:20, 33:3, 33:5, 33:10, 34:3, 34:5, 38:6, 38:7
Dannenberg [2] - 2:20, 8:2
dark [1] - 34:2
data [40] - 3:9, 4:2, 11:20, 14:22, 14:23, 15:3, 15:14, 15:16, 15:22, 17:25, 18:17, 20:9, 20:24, 21:9, 21:11, 21:16, 22:4, 22:19, 22:24, 24:4, 24:7, 24:9, 24:25, 25:5, 25:19, 25:20, 27:2, 29:23, 32:5, 32:9, 33:5, 33:12, 33:22, 34:1, 34:2, 34:3, 38:13, 38:15, 39:6, 43:19
Date [1] - 46:25
date [6] - 30:19, 30:25, 31:7, 31:18, 31:21, 33:14
dates [2] - 3:25, 24:1

DAVID [1] - 2:2
David [2] - 5:9, 38:1
DC [1] - 2:4
De [1] - 2:16
deal [4] - 11:14, 11:23, 15:7, 42:22
dealing [4] - 14:17, 37:9, 39:8, 40:23
dealings [1] - 37:10
deals [2] - 11:22, 43:3
decade [4] - 14:20, 14:23, 25:16, 26:23
decades [1] - 24:21
decades-long [1] - 24:21
December [3] - 4:3, 4:4, 30:17
decide [2] - 26:17, 41:1
decided [1] - 42:14
decides [1] - 26:17
decision [1] - 41:13
decisions [2] - 16:7, 29:23
deep [1] - 25:8
DEFENDANT [2] - 1:17, 2:2
Defendant [10] - 5:2, 5:14, 16:9, 24:5, 24:6, 25:18, 34:13, 35:20, 38:2
Defendants [4] - 5:15, 25:19, 29:15, 33:8
defense [14] - 5:1, 5:14, 23:15, 23:16, 29:2, 30:16, 32:21, 33:2, 33:13, 37:24, 38:19, 40:21, 42:13, 45:8
deferred [1] - 24:17
deferring [1] - 24:21
definitively [1] - 23:24
deliver [1] - 27:20
denied [1] - 25:4
DEPUTY [16] - 5:20, 6:3, 6:6, 6:9, 6:12, 6:15, 6:20, 6:24, 7:3, 7:9, 7:14, 7:18, 7:22, 8:4, 8:9, 8:19
details [1] - 4:5
determined [1] - 26:9
developed [1] - 21:22
devote [2] - 40:17, 41:12
devoted [2] - 14:21, 15:2
Diamond [3] - 2:21, 9:6, 10:6
DIANA [1] - 2:7
Diana [1] - 7:6

**diet** [1] - 43:17
**different** [8] - 12:12, 13:9, 29:19, 31:12, 32:12, 33:17, 38:7, 38:16
**differently** [1] - 40:12
**difficult** [2] - 19:23, 46:4
**digits** [1] - 3:24
**directed** [1] - 44:24
**direction** [3] - 41:6, 44:2, 44:18
**directly** [1] - 21:10
**disagree** [1] - 33:2
**disappointed** [1] - 3:4
**discovery** [2] - 15:6, 15:20, 25:7, 28:2, 28:4, 30:9, 40:1, 40:5, 40:8, 40:11, 40:13, 40:14, 40:16, 40:20, 40:24, 40:25, 42:13, 42:15, 42:19
**discuss** [2] - 37:20, 41:20
**discussed** [1] - 29:15
**discussion** [1] - 24:12
**dismissal** [1] - 13:6
**dismissed** [3] - 13:8, 21:1, 30:1
**disrespect** [1] - 18:12
**distinguish** [1] - 23:1
**district** [6] - 34:14, 40:10, 41:5, 43:16, 44:8, 45:20
**DISTRICT** [2] - 1:1, 1:1
**District** [9] - 13:9, 13:11, 13:12, 21:18, 23:18, 30:8, 31:20, 39:19, 41:5
**districts** [1] - 40:12
**docket** [4] - 10:1, 10:9, 18:21, 31:19
**Docket** [1] - 1:3
**dollars** [1] - 26:19
**done** [2] - 14:20, 17:5
**doubt** [2] - 13:22, 33:5
**down** [4] - 5:17, 16:8, 37:16, 41:11
**dozen** [2] - 30:23, 31:12
**Drake** [4] - 8:6, 8:16, 36:6, 36:8
**DRAKE** [6] - 2:11, 8:6, 8:16, 36:16, 36:19, 36:24
**draw** [1] - 31:18
**drive** [1] - 45:20
**Drive** [1] - 2:20
**driver's** [1] - 30:8
**drugs** [1] - 43:18

**dual** [1] - 43:13
**durham** [1] - 7:18
**duty** [1] - 21:14
**dzinser@**
**srkattorneys.com**
[1] - 2:10

**E**

**early** [1] - 28:3
**easier** [1] - 5:14
**easiest** [1] - 28:18
**easily** [1] - 46:9
**EASTERN** [1] - 1:1
**Eastern** [3] - 21:18, 39:19, 41:5
**easy** [1] - 11:3
**ECF** [5] - 18:21, 19:8, 19:12, 19:19, 20:3
**echo** [1] - 44:7
**effect** [1] - 45:1
**efforts** [1] - 17:20
**Eighth** [1] - 2:3
**either** [8] - 13:6, 15:20, 26:16, 26:24, 40:7, 40:20, 41:2, 43:11
**elementary** [1] - 33:20
**elements** [2] - 24:19, 26:15
**Eleventh** [1] - 25:4
**eliminate** [1] - 43:12
**Elson** [2] - 2:22, 10:6
**emdrake@bm.net** [1] - 2:13
**emphasize** [2] - 16:20, 28:23
**ended** [2] - 26:3
**enemies** [1] - 37:22
**enrichment** [3] - 4:16, 4:17, 20:16
**Enslin** [1] - 30:6
**ensuring** [1] - 25:17
**entered** [4] - 4:20, 16:10, 17:21, 45:12
**entitled** [1] - 46:20
**environment** [1] - 11:25
**Equifax** [2] - 23:2, 23:17
**Eric** [1] - 5:7
**Erika** [1] - 4:19
**especially** [1] - 38:10
**ESQUIRE** [18] - 1:13, 1:14, 1:17, 1:18, 1:21, 2:2, 2:3, 2:7, 2:7, 2:11, 2:11, 2:15, 2:15, 2:19, 2:19, 2:23
**essentially** [3] - 30:10,

30:22, 33:8
**establish** [4] - 21:7, 23:24, 24:3, 39:6
**established** [1] - 44:16
**Estevez** [3] - 2:13, 8:4, 8:7
**et** [1] - 1:3
**exact** [1] - 24:22
**exactly** [3] - 11:16, 35:1, 39:10
**example** [2] - 21:15, 32:2
**except** [1] - 30:1
**exclusive** [1] - 15:3
**exclusively** [1] - 12:19
**ExecuPharm** [1] - 21:1
**executive** [17] - 35:7, 35:15, 35:16, 35:25, 36:4, 36:22, 37:2, 37:3, 37:6, 37:8, 42:25, 43:2, 43:6, 43:9, 43:12, 43:25, 44:22
**Exhibit** [1] - 20:7
**expect** [3] - 4:13, 10:24, 41:15
**expectations** [1] - 10:14
**expected** [1] - 4:12
**expecting** [1] - 30:17
**expects** [1] - 10:15
**experience** [6] - 15:21, 16:17, 24:15, 24:21, 26:21, 43:10
**experts** [5] - 14:16, 14:17, 15:7, 25:7, 26:22
**explain** [2] - 11:12, 11:16
**explanation** [1] - 11:18
**exploitable** [1] - 3:12
**exploited** [3] - 3:17, 3:22, 33:24
**extent** [2] - 40:15, 40:19

