**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KENNETH HASSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, COMCAST CORPORATION, CITRIX SYSTEMS, INC., and CLOUD SOFTWARE GROUP, INC.<br><br>Defendants.<br><br>This Document Relates to: All Actions | Master File No. 2:23-cv-05039-JMY<br><br>The Honorable John M. Younge |

**DEFENDANTS COMCAST CABLE COMMUNICATIONS, LLC AND COMCAST CORPORATION'S REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE OPINIONS OF PLAINTIFFS' EXPERTS MATTHEW O'NEILL, MATTHEW STREBE, AND DAVID NELSON**

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 1

A. RULE 702 Governs Admissibility of Plaintiffs' Experts ........................................ 1

B. Strebe's Opinions Must Be Excluded ........................................ 3

1. Strebe's Opinions on the Security of Plaintiffs' Hashed Passwords Are Inadmissible. ........................................ 3

2. Strebe's Opinions on the ESD Copy Are Inadmissible. ........................................ 5

3. Strebe's Opinion on Attaching a Log of Queries to the Cavazos Declaration Is Inadmissible. ........................................ 6

C. O'Neill's Opinions Must Be Excluded ........................................ 7

1. O'Neill's Opinions on the Password Plaintiffs Are Inadmissible. ........................................ 7

2. O'Neill's Opinions on the Partial SSN Plaintiffs Are Inadmissible. ........................................ 9

3. O'Neill's Opinions on the Secret Q&A Plaintiffs Are Inadmissible. ........................................ 10

4. O'Neill's Opinions on Alleged and Potential Harm are Inadmissible. ........................................ 11

D. Nelson's Opinions Must Be Excluded ........................................ 12

1. Nelson's Dark Web Opinions Are Unreliable. ........................................ 12

2. Nelson's Dark Web Opinions Do Not Fit the Case. ........................................ 14

III. CONCLUSION ........................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barris v. Bob's Drag Chutes & Safety Equip., Inc.*,
685 F.2d 94 (3d Cir. 1982)....................8

*Bruno v. Bozzuto's, Inc.*,
311 F.R.D. 124 (M.D. Pa. 2015)....................8

*Daddio v. A.I. DuPont Hosp. for Child. of Nemours Found.*,
650 F. Supp. 2d 387 (E.D. Pa. 2009), *aff'd sub nom. Daddio v. Nemours Found.*, 399 F. App'x 711 (3d Cir. 2010)....................13

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................1, 2, 5, 8

*Davis v. Wells Fargo*,
824 F.3d 333 (3d Cir. 2016)....................2

*Dille Family Tr. v. Nowlan Family Tr.*,
276 F. Supp. 3d 412 (E.D. Pa. 2017)....................7

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000)....................5

*FOCUS v. Allegheny Cnty. Ct. of Common Pleas*,
75 F.3d 834 (3d Cir. 1996)....................2

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
399 F.3d 248 (3d Cir. 2005)....................10

*JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*,
No. CIV. A. 97-CV-0652, 1998 WL 175888 (E.D. Pa. Apr. 15, 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999)....................10

*Kuhar v. Petzl Co.*,
No. CV 16-0395 (JBS/JS), 2018 WL 6331682 (D.N.J. Dec. 4, 2018)....................14

*Loverdi v. Medifast, Inc.*,
385 F. Supp. 3d 399 (E.D. Pa. 2019)....................13, 14

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)....................10

*Padillas v. Stork-Gamco, Inc.*,
186 F.3d 412 (3d Cir. 1999)....................2

*Painadath v. Good Shepherd Penn Partners*,
348 F.R.D. 16 (E.D. Pa. 2024)....5

*Roberson v. City of Philadelphia*,
No. CIV. A. 99-3574, 2001 WL 210294 (E.D. Pa. Mar. 1, 2001)....7

*Schuchardt v. President of United States*,
802 F. App'x 69 (3d Cir. 2020)....2, 3

*State Farm Fire & Cas. Co. v. Steffen*,
948 F. Supp. 2d 434 (E.D. Pa. 2013)....10, 11