**F**

**face** [1] - 46:8
**faces** [1] - 16:14
**facilitate** [1] - 14:10
**fact** [6] - 4:23, 6:1, 25:18, 29:19, 34:1, 39:15
**factions** [1] - 35:3
**factors** [1] - 12:13
**falling** [1] - 12:9

**fan** [1] - 45:21
**far** [4] - 23:13, 29:15, 29:19, 41:21
**faster** [1] - 9:7
**favor** [1] - 30:9
**felt** [1] - 18:11
**few** [1] - 17:10
**field** [2] - 26:23, 43:10
**fight** [1] - 33:5
**figure** [2] - 30:4, 34:25
**file** [8] - 41:7, 41:16, 41:19, 41:25, 42:5
**filed** [7] - 4:3, 12:18, 18:4, 18:5, 32:1, 34:22, 42:8
**filing** [3] - 31:19, 42:15, 42:20
**fill** [1] - 17:17
**final** [3] - 35:22, 44:19, 46:2
**finally** [1] - 26:10
**financial** [1] - 31:6
**fine** [1] - 45:5
**FIORILLA** [7] - 2:19, 7:23, 8:1, 9:13, 9:18, 9:20, 9:24, 19:21, 20:2
**Fiorilla** [2] - 7:24, 8:2
**Firm** [2] - 2:23, 6:5
**firm** [14] - 18:2, 18:13, 21:5, 27:2, 32:25, 35:20, 35:25, 36:11, 37:3, 37:10, 44:1, 44:3, 44:11, 45:4
**firm's** [1] - 36:19
**firms** [1] - 36:2
**first** [10] - 4:3, 4:25, 5:14, 11:8, 17:19, 17:20, 21:8, 29:5, 34:7, 46:5
**fit** [1] - 44:5
**FL** [1] - 2:20
**Floor** [2] - 1:14, 1:22
**Florida** [2] - 4:12, 13:12
**flow** [1] - 21:13
**focus** [1] - 15:22
**folks** [3] - 5:21, 17:24, 42:24
**follow** [2] - 10:13, 33:3
**following** [1] - 21:8
**footnote** [1] - 42:3
**FOR** [5] - 1:1, 1:13, 1:17, 2:2, 2:6
**force** [1] - 14:10
**forefront** [1] - 24:22
**foregoing** [1] - 46:19
**forward** [4] - 22:14, 27:4, 31:15, 32:16
**four** [7] - 3:24, 18:4,

30:18, 31:1, 31:7, 31:18, 31:21
**Fourth** [1] - 25:2
**framed** [2] - 23:7, 23:18
**FRANCIS** [3] - 2:11, 6:13, 44:7
**Francis** [7] - 2:12, 6:13, 6:14, 36:25, 43:8, 44:6, 44:7
**fraud** [2] - 22:5, 22:23, 26:5
**fraudulent** [2] - 22:5, 26:3
**friends** [2] - 23:16, 37:21
**front** [10] - 13:4, 13:20, 15:2, 16:1, 20:25, 21:18, 23:17, 27:25, 28:20, 34:18
**full** [2] - 30:9, 32:3
**fundamentally** [1] - 18:11
**future** [1] - 39:11

**G**

**gain** [1] - 23:11
**game** [1] - 16:9
**Garber** [2] - 18:22, 18:24
**Gary** [2] - 5:22, 29:10
**GARY** [1] - 1:13
**Gary@lcllp.com** [1] - 1:15
**Gastel** [2] - 2:16, 7:16
**Gene** [1] - 34:16
**generally** [4] - 4:14, 20:10, 20:18, 40:15
**generate** [1] - 12:24
**gentlemen** [1] - 43:22
**Georgia** [1] - 23:18
**given** [3] - 18:10, 32:13, 42:25
**glad** [1] - 18:20
**gladly** [1] - 37:5
**Glancy** [2] - 2:23, 7:12
**Goldberg** [3] - 4:20, 9:25, 34:18
**goodrow** [1] - 8:13, 9:2
**Goodwin** [5] - 2:2, 2:3, 5:10, 5:12, 38:2
**Government** [1] - 32:10
**great** [1] - 10:23
**grounded** [1] - 23:25
**grounds** [1] - 2:2
**group** [8] - 14:25, 17:17, 18:2, 18:3,

20:1, 20:9, 29:3, 38:4
**groups** [2] - 16:25, 35:3
**guard** [1] - 32:6
**guess** [1] - 27:7
**guidance** [1] - 27:13
**guided** [1] - 28:7
**guideline** [1] - 10:16
**guy** [3] - 11:9, 29:5, 30:11
**guys** [1] - 6:1

## H

**hacked** [2] - 20:21, 23:9
**hackers** [1] - 3:16
**hand** [3] - 9:11, 28:6
**hand-in-hand** [1] - 28:6
**handle** [3] - 40:5, 40:24, 41:3
**handled** [1] - 27:17
**handles** [2] - 40:10, 40:11
**Hannaford** [1] - 29:24
**Hanson** [2] - 1:14, 7:1
**happiness** [1] - 45:6
**happy** [2] - 43:24, 45:1
**hard** [2] - 13:22, 39:21
**harm** [10] - 21:4, 21:24, 21:25, 23:21, 23:23, 24:7, 25:17, 26:2, 26:6, 33:9
**harmed** [1] - 25:18
**harms** [1] - 24:4
**hashes** [1] - 30:20
**HASSON** [1] - 1:3
**Hasson** [4] - 5:21, 5:23, 10:1, 32:1
**hats** [1] - 43:13
**head** [1] - 26:18
**headquarters** [1] - 36:11
**hear** [7] - 11:7, 17:8, 19:9, 20:4, 28:22, 32:15, 45:22
**heart** [1] - 35:4
**held** [1] - 23:23
**Hendrickson** [2] - 2:17, 6:6
**Herzfeld** [2] - 2:16, 7:16
**hi** [1] - 9:13
**high** [3] - 15:24, 16:9, 16:11
**Highway** [1] - 2:24
**hire** [3] - 40:8, 40:20, 41:10

**history** [4] - 12:8, 16:17, 16:23
**hit** [1] - 20:12
**hold** [3] - 18:18, 28:11, 36:7
**holder** [1] - 3:8
**Holland** [5] - 1:18, 1:21, 5:4, 5:5, 5:7
**Honor** [63] - 5:3, 5:9, 5:11, 6:7, 6:13, 6:17, 6:22, 6:25, 7:4, 7:6, 7:11, 7:15, 7:19, 7:23, 8:1, 8:6, 8:16, 8:22, 9:13, 9:20, 11:11, 11:15, 12:6, 12:15, 13:21, 14:9, 15:2, 15:10, 15:17, 15:20, 16:16, 17:11, 18:5, 18:19, 18:23, 19:3, 19:14, 19:17, 19:21, 20:2, 20:5, 27:12, 29:4, 29:14, 30:18, 34:15, 36:5, 36:16, 37:5, 38:1, 38:20, 39:1, 41:24, 42:23, 43:15, 44:9, 44:19, 44:25, 45:11, 45:16, 45:17, 45:22
**Honor's** [2] - 29:22, 44:11
**HONORABLE** [1] - 1:7
**hope** [2] - 12:7, 27:10
**hopeful** [1] - 2:4
**hopefully** [1] - 24:18
**horn** [1] - 15:9
**Howard** [1] - 19:13
**hundred** [2] - 33:18, 40:17
**hurdle** [2] - 14:19, 39:4
**hurdles** [1] - 39:5
**HYUN** [1] - 1:18

## I

**identifiable** [5] - 3:9, 3:19, 3:23, 4:7, 23:11
**identified** [1] - 13:7
**identify** [5] - 3:17, 5:1, 5:2, 5:13, 5:20
**identifying** [1] - 28:2
**identities** [1] - 23:9
**identity** [1] - 30:12
**III** [1] - 44:16
**imminent** [1] - 21:24
**impacted** [2] - 4:6, 21:11
**implied** [2] - 4:15, 20:16