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999)....8

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*,
579 F. Supp. 3d 675 (E.D. Pa. 2021)....12

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(1)....2

Fed. R. Evid. 702.... *passim*

Fed. R. Evid. 703....8

Defendants Comcast Cable Communications, LLC and Comcast Corporation (collectively "Comcast") hereby file this reply in support of their Motion to Exclude Opinions of Plaintiffs' Experts Matthew O'Neill, Matthew Strebe and David Nelson (Dkt. 222) (the "Motion").[1]

# I. INTRODUCTION

Plaintiffs' Opposition (Dkt. 239) ("Opposition" or "Opp.") is nothing more than a recitation of their purported experts' declarations that fails to establish admissibility of the offered opinions. As the party with the burden to establish admissibility by the preponderance of the evidence, Plaintiffs fall grossly short of the standards set forth by Rule 702 and *Daubert* and its progeny. Plaintiffs' attempt to insert expert testimony in this case as a means to conjure Article III standing speaks to the lack of record evidence demonstrating Plaintiffs' standing. Resting solely on the speculative and unreliable opinions of Strebe, O'Neill, and Nelson, Plaintiffs ask the Court to bless their opinions while ignoring the well-developed record in this case. The wholly unsupported opinions of Strebe, O'Neill, and Nelson will not assist the Court in determining whether Plaintiffs have ***factually*** established Article III standing. The Court must, therefore, exclude the opinions of Plaintiffs' experts in their entirety from being considered in the Court's ruling on Comcast's Motion to Dismiss.

# II. ARGUMENT

## A. RULE 702 Governs Admissibility of Plaintiffs' Experts

As a threshold issue, Plaintiffs erroneously argue that the Court should apply a "flexible" standard to admissibility for their experts' declarations instead of the standards under Rule 702.

[1] On October 8, 2025, Comcast filed its Unopposed Motion for Leave to Exceed Page Limitation (the "Motion for Leave") requesting an additional four (4) pages above the Court's ten-page limit for this reply. (Dkt. 252). As of the filing of this reply, the Motion for Leave remains pending. To the extent the Court denies the Motion for Leave, Comcast respectfully requests one business day from the date of the denial to file an amended reply that conforms with the Court's page limitation.

Plaintiffs do not cite a single case in which a court applied anything other than Rule 702's standards to govern admissibility of proffered expert testimony.[2] Instead, Plaintiffs contend that because Comcast has argued for application of the appropriate, flexible standard with respect to the declarations of Adam Darrah and Sandra Cavazos—two lay witnesses who are not providing expert testimony—the Court should apply the same standard to Plaintiffs' experts. But it is beyond dispute that experts are not the same as ordinary witnesses because "[u]nlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Plaintiffs affirmatively injected expert opinions into this case in an attempt to establish that each has Article III standing. As the party with the burden of proof to establish standing, Plaintiffs must prove each element "***with the manner and degree of evidence required at the successive stages of the litigation.***" *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (emphasis added). Accordingly, Plaintiffs' decision to rest on expert testimony as evidence demands that such evidence fall into the ambit of Rule 702. *See Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999) (proponent of expert testimony has "the burden of establishing admissibility by a preponderance of the evidence").

In any event, Third Circuit precedent plainly supports application of Rule 702 to expert testimony offered to contest dismissal under a 12(b)(1) factual attack. *See Schuchardt v. President of United States*, 802 F. App'x 69, 75 (3d Cir. 2020). In *Schurchardt*, the government asserted a

---

[2] Plaintiffs cite to *Davis v. Wells Fargo*, 824 F.3d 333, 350 (3d Cir. 2016) for the proposition that that district courts "must demand less in the way of jurisdictional proof than would be appropriate at a trial stage." Plaintiffs stretch this general proposition beyond recognition because nowhere in *Davis* did the Third Circuit suggest that a plaintiff who introduces expert testimony to contest a 12(b)(1) factual attack be allowed to circumvent Rule 702. Indeed, *Davis* did not involve any expert testimony or application of Rule 702. Plaintiffs reach too far.