**important** [1] - 24:13
**IN** [1] - 1:1
**INC** [1] - 1:6
**include** [1] - 4:5
**included** [1] - 3:23
**includes** [2] - 20:7, 20:8
**including** [1] - 10:14
**indicate** [1] - 42:12
**indicated** [1] - 30:19
**indicates** [1] - 29:20
**indicating** [1] - 9:11
**individual** [2] - 26:2, 30:4
**individualized** [2] - 25:25, 26:18
**individually** [1] - 26:7
**indulging** [1] - 28:14
**information** [17] - 3:9, 3:19, 3:23, 3:24, 4:7, 22:6, 23:11, 26:4, 30:1, 30:8, 30:13, 31:9, 31:10, 32:11, 33:11, 33:15
**initial** [3] - 13:7, 13:10, 28:1
**injured** [1] - 30:5
**injury** [4] - 29:20, 30:11, 30:12, 31:2
**inquiries** [1] - 42:24
**instead** [1] - 15:23
**institution** [1] - 31:7
**insufficient** [1] - 4:5
**insurance** [1] - 22:8
**intend** [1] - 42:10
**intentionally** [1] - 42:4
**interested** [1] - 23:5
**interesting** [1] - 38:18
**interim** [1] - 42:9
**Internet** [1] - 3:8
**intertwines** [1] - 14:18
**inventory** [1] - 40:4
**involved** [3] - 9:22, 16:5, 25:1
**involvement** [1] - 27:23
**involving** [1] - 3:6
**Isicoff** [2] - 2:19, 10:6
**Island** [1] - 43:18
**issue** [10] - 3:23, 16:9, 17:3, 20:23, 23:18, 28:2, 31:25, 33:7, 33:8, 38:13
**issued** [1] - 18:5
**issues** [8] - 4:22, 20:18, 24:22, 27:23, 30:10, 40:2, 41:21, 42:21
**itself** [1] - 43:6

## J

**James** [1] - 1:9
**JAMES** [1] - 2:11
**Jamie** [1] - 4:19
**Jannance** [1] - 19:12
**Jersey** [1] - 31:20
**jfrancis@ consumerlawfirm. com** [1] - 2:13
**Jim** [1] - 6:13
**jmacoretta@ srkattorneys.com** [1] - 2:9
**job** [2] - 16:12, 27:19
**jobs** [1] - 31:9
**Joe** [2] - 7:15, 19:12
**JOE** [1] - 2:15
**Joey@hsglawgroup. com** [1] - 2:18
**JOHN** [2] - 1:7, 2:7
**John** [3] - 3:2, 7:4, 32:19
**join** [1] - 42:1
**joined** [1] - 41:24
**joining** [1] - 18:2
**joint** [2] - 41:25, 42:4
**Jonckheer** [1] - 19:19
**joy** [1] - 46:12
**JPML** [2] - 12:18, 13:16
**JR** [1] - 2:15
**Juan** [1] - 2:16
**Judge** [24] - 3:2, 4:20, 9:5, 9:25, 10:5, 10:10, 16:1, 20:12, 20:23, 20:25, 21:18, 22:13, 23:17, 25:15, 28:12, 34:18, 40:8, 41:4, 41:7, 41:14, 41:16, 41:17, 43:14
**Judge's** [1] - 25:2
**Judges** [2] - 27:14, 41:6
**judgment** [2] - 21:21, 30:9
**jurist** [1] - 46:12
**jury** [1] - 26:16

## K

**Kansas** [2] - 1:15, 7:1
**keep** [1] - 32:13
**Kenneth** [1] - 5:23
**KENNETH** [1] - 1:3
**kept** [1] - 42:21
**Keung** [5] - 2:22, 6:15, 8:25, 9:14, 9:16, 9:17, 9:21, 9:24

**KEVIN** [1] - 2:15
**Kevin** [2] - 6:7, 6:17
**Key** [1] - 2:20
**kind** [3] - 17:3, 27:11, 30:15
**kinds** [2] - 11:22, 19:24
**King** [1] - 10:23
**klaukaitis@ecf. courtdrive.com** [1] - 2:17
**Knight** [5] - 1:18, 1:21, 5:4, 5:5, 5:7
**knowledge** [2] - 14:15, 30:25
**knows** [5] - 9:9, 23:12, 27:5, 33:20, 39:20
**Kodroff** [2] - 2:8, 7:5, 7:7, 32:19
**Kolbe** [1] - 19:20
**ktayman@ goodwinlaw.com** [1] - 2:5
**Kyle** [1] - 5:11
**KYLE** [1] - 2:3

## L

**label** [1] - 43:12
**labels** [1] - 43:1
**laid** [1] - 28:10
**lalbert@glancylaw. com** [1] - 2:25
**language** [2] - 22:15, 31:5
**large** [1] - 15:11
**largely** [1] - 16:20
**larger** [3] - 11:24, 18:17, 24:9
**last** [16] - 3:24, 11:20, 14:20, 14:22, 19:3, 24:15, 25:16, 26:10, 26:23, 27:3, 30:18, 31:1, 31:7, 31:18, 31:21, 34:7
**LAUKAITIS** [3] - 2:15, 6:7, 6:17
**Laukaitis** [5] - 2:15, 6:8, 6:18
**law** [10] - 4:18, 4:22, 20:15, 21:12, 21:13, 23:20, 24:1, 26:15, 26:16
**Law** [5] - 2:15, 2:23, 6:5, 6:8, 6:18
**lawsuit** [1] - 3:5
**lawyer** [3] - 14:1, 35:21, 45:19
**lawyers** [19] - 10:19, 13:21, 14:2, 14:11,

14:13, 14:25, 15:5, 28:17, 30:23, 32:24, 33:1, 34:11, 34:12, 35:11, 35:12, 46:5, 46:11, 46:12
**lead** [20] - 11:1, 12:16, 17:16, 17:25, 18:8, 21:15, 23:1, 23:2, 24:18, 24:20, 25:6, 27:19, 29:3, 35:1, 35:16, 37:7, 43:2, 43:19, 43:21, 43:22
**leadership** [5] - 12:14, 15:1, 18:11, 18:15, 34:22
**leaderships** [1] - 12:9
**leads** [1] - 12:10
**leaked** [1] - 22:6
**learn** [1] - 12:5
**learned** [1] - 11:25
**least** [10] - 13:10, 19:6, 20:14, 35:20, 35:24, 36:22, 37:3, 38:12, 45:7, 45:8
**leaves** [1] - 20:3
**lectern** [1] - 17:13
**led** [3] - 17:24, 27:15
**Lee** [1] - 7:11
**LEE** [1] - 2:23
**left** [2] - 12:12, 13:11
**LENISKI** [4] - 2:15, 7:15, 19:14, 19:17
**Leniski** [5] - 7:15, 7:16, 19:12, 19:14, 19:15
**Leon** [1] - 2:16
**level** [2] - 30:7, 30:13
**leverage** [1] - 16:11
**Levin** [5] - 2:7, 6:22, 7:19, 8:21, 43:15
**liability** [1] - 33:6
**liable** [1] - 23:23
**liaison** [7] - 37:1, 37:6, 37:7, 43:2, 43:3, 43:13, 43:23
**license** [1] - 30:8
**line** [2] - 5:17, 31:18
**Lines** [1] - 10:5
**LINES** [4] - 2:19, 9:5, 10:5, 10:10
**lines@irlaw.com** [1] - 2:21
**list** [2] - 10:4, 36:7
**listed** [1] - 37:1
**listen** [2] - 37:18, 46:2
**litigated** [5] - 12:18, 20:15, 20:24, 21:21, 43:17
**litigating** [1] - 24:22
**litigation** [9] - 4:10,