12(b)(1) factual challenge to the plaintiff's standing. *Id.* at 72. In opposition, the plaintiff submitted affidavits of two purported experts that the government successfully challenged pursuant to Rule 702 and *Daubert*. *Id.* at 75–76. The Third Circuit resoundingly affirmed the district court's ruling "barring their testimony as experts" because the purported experts were not qualified and their conclusions were not "based on reliable principles and methods." *Id.* at 76. As a result of the inadmissible expert testimony, the government's evidence stood uncontroverted and the district court appropriately ruled that the plaintiff "lacked factual standing for his suit." *Id.* at 76–77.

Like in *Schurchardt*, Rule 702 applies with equal force at this stage to Plaintiffs' proffered expert opinions. Plaintiffs' unsupported argument for a "flexible" standard to admissibility is a glaring admission that: (1) Plaintiffs' experts fail to meet the standards of Rule 702, and (2) Plaintiffs cannot meet their burden of proof to establish standing if the Court excludes their experts' opinions. Accordingly, the Court must reject Plaintiffs' meritless argument and apply Rule 702 to exclude the opinions offered by Strebe, O'Neill, and Nelson.

**B. <u>Strebe's Opinions Must Be Excluded</u>**

**1. Strebe's Opinions on the Security of Plaintiffs' Hashed Passwords Are Inadmissible.**

Ironically, Plaintiffs claim that Comcast "misconstrues" Strebe's testimony when Plaintiffs themselves overstate and contort Strebe's testimony and opinions. (Opp. at 6). It is entirely misleading for Plaintiffs to state that Strebe confirmed his opinion on the ability to crack Plaintiffs' hashed passwords "by cracking ***most*** Plaintiffs' passwords himself." (*Id.* at 5). [redacted]

---

[redacted]

Cracking less than a third of Plaintiffs' hashed passwords is certainly not "most" or "many" as Plaintiffs overexaggerate. (*Id.* at 5–6). Plaintiffs also downplay Strebe's computing abilities in "using a low-processing power laptop" while simultaneously overselling speculative abilities of cybercriminals to crack the hashed passwords. (*Id.* at 6). [redacted] Accordingly, it remains pure speculation that unknown cybercriminals would: (1) have a comparable password input database to the one curated by Strebe for over 25 years, (2) run multiple forms of decrypting attacks across the hashed passwords, and (3) expend significant amount of time attempting to crack the hashed passwords for minimal—if any—results.

Plaintiffs similarly fail to show that Strebe's opinion on the purported danger of the hashed passwords is reliable. The Court need not accept as true that Plaintiffs are at risk of imminent harm[4] from the hashed passwords when record evidence demonstrates that: (1) Comcast prompted a mandatory password reset following the Data Incident, making the passwords potentially obtained by the bad actors useless for Comcast accounts, [redacted]

---

[redacted]

[4] Indeed, with almost two years since the Data Incident, Plaintiffs' window for alleged "imminent" harm has long passed.

[redacted]; *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 756 (3d Cir. 2000) (district court erred in not excluding expert testimony that relied on "assumptions that were not supported by the record"). A prior hashed password with no continuing validity does not constitute imminent harm.[5] Plaintiffs' attempt to characterize Strebe's speculation as reliable is unpersuasive and fails under Rule 702 and *Daubert*.

**2. Strebe's Opinions on the ESD Copy Are Inadmissible.**

Plaintiffs do not contest that Strebe has no knowledge as to whether any Plaintiffs' data in ESD changed between the Data Incident and the creation of the ESD copy.[6] Nonetheless, Plaintiffs ask the Court to consider Strebe's opinion that Comcast's ESD copy may be unreliable based on an out-of-context quote from Ms. Cavazos' deposition. (Opp. at 7–8). Similarly, Plaintiffs argue that Strebe's opinion on SQL queries—which is plainly irrelevant—is admissible to call attention to the lack of information preventing the Court from assessing the reliability of the ESD copy. (*Id.* at 8). Plaintiffs' arguments are contrived and do not support admissibility of Strebe's opinions on the ESD copy.