44:21
**Magistrate** [3] - 40:9, 41:6, 41:12
**Magistrates** [4] - 40:11, 40:12, 40:13, 41:11
**maiden** [1] - 33:21
**Mailman** [2] - 2:12, 6:14
**main** [1] - 4:11
**MAJORITY** [1] - 1:13
**majority** [8] - 11:2, 11:6, 11:8, 17:17, 19:10, 20:1, 20:8, 41:23
**Malibu** [1] - 2:24
**management** [3] - 17:20, 27:11, 28:6
**managing** [1] - 17:4
**mandatory** [1] - 31:5
**manual** [2] - 28:15, 34:24
**March** [1] - 4:21
**MARK** [2] - 1:21, 2:2
**Mark** [2] - 5:5, 38:1
**mark** [1] - 5:9
**mark.melodia@ hklaw.com** [1] - 1:23
**Market** [4] - 1:9, 1:19, 2:8, 2:12
**market** [1] - 34:2
**Markets** [1] - 29:24
**Marriott** [1] - 24:25
**master** [4] - 40:8, 40:16, 40:20, 40:25
**Matt** [1] - 10:5
**matter** [5] - 5:21, 27:22, 40:18, 46:20
**matters** [5] - 24:16, 37:11, 40:5, 40:24, 41:8
**MATTHEW** [1] - 2:19
**Maya** [1] - 4:18
**McCauley** [2] - 7:9, 8:25
**MCPHERSON** [8] - 2:2, 5:9, 38:1, 38:10, 38:20, 38:23, 39:1, 39:10
**McPherson** [2] - 5:10, 38:1
**MDL** [2] - 21:17, 29:24
**mean** [3] - 22:16, 27:10, 36:14
**meant** [1] - 23:8
**Medicaid** [1] - 26:5
**medical** [2] - 26:3, 26:4
**Medicare** [1] - 26:5
**meet** [1] - 26:14

**MELODIA** [3] - 1:21, 5:5, 45:12
**Melodia** [1] - 5:5
**member** [3] - 22:3, 37:6, 43:25
**mention** [2] - 9:16, 36:24
**mentioned** [2] - 18:20, 25:6
**merits** [4] - 24:10, 38:6, 39:8, 39:12
**met** [1] - 29:9
**methods** [1] - 30:21
**Metzger** [2] - 8:11, 9:1
**Miami** [2] - 2:20, 10:6
**MICHELLE** [1] - 2:11
**Michelle** [3] - 8:6, 8:16, 36:6
**might** [2] - 25:25, 26:5
**Mile** [1] - 43:18
**million** [5] - 3:19, 21:16, 23:3, 26:19, 33:24
**millions** [1] - 21:17
**Milton** [1] - 3:2
**mind** [4] - 17:10, 24:23, 26:20, 42:17
**mine** [2] - 34:4, 46:8
**Minneapolis** [3] - 2:12, 36:8, 36:19
**Minnesota** [1] - 36:8
**minor** [1] - 40:18
**minutes** [1] - 17:11
**missing** [1] - 11:12
**mixed** [1] - 22:14
**mmcpherson@ goodwinlaw.com** [1] - 2:4
**MN** [1] - 2:12
**MO** [1] - 1:15
**modified** [1] - 20:6
**money** [1] - 22:19
**monitor** [2] - 22:3, 22:4
**monitoring** [4] - 25:17, 25:23, 31:3, 31:5
**Montague** [4] - 2:11, 8:7, 36:6, 36:10
**mooted** [1] - 30:10
**morning** [21] - 5:9, 5:11, 5:22, 6:4, 6:7, 6:13, 6:23, 6:25, 7:2, 7:4, 7:6, 7:11, 7:15, 7:21, 7:23, 8:1, 8:6, 8:8, 8:18, 10:5, 32:19
**mortgage** [1] - 26:3
**most** [9] - 14:25, 20:24, 21:11, 29:24,

31:20, 33:17, 34:10, 34:11, 34:16
**mother's** [1] - 33:21
**motion** [21] - 11:6, 11:7, 11:8, 11:14, 17:11, 18:4, 18:21, 19:6, 19:9, 19:10, 19:19, 19:24, 20:6, 29:3, 29:15, 37:10, 41:4, 41:7, 41:16, 41:18, 41:19
**motions** [6] - 10:25, 34:22, 38:4, 39:14, 42:14, 44:25
**move** [2] - 43:24, 46:9
**moved** [1] - 13:20
**MR** [95] - 5:3, 5:5, 5:7, 5:9, 5:11, 5:22, 6:4, 6:7, 6:13, 6:17, 6:21, 6:25, 7:4, 7:11, 7:15, 7:19, 8:21, 9:5, 10:5, 10:10, 11:11, 11:15, 12:6, 14:5, 14:9, 15:14, 15:17, 15:19, 16:5, 16:16, 17:10, 17:13, 17:15, 18:19, 18:23, 18:25, 19:3, 19:7, 19:11, 19:14, 19:17, 20:5, 20:12, 20:17, 20:20, 20:23, 22:13, 22:17, 22:21, 23:6, 23:14, 24:12, 26:14, 27:10, 28:12, 28:23, 29:4, 29:8, 29:10, 32:18, 34:9, 35:8, 35:18, 35:23, 36:1, 36:5, 36:9, 36:13, 36:15, 37:1, 37:4, 37:5, 37:13, 37:16, 37:21, 37:23, 38:1, 38:10, 38:20, 38:23, 39:1, 39:10, 41:24, 42:3, 42:23, 43:7, 43:15, 44:7, 44:19, 45:4, 45:11, 45:12, 45:13, 45:16, 45:22
**MS** [14] - 7:6, 7:23, 8:1, 8:6, 8:16, 9:13, 9:18, 9:20, 9:24, 19:21, 20:2, 36:16, 36:19, 36:24
**Munoz** [2] - 7:10, 8:25
**Murray** [2] - 2:23, 7:12

**N**

**name** [4] - 5:18, 31:25, 33:21
**named** [4] - 30:1,

**11**:20, 12:21, 12:24, 15:4, 20:10, 21:16, 28:16, 34:25
**lives** [1] - 36:9
**LLC** [2] - 1:5, 2:15
**LLP** [7] - 1:13, 1:14, 1:18, 1:21, 2:2, 2:3, 7:1
**loans** [1] - 31:8
**local** [7] - 35:25, 36:2, 37:3, 39:23, 42:24, 43:4, 44:23
**located** [1] - 12:13
**look** [4] - 41:9, 44:9, 46:7, 46:8
**looked** [3] - 11:5, 29:25, 36:7
**looking** [6] - 11:17, 12:2, 16:14, 22:13, 23:11, 27:4
**loss** [6] - 22:12, 22:13, 22:16, 22:17, 25:24, 31:11
**lost** [2] - 22:19, 34:4
**love** [3] - 35:11, 45:24, 45:25
**low** [2] - 30:7, 30:13
**low-level** [1] - 30:7
**Lowey** [2] - 2:20, 8:2
**loyalty** [1] - 45:18
**LYNCH** [18] - 1:13, 5:22, 11:11, 11:15, 12:6, 14:5, 14:9, 15:14, 15:19, 16:5, 16:16, 36:5, 36:9, 36:13, 36:15, 37:1, 37:4, 45:16
**Lynch** [16] - 1:13, 5:22, 17:16, 17:21, 19:7, 19:16, 20:10, 24:14, 27:15, 29:10, 34:21, 36:1, 36:8, 42:12, 44:2, 44:18

**M**

**ma'am** [3] - 8:8, 8:18, 9:12
**macoretta** [1] - 11:7
**MACORETTA** [16] - 2:7, 7:4, 19:3, 32:18, 34:9, 35:8, 35:18, 35:23, 36:1, 37:13, 37:16, 37:21, 37:23, 41:24, 42:3, 45:4
**Macoretta** [7] - 7:5, 18:2, 18:7, 18:12, 28:19, 32:19, 41:21
**Macoretta's** [5] - 19:9, 37:9, 42:25, 44:3,