---

[redacted]

[6] Plaintiffs' saber-rattling with a threat for a spoliation motion is unfounded. To establish spoliation, Plaintiffs would need to prove that (1) Comcast "was under a duty to preserve when the loss occurred, (2) the lost ESI was within the scope of the duty to preserve, (3) [Comcast's] failure to take reasonable steps to preserve the information caused its loss, and (4) the information is not recoverable elsewhere." *Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 26 (E.D. Pa. 2024) (citations omitted). Plaintiffs' suggestion that spoliation occurred with respect to ESD data is meritless and a transparent attempt to distract their experts' shortcomings.

[redacted] Additionally, on March 14, 2025, Plaintiffs served Comcast with a request for production seeking to inspect the ESD copy. Despite Comcast's agreement to allow the inspection and multiple follow ups to schedule the inspection, Plaintiffs have not done so nearly six months later. With this context in mind, Plaintiffs' claim that they "have no way to assess the reliability of the copy" is disingenuous in light of record evidence and discovery available to Plaintiffs. (Opp. at 9). Plaintiffs' insistence that Strebe's opinions pass muster under Rule 702 must be rejected by the Court.

**3. Strebe's Opinion on Attaching a Log of Queries to the Cavazos Declaration Is Inadmissible.**

Plaintiffs also argue that Strebe's opinion on [redacted] Plaintiffs also have the opportunity to test those queries by inspecting the ESD copy, but are instead choosing to sit idle to manufacture



speculation on the reliability of Comcast's representations on querying the ESD copy. [redacted] Strebe's opinion is, therefore, speculative and unsupported by the record. *See, e.g., Dille Family Tr. v. Nowlan Family Tr.*, 276 F. Supp. 3d 412, 423 (E.D. Pa. 2017) ("[E]xpert testimony must be based on rigorous methods and procedures rather than subjective belief or unsupported speculation.").

### C. O'Neill's Opinions Must Be Excluded

#### 1. O'Neill's Opinions on the Password Plaintiffs Are Inadmissible.

Plaintiffs' strategy with respect to O'Neill is clear: paint with extremely broad strokes and sweeping generalizations to distract from O'Neill's wholesale failure to consider essential facts about these Plaintiffs in forming his opinions. Contrary to Plaintiffs' assertions, O'Neill's opinion that the Password Plaintiffs are subject to imminent harm because [redacted] is unreliable and will not assist the Court in any manner because there is simply no application of this unsupported hypothesis to the facts. *See, e.g., Roberson v. City of Philadelphia*, No. CIV. A. 99-3574, 2001 WL 210294, at *4 (E.D. Pa. Mar. 1, 2001) (excluding expert testimony and explaining that in order for expert "testimony to be admissible, he must apply his experience reliably to the facts"). [redacted] Plaintiffs similarly do not provide the Court with any record evidence to connect O'Neill's guesswork on password reuse to the Password Plaintiffs. Instead, Plaintiffs merely point to O'Neill's general experience and reliance on a single survey from LastPass, a password manager

---

[redacted]

application, that: (1) states that 62% of surveyed individuals always ***or mostly*** reuse the same password ***or a variation***; and (2) surveyed a total of 3,750 professionals from the United States, United Kingdom, Germany, Australia, Singapore, and India without specifying the number of respondents for each country. (*O'Neill T.* 93:6–95:19; 97:7–98:21). None of this supports the inferential leap that [REDACTED] (Opp. at 11). Plaintiffs' parroting of O'Neill's speculative opinions is unavailing.