31:11, 31:25, 32:11
**names** [2] - 3:23, 3:24
**Nanez** [2] - 2:14, 6:12
**Nashville** [2] - 2:17, 7:16
**NE** [1] - 2:12
**need** [5] - 13:16, 13:17, 23:13, 25:21, 30:23
**needs** [3] - 10:18, 28:6, 44:2
**neglected** [1] - 4:5
**negligence** [9] - 4:15, 4:16, 20:14, 20:15, 23:20, 24:2, 25:12
**negotiate** [1] - 15:7
**neighbor** [1] - 9:9
**never** [5] - 12:5, 15:14, 17:2, 21:19, 35:11
**New** [5] - 1:22, 2:3, 2:4, 2:24, 31:20
**next** [1] - 9:12
**nice** [1] - 29:8
**Nichols** [1] - 1:15
**nobody** [1] - 15:10
**nominal** [5] - 26:12, 26:13, 26:14, 26:18, 33:10
**non** [1] - 35:21
**non-lawyer** [1] - 35:21
**norm** [1] - 17:15
**Norm** [1] - 42:23
**normally** [1] - 5:13
**NORMAN** [1] - 1:14
**Norman** [1] - 6:25
**Northern** [1] - 23:18
**noted** [1] - 14:1
**notes** [1] - 8:24
**nothing** [1] - 39:24
**notice** [6] - 4:4, 25:19, 30:22, 31:4, 32:5, 41:22
**notices** [1] - 32:10
**notified** [1] - 4:2
**notion** [1] - 28:5
**Number** [5] - 18:21, 19:8, 19:12, 19:25, 35:20
**number** [11] - 4:6, 9:19, 10:1, 10:2, 10:19, 11:3, 18:6, 18:10, 28:1, 33:14, 40:5
**numbers** [4] - 3:25, 30:18, 31:1, 31:8
**Nunn** [2] - 8:14, 9:2
**NW** [1] - 2:4
**NY** [4] - 1:22, 2:4, 2:21, 2:24

## O

**O"s** [1] - 36:16
**objection** [1] - 32:23
**obtained** [1] - 4:7
**obviously** [6] - 18:1, 29:15, 30:15, 38:6, 38:9, 43:10
**occurred** [1] - 14:17
**October** [3] - 3:13, 3:16
**OF** [1] - 1:1
**offer** [2] - 35:18, 43:8
**Office** [1] - 36:10
**office** [1] - 36:20
**officer** [1] - 4:19
**offices** [1] - 7:12
**Official** [2] - 1:25, 46:24
**oftentimes** [1] - 15:19
**once** [4] - 15:24, 16:10, 24:3, 33:20
**One** [2] - 21:15, 25:6
**one** [41] - 4:11, 5:1, 5:14, 6:10, 7:25, 9:4, 9:23, 10:3, 11:24, 15:10, 15:25, 16:5, 21:25, 22:10, 23:22, 25:10, 25:21, 26:2, 27:4, 27:9, 29:24, 31:6, 31:7, 31:9, 31:10, 31:13, 32:21, 33:18, 35:24, 36:22, 37:3, 41:22, 42:18, 43:8, 43:19, 44:24, 45:4, 45:17, 46:5
**one-off** [1] - 26:2
**ones** [2] - 17:22, 30:2
**ongoing** [1] - 40:19
**opening** [1] - 22:5
**operator** [1] - 3:7
**opportunity** [1] - 37:20
**opposing** [2] - 27:17, 42:7
**opposite** [1] - 29:11
**order** [12] - 4:20, 13:17, 15:24, 16:10, 17:20, 18:5, 20:6, 24:19, 28:1, 28:16, 45:1
**ordering** [1] - 4:21
**organization** [1] - 17:19
**organized** [1] - 6:1
**organizing** [1] - 12:8
**original** [2] - 10:2, 18:4
**originally** [1] - 34:22
**ourselves** [2] - 27:17,
28:16
**out-of-pocket** [2] - 22:17, 22:23
**outset** [1] - 11:16
**overall** [1] - 9:19
**overrule** [1] - 41:3
**overview** [1] - 4:20
**own** [6] - 13:8, 15:9, 38:15, 40:4, 41:10
**owner** [1] - 3:7

## P

**P.C** [5] - 2:8, 2:11, 2:12, 2:20, 2:23
**PA** [6] - 1:10, 1:14, 1:19, 2:8, 2:9, 2:13
**Pacific** [1] - 2:24
**panel** [2] - 13:3, 13:8
**panel's** [1] - 13:4
**papers** [4] - 16:19, 18:9, 18:14, 28:10
**Pappert** [1] - 20:25
**parenthetically** [1] - 39:20
**Park** [1] - 2:24
**Parks** [1] - 2:16
**part** [10] - 4:10, 15:3, 22:22, 34:24, 34:25, 35:7, 37:11, 37:13
**partial** [2] - 31:10, 46:1
**particular** [2] - 14:15, 38:11
**particularly** [1] - 11:24
**parties** [2] - 39:16, 41:10
**partner** [1] - 34:16
**party** [1] - 4:17
**pass** [1] - 19:22
**password** [5] - 31:8, 31:22, 33:14, 33:15, 33:16
**passwords** [4] - 3:24, 30:19, 30:20, 30:21
**past** [2] - 16:23, 16:25
**patched** [1] - 12:23
**Patrick** [1] - 19:13
**Paul** [1] - 5:3
**PAUL** [1] - 1:17
**paul.bond@hklaw.com** [1] - 1:20
**pay** [1] - 25:22
**Penn** [1] - 1:14
**Pennsylvania** [1] - 41:5
**PENNSYLVANIA** [1] - 1:1
**people** [13] - 3:3, 16:23, 18:5, 18:10,
21:10, 21:23, 22:1, 22:23, 23:11, 33:17, 33:22, 34:22, 35:21
**per** [3] - 4:15, 4:16, 20:14
**percent** [1] - 28:5
**perhaps** [2] - 15:18, 26:1
**perpetrators** [1] - 23:21
**person** [4] - 14:6, 26:7, 29:7, 29:8
**personal** [2] - 32:11, 33:16
**personally** [5] - 3:9, 3:18, 3:23, 4:6, 23:11
**persons** [1] - 4:6
**perspective** [2] - 18:16, 24:13
**pertains** [1] - 29:2
**Peter** [1] - 19:12
**petition** [3] - 12:18, 13:4, 13:8
**Philadelphia** [15] - 1:10, 1:19, 2:8, 2:9, 2:13, 36:10, 36:12, 36:13, 36:14, 36:15, 36:17, 36:23, 36:25, 39:18, 39:20
**phone** [1] - 41:18
**pioneered** [1] - 43:18
**Pittsburgh** [4] - 1:14, 45:18, 45:25
**place** [3] - 10:16, 31:1, 39:16
**Plains** [1] - 2:21
**Plaintiff** [27] - 2:9, 2:10, 2:10, 2:13, 2:14, 2:17, 2:18, 2:18, 2:25, 5:19, 6:5, 6:8, 6:14, 6:18, 7:1, 7:7, 7:17, 7:20, 8:7, 9:21, 18:1, 25:13, 30:4, 31:25, 40:20
**PLAINTIFF** [1] - 2:6
**Plaintiffs** [19] - 2:21, 2:22, 3:17, 8:22, 11:2, 16:12, 16:24, 19:10, 21:16, 21:17, 30:1, 30:24, 31:11, 31:13, 32:12, 38:14, 39:4, 41:23, 42:14
**PLAINTIFFS** [1] - 1:13
**Plaintiffs'** [12] - 4:25, 11:6, 11:8, 11:22, 13:14, 14:11, 17:17, 20:1, 20:9, 28:17, 29:16, 38:4
**planning** [1] - 19:4