Plaintiffs also attempt salvaging O'Neill's opinions on the Password Plaintiffs by claiming that Rule 703 permits O'Neill to rely on Strebe's opinions on password cracking without additional investigation or confirmation of Strebe's methodology. Plaintiffs cite to *Barris v. Bob's Drag Chutes & Safety Equip., Inc.*, 685 F.2d 94, 101 n. 10 (3d Cir. 1982) for this proposition while conveniently failing to mention that *Barris* predates *Daubert*, *Barris* involved the 1976 version of Rule 703 (which has subsequently been amended twice in 2000 and 2011), and the Third Circuit in *Barris* actually affirmed exclusion of expert testimony that improperly relied on a second expert's report. The current state of the law succinctly provides that "experts who use data in their reports without independently verifying the accuracy or reliability . . . fail to satisfy this Circuit's reliability requirement." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 (M.D. Pa. 2015); *see also In re TMI Litig.*, 193 F.3d 613, 715-16 (3d Cir. 1999) (finding blind reliance by expert on other expert opinions demonstrated flawed methodology under *Daubert*). Indeed, "[t]hat independent verification is particularly important where, as here, the contested experts lack familiarity with the pertinent industry." *Bruno*, 311 F.R.D. at 138. O'Neill plainly admitted he has no knowledge of and is not an expert in hashing algorithms. (*O'Neill T.* at 87:8-13; 96:17–22). Absent independent verification, O'Neill's blind credence in Strebe's opinion on cracking Plaintiffs' hashed

passwords—which also suffers from fatal deficiencies—is wholly unreliable and fails to meet the standards for expert testimony.

**2. O'Neill's Opinions on the Partial SSN Plaintiffs Are Inadmissible.**

Plaintiffs again underscore that O'Neill is merely offering broad-sweeping generalities and speculation on the sensitivity of partial SSNs that are unreliable and will not assist the Court in determining whether the Partial SSN Plaintiffs are subject to imminent harm as a result of the Data Incident. [redacted] Stopping there, the Court should readily disregard O'Neill's unsupported speculation on "imminent" harm given the passage of time and complete failure to investigate and consider more plausible sources of imminent harm. Even assuming O'Neill is correct that exposure of a partial SSN could create a risk of harm, O'Neill's opinion fails to again connect any specific harm to the Partial SSN Plaintiffs. [redacted] O'Neill is simply offering unsupported speculation on theoretical harm that he has done nothing to apply to the Partial SSN Plaintiffs. O'Neill's speculation is particularly offensive where he could have obtained this information from Plaintiffs if he undertook even a basic investigation. The Court should not permit O'Neill's willful blindness to suffice.



*See, e.g., JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. CIV. A. 97-CV-0652, 1998 WL 175888, at *6 (E.D. Pa. Apr. 15, 1998), *aff'd*, 178 F.3d 1279 (3d Cir. 1999) ("[E]xpert testimony that ignores existing data and is based on speculation is inadmissible."). Although Plaintiffs attempt to minimize this contrived ignorance by contending traceability for Article III standing demands something less, neither *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1203 (S.D. Fla. 2022) nor *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 257 (3d Cir. 2005) cited by Plaintiffs involved expert testimony or suggest that Plaintiffs have the greenlight to offer speculative expert testimony to establish Article III standing.

**3. O'Neill's Opinions on the Secret Q&A Plaintiffs Are Inadmissible.**

Again, rather than providing any evidence to support O'Neill's opinions on the Secret Q&A Plaintiffs, Plaintiffs merely repeat O'Neill's hypotheticals and what-if-scenarios that continue to be unsubstantiated nearly two years since the Data Incident. The fact that O'Neill does not know whether the Secret Q&A Plaintiffs have since changed their Comcast question and answers or whether they use the same question and answer for other accounts cannot reliably support his conclusion that the Secret Q&A Plaintiffs are subject to unauthorized account access. *See, e.g., State Farm Fire & Cas. Co. v. Steffen*, 948 F. Supp. 2d 434, 443 (E.D. Pa. 2013) (experts conclusions with "no direct or circumstantial evidence" were "nothing more than a hunch that fails

to satisfy [Rule] 702(b)'s evidence and data-based standard"). As with the hashed passwords, secret questions and answers with no continuing validity for account access do not pose imminent harm and neither O'Neill nor Plaintiffs provide any evidence that the Secret Q&As Plaintiffs use the same question and answer—for Comcast or otherwise.