**plant** [1] - 39:10
**play** [2] - 10:13, 13:9
**pleaded** [1] - 38:12
**pleading** [1] - 21:7
**pleasure** [1] - 37:7
**pocket** [2] - 22:17, 22:23
**point** [4] - 30:16, 32:21, 36:21, 38:17
**points** [1] - 27:12
**Ponce** [1] - 2:16
**posed** [1] - 23:19
**position** [9] - 17:23, 18:1, 22:1, 23:12, 25:13, 32:12, 32:20, 38:11, 39:15
**positions** [1] - 38:3
**possible** [4] - 9:3, 27:20, 27:22, 27:23
**Post** [1] - 21:2
**Post-TransUnion** [1] - 21:2
**potential** [2] - 23:21, 28:2
**PR** [1] - 2:16
**practices** [2] - 39:19, 45:19
**practicing** [1] - 44:8
**preference** [2] - 13:4, 13:5
**prefers** [1] - 42:13
**prepackaged** [1] - 12:3
**Prescott** [3] - 2:25, 6:3, 6:5
**present** [6] - 4:18, 14:2, 18:25, 20:6, 22:10, 28:20
**presentation** [1] - 37:18
**presented** [1] - 26:11
**presenting** [1] - 38:19
**pretend** [1] - 36:17
**pretrial** [2] - 28:1, 46:15
**Pretrial** [1] - 1:6
**pretty** [1] - 39:16
**primarily** [2] - 13:12, 17:7
**principle** [1] - 32:23
**privacy** [1] - 14:22
**problems** [2] - 19:24, 46:13
**proceedings** [1] - 46:20
**process** [3] - 14:10, 27:11, 27:24
**Procter** [5] - 2:2, 2:3, 5:10, 5:12, 38:2
**product** [4] - 3:11, 4:7,

22:3, 22:8
**productive** [2] - 18:7, 29:12
**products** [1] - 22:7
**proliferation** [1] - 11:19
**prominent** [1] - 29:24
**Prongay** [2] - 2:23, 7:12
**proper** [1] - 22:15
**properly** [1] - 17:4
**prophet** [1] - 10:23
**proposal** [5] - 17:9, 29:19, 32:16, 41:22, 43:8
**proposals** [2] - 38:4, 42:8
**proposed** [3] - 16:18, 17:16, 43:23
**protecting** [1] - 33:10
**protocols** [1] - 17:1
**prove** [5] - 20:19, 22:12, 22:18, 23:9, 45:9
**proved** [1] - 26:7
**provide** [3] - 22:7, 22:8, 24:19
**provided** [1] - 38:14
**provides** [1] - 3:8
**Provigil** [1] - 34:19
**PSC** [2] - 16:18, 18:15
**public** [2] - 30:25, 31:19
**purposes** [2] - 4:22, 13:2
**pursued** [1] - 34:6
**put** [13] - 10:19, 15:1, 16:6, 17:19, 18:14, 22:1, 26:22, 33:9, 35:8, 41:22, 42:17, 44:1, 44:4
**putting** [2] - 25:13, 35:10

## Q

**quantifiable** [2] - 25:16, 25:24
**quantify** [2] - 22:9, 24:4
**questions** [14] - 3:25, 17:6, 17:18, 20:9, 25:8, 26:20, 29:22, 33:15, 33:16, 33:18, 35:12, 42:22, 45:15
**quite** [5] - 9:3, 22:14, 24:1, 25:7, 27:16

## R

**Ragatz** [2] - 2:19, 10:6
**raised** [6] - 9:11, 23:15, 25:9, 27:12, 39:2, 39:5
**raises** [1] - 38:18
**Ramirez** [1] - 44:15
**ratcheted** [2] - 15:23, 16:11
**rated** [1] - 3:17
**rather** [2] - 13:3, 40:18
**rclarkson@ clarksonlawfirm.com** [1] - 2:25
**RDR** [2] - 1:24, 46:23
**read** [1] - 39:20
**ready** [1] - 34:18
**real** [1] - 46:13
**really** [11] - 13:22, 14:23, 17:1, 21:6, 24:12, 26:1, 26:23, 27:17, 28:12, 28:18, 46:7
**reason** [3] - 15:22, 24:17, 29:12
**reasonable** [2] - 10:17, 29:6
**reasonableness** [3] - 10:15, 27:13, 28:8
**reasonably** [1] - 10:16
**reasons** [1] - 27:7
**receive** [1] - 41:1
**recently** [4] - 4:11, 9:5, 10:7, 34:19
**recognize** [2] - 27:19, 43:22
**recommend** [1] - 40:21
**recommendation** [1] - 41:20
**recommendations** [1] - 40:24
**reconstituted** [1] - 20:8
**record** [5] - 5:2, 32:1, 40:3, 45:10, 46:20
**referenced** [1] - 20:10
**referred** [1] - 3:15
**reflected** [2] - 10:3, 18:9
**refuse** [1] - 39:25
**regarding** [1] - 4:6
**regret** [1] - 20:11
**regularly** [1] - 39:19
**reject** [2] - 35:6, 35:14
**rejected** [1] - 35:19
**related** [1] - 4:3
**relations** [1] - 40:11

**relationship** [1] - 29:12
**relatively** [1] - 30:7
**Remark** [1] - 2:22
**remark** [1] - 7:22
**remarks** [2] - 44:14
**remedy** [1] - 22:8
**remember** [1] - 9:7
**remind** [1] - 10:12
**remotely** [1] - 36:9
**repeatedly** [1] - 36:25
**report** [5] - 11:1, 11:17, 20:7, 41:25, 42:4
**Reporter** [1] - 1:25, 46:24
**reporting** [1] - 25:22
**reports** [3] - 25:17, 25:23, 40:23
**represent** [4] - 16:24, 27:20, 29:17, 44:13
**representation** [1] - 44:23
**representing** [3] - 5:15, 5:19, 44:12
**request** [2] - 40:8, 42:14
**required** [1] - 31:4
**reset** [1] - 30:21
**resolution** [1] - 26:25
**resolve** [4] - 16:8, 27:22, 44:25, 46:13
**resolved** [1] - 11:19
**resolves** [1] - 45:3
**resolving** [1] - 12:20
**respect** [4] - 28:20, 29:23, 31:3, 32:11
**respond** [3] - 10:21, 21:10, 31:23
**response** [4] - 28:1, 29:22, 42:24, 42:25
**restatement** [1] - 25:11
**result** [5] - 12:1, 12:24, 21:24, 22:23, 27:20
**reveal** [1] - 33:16
**reversed** [1] - 21:6
**revised** [1] - 45:1
**rise** [1] - 5:18
**risk** [5] - 21:23, 21:24, 33:23, 45:17
**Road** [1] - 1:15
**Robert** [1] - 7:5
**Rodney** [1] - 10:23
**role** [1] - 34:25
**roll** [1] - 4:25
**Rosa** [1] - 2:16
**roseman** [1] - 7:3

**Roseman** [7] - 2:8, 2:10, 7:5, 7:7, 7:8, 32:19
**roster** [1] - 11:12
**row** [1] - 43:24
**rule** [1] - 10:15
**Rule** [2] - 24:19, 25:1
**rules** [4] - 10:12, 10:13, 10:22
**ruling** [3] - 21:19, 37:19, 40:25
**run** [1] - 36:19
**Ryan** [1] - 6:4
**RYAN** [1] - 2:23