Plaintiffs also ask the Court to find reliable O'Neill's opinion that the un-hashed secret questions, standing alone, are sensitive information because "most responses to secret questions are based on public or semi-public data." (Opp. at 14). Yet, this opinion is not based on sufficient facts or data because O'Neill did not investigate and does not know what information is publicly available for Plaintiffs. (*O'Neill T.* at 56:5–12). Without any of this information, O'Neill's opinion remains pure conjecture that will not assist the Court.

**4. O'Neill's Opinions on Alleged and Potential Harm are Inadmissible.**

Plaintiffs miss the mark in arguing that Comcast seeks to exclude O'Neill's opinions on Plaintiffs' alleged harms and potential future harms based on his failure to rule out alternative, more plausible explanations. The fundamental reliability issue requiring exclusion of O'Neill's harm opinions is that O'Neill did not investigate, review, or consider ***any*** information beyond Plaintiffs' self-serving allegations in the FACC, Comcast's notices to customers related to the Data Incident, a spreadsheet prepared by Plaintiffs' counsel purporting to reflect the PII that may have been compromised for each Plaintiff, and the Strebe Declaration. (O'Neill Decl. ¶ 6). Relying solely on this insufficient information, O'Neill's conclusions on Plaintiffs' alleged harm being "consistent" with the PII from the Data Incident and potential future harm ring hollow. (*Id.* ¶ 24). Indeed, the Court should not "excuse [Plaintiffs'] selective disclosure of evidence to [their] retained expert" because Plaintiffs' "omission deprived [O'Neill] of the opportunity to consider and analyze the entire body of relevant and available data." *State Farm Fire & Cas. Co.*, 948 F. Supp. 2d at 445. Plaintiffs' decision to limit O'Neill's review to a myopic universe of information

does not support admissibility of his opinions.

Further, Plaintiffs' suggestion that O'Neill ruled out alternative causes during his deposition strains credulity. [redacted] Clearly, O'Neill did nothing to rule out any alternative cause of Plaintiffs' alleged harms, and is instead offering an inadmissible "fallacy that the mere happening of event . . . must be the cause of a later happening such as an illness or injury." *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 579 F. Supp. 3d 675, 677 (E.D. Pa. 2021).

### D. <u>Nelson's Opinions Must Be Excluded</u>

#### 1. Nelson's Dark Web Opinions Are Unreliable.

Plaintiffs' two-page recitation of the Nelson Declaration fails to remedy Nelson's speculative and unsubstantiated opinions. Plaintiffs offer Nelson to answer a single question for the Court: is Plaintiffs' information on the dark web as a result of the Data Incident? Nelson's answer to that question is unreliable guesswork that Plaintiffs unpersuasively masquerade as expertise and experience. While Plaintiffs go to great lengths to point to the existence of unverified data sets on the dark web that purportedly contain Comcast-related data, Plaintiffs still do not offer any facts supporting that their information is contained in those data sets or that the sets are derived

---

[redacted]

from the Data Incident. Instead, Plaintiffs ask the Court to accept as true Nelson's opinion that Plaintiffs' information is likely on the dark web even though he did not purchase, download, or review any of the purported data sets. (*Nelson T.* at 52:12–23; 56:3–60:5; 60:18–61:11; 61:18–62:7; 62:15–63:9; 64:14–66:25; 67:2–69:1). Nelson's "guesswork is not based on the methods and procedures of science, and cannot serve as the basis for expert testimony." *Daddio v. A.I. DuPont Hosp. for Child. of Nemours Found.*, 650 F. Supp. 2d 387, 407 (E.D. Pa. 2009), *aff'd sub nom. Daddio v. Nemours Found.*, 399 F. App'x 711 (3d Cir. 2010) (excluding expert opinion where there was no "objective, documented evidence to support" expert's conclusion).