## S

**sacrificing** [1] - 45:18
**Samsung** [1] - 32:2
**San** [1] - 2:16
**saw** [1] - 36:8
**scale** [1] - 15:11
**scared** [1] - 16:15
**SCHAFFER** [7] - 2:7, 6:21, 7:19, 8:21, 37:5, 43:15, 45:22
**Schaffer** [8] - 6:22, 7:19, 8:21, 36:24, 43:9, 43:15, 44:8, 44:17
**schedule** [2] - 28:2, 40:4
**scheduling** [2] - 41:21, 41:22
**school** [1] - 33:20
**Schubert** [4] - 9:21, 19:19, 19:21
**scores** [1] - 28:17
**scrambled** [1] - 30:20
**se** [3] - 4:15, 4:16, 20:14
**seated** [1] - 3:3
**second** [3] - 17:16, 28:11, 38:21
**Section** [1] - 13:15
**security** [13] - 3:15, 3:18, 3:25, 29:23, 30:18, 31:1, 31:8, 31:18, 31:21, 32:3, 32:9, 33:14
**Sedran** [5] - 2:7, 6:22, 7:20, 8:21, 43:16
**see** [13] - 11:6, 13:2, 31:15, 31:23, 37:4, 37:22, 39:21, 39:23, 39:24, 44:10, 45:5, 45:7, 46:10
**seed** [1] - 39:11
**seek** [1] - 17:23
**sees** [1] - 44:5

**self** [2] - 12:8, 28:16
**self-order** [1] - 28:16
**self-organizing** [1] - 12:8
**selfish** [1] - 27:7
**semi** [1] - 30:25
**semi-public** [1] - 30:25
**sense** [2] - 33:6, 43:5
**sent** [1] - 30:22
**separate** [1] - 42:5
**separately** [1] - 18:5
**SEPTA** [1] - 34:16
**serve** [6] - 37:6, 43:11, 43:13, 44:5, 44:17, 44:22
**service** [1] - 22:8
**services** [3] - 3:8, 3:10, 33:23
**set** [2] - 21:6, 33:17
**settle** [2] - 15:19, 15:23
**settled** [2] - 15:10, 21:20
**settlement** [1] - 27:21
**settlements** [2] - 15:8, 15:9
**Seventh** [1] - 1:22
**several** [7] - 11:20, 13:11, 24:25, 27:3, 34:21, 36:5, 40:17
**Shanfelder** [3] - 1:24, 46:22, 46:23
**shift** [1] - 24:6
**Shooter** [2] - 23:25
**shooters** [2] - 23:22
**shortly** [3] - 15:20, 19:9, 20:4
**shows** [1] - 34:2
**side** [2] - 28:7, 45:8
**sideways** [2] - 11:5, 11:17
**SIEGEL** [29] - 1:14, 6:25, 15:17, 17:10, 17:13, 17:15, 18:19, 18:23, 18:25, 19:7, 19:11, 20:5, 20:12, 20:17, 20:20, 20:23, 22:13, 22:17, 22:21, 23:6, 23:14, 24:12, 26:14, 27:10, 28:12, 28:23, 42:23, 43:7, 44:19
**Siegel** [22] - 1:14, 6:25, 7:1, 12:11, 13:13, 14:21, 15:9, 15:11, 16:18, 17:15, 19:6, 19:16, 33:4, 33:9, 34:21, 36:1, 38:5, 38:7, 42:12,

42:23, 44:2, 44:18
**siegel@stuevesiegel**
**.com** [1] - 1:16
**signature** [1] - 31:20
**simple** [1] - 27:22
**sit** [1] - 37:16
**situations** [1] - 28:17
**six** [1] - 27:2
**size** [2] - 10:18, 16:25
**slate** [2] - 11:10, 15:1
**slight** [1] - 12:2
**slightly** [1] - 32:20
**smaller** [2] - 34:24,
37:14
**Smith** [2] - 6:24, 7:1
**social** [8] - 3:25,
30:18, 31:1, 31:7,
31:18, 31:21, 32:3,
33:14
**software** [5] - 3:11,
3:14, 38:14, 38:15,
38:24
**solo** [1] - 28:21
**someone** [6] - 20:21,
23:8, 31:22, 39:18,
40:21, 43:4
**sometimes** [1] - 15:20
**soon** [1] - 10:9
**sorry** [4] - 9:4, 9:12,
17:9, 23:6
**sort** [2] - 29:20, 30:16
**Soumilas** [2] - 2:12,
6:14
**South** [1] - 2:20
**speaking** [1] - 20:18
**specialty** [1] - 14:14
**specific** [1] - 35:11
**Spector** [5] - 2:8, 7:5,
7:7, 32:19, 34:16
**spend** [2] - 25:16,
25:23
**spoken** [1] - 34:20
**stakes** [3] - 15:23,
16:9, 16:10
**standard** [4] - 20:15,
21:6, 44:16
**standing** [7] - 14:2,
21:1, 21:3, 21:7,
38:6, 38:10, 44:16
**star** [2] - 14:12, 15:5
**start** [5] - 10:11,
10:20, 32:20, 42:13
**started** [5] - 4:24,
13:1, 14:23, 15:22,
27:24
**starting** [1] - 4:2
**state** [1] - 21:4
**statement** [1] - 42:12
**STATES** [1] - 1:1
**stationed** [1] - 36:18

**status** [3] - 11:1,
11:17, 20:7
**statute** [1] - 31:4
**stay** [1] - 9:8
**Steelers** [3] - 45:18,
45:21, 45:24
**steering** [1] - 18:1
**step** [2] - 17:23, 17:25
**stepped** [2] - 18:10,
43:21
**still** [3] - 37:9, 39:2,
45:21
**stolen** [1] - 23:9
**straight** [2] - 22:5,
25:11
**straight-up** [1] - 22:5
**strange** [1] - 39:24
**Street** [7] - 1:9, 1:19,
2:4, 2:8, 2:8, 2:12,
2:12
**strikes** [1] - 29:8
**strongly** [1] - 10:21
**structure** [4] - 13:23,
15:8, 20:7, 39:16
**structured** [1] - 38:5
**Stueve** [2] - 1:14, 7:1
**subject** [1] - 22:4
**subjected** [1] - 12:20
**submission** [1] -
28:25
**submit** [1] - 45:1
**substantial** [1] - 15:2
**success** [2] - 24:8,
34:14
**successfully** [3] -
16:24, 17:5, 21:6
**Suetholz** [2] - 2:16,
7:16
**suffered** [3] - 21:4,
30:2, 30:11
**suggest** [3] - 40:15,
40:20, 43:7
**suggests** [1] - 34:25
**Suite** [7] - 1:15, 1:19,
2:8, 2:8, 2:12, 2:17,
2:24
**summary** [2] - 21:21,
30:9
**Summers** [2] - 23:21,
23:22
**Supreme** [1] - 21:3
**switch** [1] - 37:5
**SYSTEMS** [1] - 1:6
**Systems** [7] - 8:4, 8:9,
8:12, 8:13, 8:14,
8:15, 8:19

## T

**tabs** [1] - 32:13

**tag** [1] - 17:10
**Target** [1] - 14:23
**task** [1] - 30:22
**TAYMAN** [3] - 2:3,
5:11, 45:11
**Tayman** [1] - 5:11
**team** [15] - 14:12,
15:5, 17:10, 26:22,
28:20, 32:24, 33:1,
34:10, 34:12, 34:20,
34:24, 35:19, 37:14
**teams** [1] - 35:2
**technology** [1] - 3:10
**tens** [1] - 21:17
**tent** [1] - 44:24
**terms** [8] - 14:16,
14:18, 15:11, 16:16,
17:1, 17:4, 28:3,
28:15
**tethered** [1] - 24:4
**THE** [113] - 1:1, 1:1,
1:7, 1:13, 3:2, 5:13,
5:20, 5:25, 6:3, 6:6,
6:9, 6:10, 6:12, 6:15,
6:19, 6:20, 6:23,
6:24, 7:2, 7:3, 7:9,
7:13, 7:14, 7:18,
7:21, 7:22, 7:25, 8:3,
8:4, 8:8, 8:9, 8:18,
8:19, 8:23, 9:7, 9:16,
9:19, 9:23, 9:25,
10:8, 10:11, 11:14,
12:4, 13:25, 14:8,
15:13, 15:16, 16:3,
16:14, 17:8, 17:12,
17:14, 18:18, 18:20,
18:24, 19:2, 19:5,
19:8, 19:12, 19:15,
19:18, 19:23, 20:3,
20:11, 20:13, 20:18,
20:21, 22:11, 22:15,
22:18, 23:4, 23:8,
24:11, 26:13, 27:6,
28:11, 28:22, 29:1,
29:5, 29:9, 32:15,
34:8, 35:6, 35:10,
35:22, 35:24, 36:4,
36:7, 36:12, 36:14,
36:18, 36:21, 37:2,
37:9, 37:15, 37:18,
37:22, 37:24, 38:9,
39:8, 39:14, 42:1,
42:6, 43:1, 44:6,
45:3, 45:7, 45:14,
45:21, 45:24
**theft** [3] - 30:2, 30:7,
30:12
**theories** [4] - 14:18,
21:22, 33:9