Further, Plaintiffs' contention that Comcast is demanding them to engage in illegal conduct by purchasing data from the dark web is absurd. It is Plaintiffs—not Comcast—who have affirmatively alleged the existence of their information on the dark web as a result of the Data Incident. (*See* FACC ¶¶ 360–61). To the extent Plaintiffs lack evidence to support these serious allegations, Plaintiffs should withdraw the allegations.[9] Otherwise, Plaintiffs cannot rest on Nelson's unreliable and speculative opinions to compensate for evidentiary deficiencies. *See, e.g.*, *Loverdi v. Medifast, Inc.*, 385 F. Supp. 3d 399, 406 (E.D. Pa. 2019) ("The reliability requirement

ensures that the expert's opinion is supported by appropriate validation which establishes the standard of evidentiary reliability.").

### 2. Nelson's Dark Web Opinions Do Not Fit the Case.

Plaintiffs' use of Nelson to rubberstamp their dark web allegations fails to meet the "fit" requirement of Rule 702. Contrary to Plaintiffs' assertion, Nelson's opinions will not assist the Court in determining whether Plaintiffs have "suffered harm" from the Data Incident. (Opp. at 19). Nelson's opinions are neither helpful nor relevant to the Court's analysis of Plaintiffs' Article III standing when Nelson has not (1) actually reviewed or seen any of ***these*** Plaintiffs' information on the dark web, and (2) sourced ***these*** Plaintiffs' information to the Data Incident.[10] As such, Nelson's *ipse dixit* conclusion that Plaintiffs' information is likely circulating on the dark web as a result of the Data Incident lacks any credible foundation to be helpful to the Court. *See, e.g., Kuhar v. Petzl Co.*, No. CV 16-0395 (JBS/JS), 2018 WL 6331682, at *4 (D.N.J. Dec. 4, 2018) ("In the absence of evidentiary support, an expert's testimony is of no assistance to the factfinder.") (citations omitted).

## III. CONCLUSION

For the foregoing reasons, Comcast respectfully requests that the Court grant the Motion and exclude the opinions of Strebe, O'Neill, and Nelson from the Court's consideration in ruling on Comcast's Motion to Dismiss.



Dated: October 10, 2025

Respectfully Submitted,

*/s/ Paul Bond*

Paul Bond (*admitted pro hac vice*)
Justin Kadoura (I.D. No. 324212)
Richard Harris (I.D. No. 84897)
Benjamin R. Wilson (I.D. 327118)
HOLLAND & KNIGHT LLP
1650 Market Street, Suite 3300
Philadelphia, Pennsylvania 19103
(215) 252-9535
paul.bond@hklaw.com

Mark S. Melodia (I.D. No. 53515)
Sophie L. Kletzien (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
(212) 513-3583
mark.melodia@hklaw.com
sophie.kletzien@hklaw.com

Caitlin F. Saladrigas (*admitted pro hac vice*)
Cory Hartstein (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
777 South Flagler Drive, Suite 1900
West Palm Beach, Florida 33401
(561) 650-8349
caitlin.saladrigas@hklaw.com

Ashley L. Shively (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
560 Mission Street, 19th Floor
San Francisco, CA 94105
(415) 743-6900
ashley.shively@hklaw.com

William F. Farley (*admitted pro hac vice*)
Steven A. Block (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
150 North Riverside Plaza, Suite 2700
Chicago, IL 60606
(312) 578-6698
william.farley@hklaw.com
steven.block@hklaw.com

Alexander M. Dudley (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
515 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
(954)-252-1000
alexander.dudley@hklaw.com

Ryan Kocse (*admitted pro hac vice*)
HOLLAND & KNIGHT LLP
200 South Orange Avenue, Suite 2600
Orlando, Florida 32801
(407) 244-1128
ryan.kocse@hklaw.com

*Counsel for Comcast Cable Communications, LLC and Comcast Corporation*

**CERTIFICATE OF SERVICE**

I, Justin M. Kadoura, hereby certify that on October 10, 2025, I caused the foregoing document to be served on counsel for all Parties by filing on this Court's CM/ECF system.

*/s/ Justin Kadoura*
Justin Kadoura