**thinking** [1] - 26:2
**Third** [4] - 21:5, 21:7,
30:6, 30:14
**third** [1] - 4:17
**third-party** [1] - 4:17
**thoroughly** [1] - 3:4
**Thrash** [1] - 23:17
**three** [1] - 45:8
**Three** [1] - 43:18
**threw** [1] - 38:21
**throughout** [1] - 44:14
**thrust** [1] - 11:25
**Tice** [2] - 23:21, 23:23
**tight** [1] - 17:1
**timekeeping** [1] - 17:2
**timing** [1] - 28:3
**TN** [1] - 2:17
**today** [6] - 4:18, 9:22,
14:2, 19:4, 19:13,
19:22
**Todd** [2] - 18:22,
18:24
**together** [7] - 12:1,
26:22, 40:21, 46:10,
46:11, 46:12, 46:13
**tomorrow** [1] - 42:10
**took** [1] - 25:25
**toot** [2] - 15:9, 15:10
**top** [1] - 26:20
**totally** [2] - 12:1, 12:6
**trajectory** [1] - 30:16
**transcript** [1] - 46:19
**transfer** [4] - 13:2,
13:7, 13:15, 13:17
**transferred** [3] - 4:12,
9:5, 13:18
**transparency** [2] -
10:14, 27:13
**transpired** [1] - 14:16
**TransUnion** [3] - 21:2,
21:8, 44:15
**Trenga** [1] - 21:18
**Trial** [1] - 25:2
**trial** [9] - 4:23, 15:25,
26:25, 27:9, 27:21,
34:15, 34:17, 34:18,
44:14
**trials** [2] - 24:24, 27:1
**tried** [12] - 12:15,
13:14, 15:13, 15:14,
15:15, 27:1, 27:2,
27:5, 34:16, 34:23,
43:20
**true** [2] - 33:4, 34:20
**truly** [1] - 42:24
**trust** [2] - 11:3, 11:4,
12:5
**truth** [1] - 32:9
**try** [12] - 11:13, 11:16,

13:2, 13:22, 15:23,
16:13, 19:23, 27:22,
28:16, 29:20, 35:4,
46:9
**trying** [2] - 14:10,
27:25
**Tuesday** [1] - 3:1
**turn** [2] - 9:9, 27:11
**turned** [2] - 12:22,
25:10
**twice** [1] - 32:7
**two** [8] - 13:9, 23:20,
23:21, 30:23, 31:12,
34:13, 43:22, 45:7
**Tyler** [1] - 2:12
**type** [1] - 14:13
**types** [4] - 12:9, 16:24,
22:5, 27:3
**typical** [1] - 20:24
**typically** [2] - 29:21,
33:5

## U

**U.S** [1] - 1:9
**ultimately** [3] - 13:6,
14:18, 26:24
**uncomfortable** [1] -
32:20
**under** [6] - 10:1, 10:2,
26:15, 31:25, 38:21,
44:24
**underlying** [1] - 22:21
**understood** [3] -
18:25, 39:14, 42:6
**unfair** [1] - 18:11
**unified** [3] - 18:15,
28:20, 38:19
**unique** [2] - 26:6,
38:11
**UNITED** [1] - 1:1
**universal** [1] - 45:6
**unjust** [3] - 4:15, 4:17,
20:16
**unless** [2] - 17:6,
37:16
**unpatched** [1] - 3:18
**up** [17] - 13:2, 15:12,
15:23, 16:11, 20:6,
20:11, 21:5, 22:5,
22:14, 23:15, 25:11,
26:3, 28:13, 32:16,
33:4, 40:21
**updated** [1] - 18:9
**upheld** [1] - 30:13
**user** [1] - 3:23
**users** [1] - 33:24
**uses** [4] - 31:6, 31:7,
31:9, 31:10

## V

**valid** [1] - 33:10
**value** [4] - 22:10, 33:12, 34:3, 34:4
**variety** [1] - 21:13
**vary** [1] - 21:11
**Vasant** [1] - 4:19
**Verdier** [1] - 2:18
**verdier** [1] - 6:16
**version** [1] - 33:8
**versus** [39] - 5:21, 6:3, 6:6, 6:9, 6:10, 6:12, 6:15, 6:16, 6:20, 6:24, 7:3, 7:9, 7:10, 7:14, 7:18, 7:22, 8:4, 8:9, 8:11, 8:12, 8:13, 8:14, 8:15, 8:19, 8:24, 8:25, 9:1, 9:2, 9:14, 20:25, 23:21, 23:22, 30:7
**victim** [3] - 23:22, 23:24, 30:12
**victim's** [1] - 23:23
**victims** [2] - 23:3, 25:15
**video** [2] - 19:24, 46:5
**view** [6] - 18:8, 18:9, 24:3, 29:16, 30:16, 38:7
**violative** [1] - 10:22
**Virginia** [1] - 21:18
**vouch** [1] - 29:6
**vulnerability** [6] - 3:12, 3:15, 3:18, 3:21, 4:8, 12:23

## W

**wait** [2] - 31:14, 31:23
**Wall** [1] - 7:16
**Walnut** [1] - 2:8
**Washington** [1] - 2:4
**ways** [3] - 21:25, 24:1, 25:7
**web** [1] - 34:2
**week** [1] - 19:3
**weighs** [1] - 41:10
**welcome** [2] - 18:14, 28:19
**well-pleaded** [1] - 38:12
**Werner** [3] - 2:18, 7:14, 7:17
**White** [1] - 2:21
**whole** [1] - 44:1
**wide** [3] - 22:10, 26:8, 26:10
**Wiley** [2] - 2:14, 8:15
**willing** [2] - 44:5,

44:17
**Wilson** [3] - 6:9, 6:10, 8:24
**withdrawing** [1] - 19:5
**words** [6] - 10:22, 14:3, 14:17, 23:10, 35:15
**works** [2] - 36:9, 39:17
**world** [2] - 32:5, 32:6

## X

**XFINITY** [1] - 1:5
**Xfinity** [2] - 3:7, 3:19

## Y

**year** [1] - 10:7
**years** [11] - 11:20, 14:24, 24:15, 27:3, 29:11, 34:15, 34:19, 43:17, 44:3, 44:9, 46:11
**Yoon** [1] - 5:7
**YOON** [3] - 1:18, 5:7, 45:13
**York** [4] - 1:22, 2:3, 2:4, 2:24
**YOUNGE** [1] - 1:7
**Younge** [1] - 3:2
**yourself** [1] - 5:20
**yourselves** [1] - 5:2

## Z

**Zagacki** [2] - 2:25, 7:12
**zagacki** [1] - 7:10
**Zinn** [2] - 2:22, 10:6
**ZINSER** [2] - 2:7, 7:6
**Zinser** [3] - 7:6, 44:21, 45:4
**zone** [1] - 43:5