## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH HASSON, individually and on behalf of all others similarly situated, | Master File No. 2:23-cv-05039-JMY |
| Plaintiff, | |
| v. | |
| COMCAST CABLE COMMUNICATIONS LLC, COMCAST CORPORATION, CITRIX SYSTEMS, INC., and CLOUD SOFTWARE GROUP, INC., | |
| Defendants. | |
| This Document Relates to: All Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED[1] MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

[1] While Comcast does not oppose the relief sought in Plaintiffs' Motion for Preliminary Approval, it does not agree with the factual recitation in this Memorandum and denies all liability for the claims brought in this litigation.

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................2

        A.      The Data Breach ........................................................................................2

        B.      Procedural History .....................................................................................4

        C.      Settlement Negotiations and Mediation......................................................9

III.    THE PROPOSED SETTLEMENT .........................................................................10

        A.      The Settlement Benefits ...........................................................................10

                1.      Reimbursement of Out-of-Pocket Losses and/or Lost Time....................12

                2.      Alternative Cash Payments ...........................................................12

        B.      The Notice and Claims Process .................................................................12

                1.      The Notice Plan...........................................................................12

                        a.      Class Lists ...........................................................................13

                        b.      Email Notice .......................................................................13

                        c.      Postcard Notice ...................................................................14

                        d.      Settlement Website & Long Form Notice ......................................15

                2.      Claims Process and Administration ..............................................16

                3.      Requests for Exclusion and Objections ........................................17

        C.      Residual Funds after Distribution of Settlement Payments ...................17

        D.      Proposed Class Representative Service Awards .....................................17

        E.      Attorneys' Fees and Reimbursement of Costs ........................................18

        F.      Release ....................................................................................................18

IV.     ARGUMENT ........................................................................................................18

A. The Settlement Is Likely to Be Found "Fair, Reasonable, and Adequate" Under Rule 23(e)(2) and *Girsh* and Therefore Should Be Preliminarily Approved ........................................................................... 20

    1. The Class Representatives and Class Counsel Adequately Represented the Class ................................................................. 20

    2. The Proposed Settlement Was Negotiated at Arm's Length ..................... 21

    3. The Relief Provided for the Class is Adequate ........................................... 22

        a. Proposed Settlement avoids the considerable costs, risks, and delay of continued litigation .................................................. 23

        b. The Settlement provides for an effective method of distributing relief to the class, including through a simplified claims process ......................................................... 26

        c. The proposed attorneys' fee award is reasonable .......................... 26

        d. There are no additional agreements required to be identified under Rule 23(e)(3) ............................................................ 27

    4. The Settlement Treats Class Members Equitably Relative to Each Other ....................................................................................... 27

B. The Settlement Satisfies All the Applicable *Girsh* Factors ................................... 28

C. The Proposed Settlement Class Satisfies the Criteria of Rule 23 and Should be Certified for Settlement Purposes ................................................ 32

    1. The Settlement Class is Ascertainable ...................................................... 32

    2. The Settlement Class Satisfies the Criteria of Rule 23(a) ........................ 33

        a. Numerosity ............................................................................. 33

        b. Commonality ........................................................................... 33

        c. Typicality ............................................................................... 34

        d. Adequacy ............................................................................... 35

    3. The Settlement Class Satisfies the Criteria of Rule 23(b) ....................... 36

a.      Predominance.................................................................................37

b.      Superiority....................................................................................38

D.      The Proposed Notice Program to Class Members Should be Approved ...............39

E.      The Court Should Appoint Settlement Class Counsel ...........................................41

V.    CONCLUSION...................................................................................................................41

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................... 32, 36, 38

*Barletti v. Connexin Software, Inc.*,
  No. 2:22-cv-04676, 2024 WL 1096531 (E.D. Pa. Mar. 13, 2024) ................................ 19, 26, 28

*Barletti v. Connexin Software, Inc.*,
  No. 2:22-cv-04676, 2024 WL 3564556 (E.D. Pa. July 24, 2024) ............................................ 28

*Bianucci v. Rite Aid Corp.*,
  No. 2:24-CV-03356-HB, 2025 WL 704284 (E.D. Pa. Mar. 4, 2025) ....................................... 28

*Braun v. Philadelphia Inquirer, LLC*,
  No. 22-CV-4185-JMY, 2025 WL 1314089 (E.D. Pa. May 6, 2025) ................................. Passim

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015) .................................................................................. 32

*Checchia v. Bank of Am., N.A.*,
  No. 21-cv-3585, 2023 WL 2051147 (E.D. Pa. Feb. 16, 2023) .................................................. 32

*Copley v. Evolution Well Servs. Operating LLC*,
  No. 2:20-CV-01442-CCW, 2023 WL 1878581 (W.D. Pa. Feb. 10, 2023) ................................ 29

*Curiale v. Lenox Grp., Inc.*,
  No. CIV A 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) .......................................... 29

*Dixon v. Lincoln Univ.*,
  No. CV 24-1057-KSM, 2025 WL 1373676 (E.D. Pa. May 12, 2025) ..................................... 29

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) .................................................................................. 19

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019) ................................. 19, 32, 33, 39

*Fulton-Green v. Accolade, Inc.*,
  No. 18-cv-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) .......................................... 25, 37

*Galt v. Eagleville Hosp.*,
  310 F. Supp. 3d 483 (E.D. Pa. 2018) ...................................................................... 22

*Geis v. Walgreen Co.*,
   No. 07-cv-4238, 2010 WL 11570447 (D.N.J. Sept. 30, 2010) ................................................. 25

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ...................................................................................... 19, 20, 29, 31

*Godshall v. Franklin Mint Co.*,
   No. 01-CV-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ................................................. 35

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 12-cv-1415, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ................................................ 24

*Gravely v. PetroChoice LLC*,
   No. 19-cv-5409, 2022 WL 2316174 (E.D. Pa. June 28, 2022)................................................. 27

*Hall v. Accolade, Inc.*,
   No. 17-cv-03423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ....................................... 18, 34

*Horizon Blue Cross Blue Shield of New Jersey*,
   No. 08-cv-6160, 2018 WL 10133574 (D.N.J. June 29, 2018)................................................. 23

*In re Amtrak Train Derailment in Philadelphia, Pa.*,
   No. 15-md-2654, 2016 WL 1359725 (E.D. Pa. Apr. 6, 2016)................................................. 19

*In re Canon USA Data Incident Litig.*,
   No. 20-cv-6239, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023) ............................................. 26

*In re Centocor, Inc. Secs. Litig. III*,
   No. 2:98-CV-00260, 1999 WL 54530 (E.D. Pa Jan. 27, 1999) ............................................. 34

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010) ............................................................................................. 31

*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014) ............................................................................................. 24

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ............................................................................................... 25

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
   999 F.3d 1247 (11th Cir. 2021)............................................................................................... 23

*In re Flonase Antitrust Litig.*,
   291 F.R.D. 93 (E.D. Pa. 2013) ............................................................................................... 31

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
   55 F.3d 768 (3d Cir. 1995) ................................................................................. 31

*In re Generic Pharms. Pricing Antitrust Litig.*,
   No. 16-CB-27242, 2025 WL 754567 (E.D. Pa. Mar. 7, 2025) ................................. 32

*In re Generic Pharms. Pricing Antitrust Litig.*,
   No. 16-MD-2724, 2025 WL 1550100 (E.D. Pa. May 30, 2025) ............................... 34

*In re Imprelis Herbicide Mktg, Sales Prac. & Prods. Liability Litig.*,
   296 F.R.D. 351 (E.D. Pa. 2013) ........................................................................... 35

*In re Linerboard Antitrust Litig.*,
   203 F.R.D. 197 (E.D. Pa. 2001) ........................................................................... 35

*In re Nat'l Football League Players Concussion Inj. Litig.*,
   821 F.3d 410 (3d Cir. 2016) ...................................................................... 35, 37, 39

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014) ............................................................... 22, 32, 41

*In re Onix Grp., LLC Data Breach Litig.*,
   No. CV 23-2288-KSM, 2024 WL 3015528 (E.D. Pa. June 14, 2024) ..............Passim

*In re Onix Grp., LLC Data Breach Litig.*,
   No. CV 23-2288-KSM, 2024 WL 5107594 (E.D. Pa. Dec. 13, 2024) .......... 24, 27, 28, 30

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ................................................................................. 29

*In re Phila. Inquirer Data Sec. Litig.*,
   No. 24-cv-2106, 2024 WL 4582881 (E.D. Pa. Oct. 25, 2024) ............................... 19

*In re Philadelphia Inquirer Data Sec. Litig.*,
   No. CV 24-2106-KSM, 2025 WL 845118 (E.D. Pa. Mar. 18, 2025) ...............Passim

*In re Processed Egg Prods. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012) ........................................................................... 38

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ........................................................................... 29, 36

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ...................... 30

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   527 F. Supp. 3d 269 (E.D.N.Y. 2021) ............................................................ 40

*In re Suboxone (Buprenorphine Hydorchloride and Naloxone) Antitrust Litig.*,
   No. 13-md-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) ................................. 29

*In re T-Mobile Customer Data Sec. Breach Litig.*,
   No. 4:21-MD-03019-BCW, 2023 WL 11878508 (W.D. Mo. June 29, 2023) ......................... 23

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................................. 33

*In re Wawa, Inc. Data Sec. Litig.*,
   141 F.4th 456 (3d Cir. 2025) ................................................................. 21

*In re Wawa, Inc. Data Sec. Litig.*,
   No. 19-cv-6019, 2021 WL 3276148 (E.D. Pa. July 30, 2021) ................................ 37

*In re Wawa, Inc. Data Sec. Litig.*,
   No. 19-cv-6019, 2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) ......................... 24, 30, 34, 35

*In re Yahoo! Inc. Customer Data Breach Litig.*,
   No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................ 23, 25

*Kelly v. Santander Consumer USA, Inc.*,
   No. CV 20-3698, 2023 WL 8701298 (E.D. Pa. Dec. 15, 2023) ................................ 31

*Maldini v. Marriott Int'l, Inc.*,
   140 F. 4th 123 (4th Cir. 2025) ............................................................... 25

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) .................................................................. 32

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ......................................................................... 39

*Neale v. Volvo Cars of North America, LLC*,
   794 F.3d 353 (3d Cir. 2015) .................................................................. 37

*Portillo v. Nat'l Freight, Inc.*,
   336 F.R.D. 85 (D.N.J. 2020) .................................................................. 32

*Sherman v. American Eagle Exp., Inc.*,
   No. 09-575, 2012 WL 748400 (E.D. Pa. March 8, 2012) ..................................... 34

*Stechert v. Travelers Home & Marine Ins. Co.*,
   No. 17-cv-784, 2021 WL 5235221 (E.D. Pa. Nov. 9, 2021) ................................................. 21

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ........................................................................... 27, 37, 38

*Theus v. Brinker Int'l Inc.*,
   No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346 (M.D. Fla. June 27, 2025).......................... 25

*Tumpa v. IOC-PA, LLC*,
   No. 3:18-cv-112, 2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ................................................ 30

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ............................................................................................. 37

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................. 33

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
   726 F.2d 956 (3d Cir. 1983) ................................................................................... 27

## Statutes

28 U.S.C. § 1404(b) ..................................................................................................... 4

28 U.S.C. § 1407 ......................................................................................................... 4

## Rules

Fed. R. Civ. P. 23 .............................................................................................. 32, 39

Fed. R. Civ. P. 23(a) ............................................................................... 32, 33, 36, 39

Fed. R. Civ. P. 23(a)(1) ........................................................................................ 33

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 33

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 34

Fed. R. Civ. P. 23(a)(4) ........................................................................................ 35

Fed. R. Civ. P. 23(b) ....................................................................................... 32, 36

Fed. R. Civ. P. 23(b)(3) ................................................................................ 36, 37, 39

Fed. R. Civ. P. 23(b)(4) ........................................................................................ 38

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 39, 40

Fed. R. Civ. P. 23(e) ............................................................................................ 18, 27

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................................... 18

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................. 19, 20

Fed. R. Civ. P. 23(e)(2) .................................................................................. 19, 20, 28

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................... 23

Fed. R. Civ. P. 23(e)(3) ..................................................................................... 20, 27

Fed. R. Civ. P. 23(g) ................................................................................................ 41

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................................... 41

Fed. R. Evid. 408 ..................................................................................................... 23

## I.    INTRODUCTION

On behalf of the Settlement Class Representatives, Class Counsel respectfully move for preliminary approval of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement," "Settlement," or "SA").[2]

Preliminary approval should be granted because the Settlement provides substantial relief for the Settlement Class in exchange for a release of all claims against the Released Parties. The proposed Settlement, which was negotiated over several mediation sessions with the Hon. Diane M. Welsh (Ret.), establishes a non-reversionary cash settlement fund of $117,500,000 that will (a) be allocated to the Settlement Class according to the proposed Settlement Benefits Plan, including provision of sophisticated data monitoring for all class members;[3] (b) pay for attorneys' fees and expenses and Service Awards to the Settlement Class Representatives, as approved by the Court; and (c) cover the costs of settlement administration and the issuance of notice.[4] Under the proposed Settlement Benefits Plan, the Net Settlement Fund (after deducting Court-approved attorneys' fees and expenses, any Court-approved Service Awards, and notice and administration costs) will be used to pay for Settlement Class Members' claims for three (3) years of high-quality financial and credit monitoring and identity theft protection, and either (a) reimbursement of out-of-pocket losses up to $10,000.00 (including lost time of up to five (5) hours at $30.00 per hour); or (b) an alternative cash payment of $50.00.

---

[2] The proposed Settlement Agreement is attached as **Exhibit 1**. Unless otherwise noted, the capitalized terms used in this Memorandum of Law have the same meanings as defined in the Settlement Agreement.

[3] The proposed Settlement Benefits Plan is attached as **Exhibit 2**.

[4] Notice and Administration costs in excess of $7.3 million will be separately paid by Comcast.

As set forth below, preliminary approval is warranted because the Settlement Agreement is fair, reasonable, and adequate. The Settlement provides immediate and guaranteed relief in the face of difficult, extensive, and expensive litigation that poses a significant risk that Plaintiffs and the Settlement Class might recover nothing from Defendants should litigation continue. The Settlement is also the result of extensive and well-informed negotiations among counsel with extensive experience in data breach litigation, facilitated by an experienced mediator, in litigation overseen by an experienced Court. For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, certify the Settlement Class, approve the Notice Plan, direct the Settlement Administrator to issue notice accordingly, and set Settlement-related deadlines.

## II.    BACKGROUND

### A.  The Data Breach

Comcast is one of the largest companies in the telecommunications sector. FAC ¶ 1.[5] As part of its business, Comcast requires customers to provide private and sensitive information for its products and services, including their names, phone numbers, residential addresses, dates of birth, Social Security numbers, driver's license information, demographic information, and other similar data. *Id.* ¶ 188. Comcast contracted with Defendant Citrix to provide a variety of networking hardware and software services, including Citrix's NetScaler ADC and NetScaler Gateway (the "NetScaler Products"). *Id.* The NetScaler Products, among other roles, allow customers like Comcast to consolidate remote access infrastructure and provide a single-sign-on across all applications. *Id.* ¶ 209.

On October 10, 2023, Citrix published a security bulletin entitled "NetScalerADC and NetScaler Gateway Security Bulletin for CVE-2023-4966 and CVE-2023-4967" stating that it had

---

[5] References to "FAC" are citations to Dkt. No. 139.

discovered its NetScaler products were subject to "[m]ultiple vulnerabilities." *Id.* ¶ 281. The CVE-2023-4966 bulletin specifically disclosed a vulnerability that allowed cybercriminals to gain unauthorized access to sensitive data contained in a vulnerable system, and which came to be known among cybersecurity commentators as "Citrix Bleed." *Id*. ¶ 283. Cybercriminals exploiting CVE-2023-4966 could hijack legitimate users' (*e.g.*, Comcast employees') already-active sessions. *Id.* Citrix's security bulletin included a "patch" that customers like Comcast could install to patch the vulnerability. *Id.* Comcast did not implement Citrix's patch until over a week later. *Id.* ¶ 285.

Comcast later discovered that—during its delay in implementing the patch—unauthorized third parties hacked into its systems by exploiting Citrix Bleed. *Id.* ¶ 314. Specifically, between October 16 and October 19, 2023, unauthorized third parties gained access to Comcast's internal systems and acquired some combination of usernames and passwords, names, contact information, last four digits of Social Security numbers, dates of birth and/or secret questions and answers ("PII") for over 30 million former and current Comcast customers (the "Data Breach"). *Id.* ¶¶ 314–18.

Plaintiffs allege that Comcast could have mitigated the Data Breach by heeding Citrix's instruction to install the patch "as soon as possible." *Id.* ¶¶ 5, 269. Similarly, Plaintiffs allege that, had Citrix conducted additional testing and monitoring of NetScaler Products, the Data Breach could have been mitigated or avoided altogether. *Id.* ¶¶ 8–9, 312–13, 485. Plaintiffs additionally alleged that, because of the Data Breach, they have suffered injury and face an imminent and substantial risk of further injury, including identity theft and related cybercrimes.[6] Defendants

---

[6] FAC ¶¶ 349–63 (detailing wide-ranging impact of Data Breach on Plaintiffs). In addition, several Named Plaintiffs have experienced fraud and identity theft; spent time and money dealing with attempted fraud and identity theft; and expended resources, including time, protecting themselves

deny these allegations and any fault or liability in this matter.

### B. Procedural History

On December 19, 2023, Plaintiff Kenneth Hasson, through Co-Lead Counsel Gary Lynch, filed the first complaint arising from the Data Breach in this Court. Dkt. No. 1. Over twenty more related cases were filed across this District, the Southern District of Florida, the Northern District of Illinois, the District of South Carolina, the District of Nevada, and the District of Minnesota. Joint Declaration of Gary F. Lynch and Norman E. Siegel in Support of Preliminary Approval ("Counsel Decl.") ¶ 4, attached hereto as **Exhibit 3**.

On January 4, 2024, Plaintiff Hasson filed a Motion for Transfer and Centralization of Actions to the Eastern District of Pennsylvania Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings with the Judicial Panel on Multidistrict Litigation. *In Re: Comcast (NetScaler CVE-4966) Customer Data Security Breach Litig.*, MDL No. 3099, Dkt. No. 1 (J.P.M.L.). Five interested party responses were filed in support, MDL No. 3099, Dkt. Nos. 39, 40, 42, 43, 48, and one in opposition, MDL No. 3099, Dkt. No. 41. Comcast and Citrix each filed responses in support. MDL No. 3099, Dkt. Nos. 47, 49.

While the Motion to Transfer was pending with the J.P.M.L., Co-Lead Counsel Lynch worked collaboratively with other Plaintiffs' counsel and Comcast's counsel to transfer several related cases to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(b). Counsel

---

against fraud and identity theft. *See*, *e.g.*, *id.* ¶¶ 13–24 (Andros: fraudulent charges appearing on her debit card); ¶¶ 25–37 (Birnie: fraudulent charges using her credit card, attempts to access her other accounts, costs to replace special photo on debit card); ¶¶ 38–50 (Durham: fraudulent withdrawal of money from bank account); ¶¶ 51–65 (Estevez: fell victim to port-out fraud where cybercriminals highjacked his phone and gained access to his financial accounts); ¶¶ 66–77 (Fail: unauthorized charges on bank statement); ¶¶ 90–101 (Nanez: attempted access on a different account used by her minor son); ¶¶ 125–138 (Smith: a stranger attempted to open a Chase Bank account in Plaintiff Smith's name using the same PII compromised in the breach and victim of targeted phishing and social engineering attack).

Decl. ¶ 9. Other related cases were dismissed and refiled in this Court. *Id.* ¶ 10. On March 14, 2024, in light of these efforts, the J.P.M.L. dismissed Plaintiff Hasson's motion as moot. MDL No. 3099, Dkt. No. 27.

Once all related cases were before this Court, Plaintiff Hasson moved to consolidate the twenty-four related cases then pending in the Eastern District of Pennsylvania and requested that all actions be consolidated before the Honorable John M. Younge. Dkt. No. 13. On March 27, 2024, then-Chief Judge Mitchell S. Goldberg granted the motion to consolidate, ordering that the twenty-four (24) actions then-pending in this Court arising from the Comcast data breach be consolidated before Judge Younge. Dkt. No. 14. The Court then considered five leadership applications for appointment as interim class counsel. After coordination among counsel and a hearing, the Court entered Case Management Order No. 2, appointing Interim Co-Lead Counsel Gary F. Lynch and Norman E. Siegel, Co-Liaison Counsel Charles E. Schaffer and James A. Francis, and a Plaintiffs' Executive Committee comprised of other Plaintiffs' counsel. Dkt. No. 51.

After engaging in an extensive fact investigation, on July 1, 2024, Co-Lead Counsel filed a Consolidated Complaint on behalf of Plaintiffs, laying out detailed factual allegations related to the breach and detailing support for twenty-three causes of action, including state common law claims, state statutory claims, and claims under the federal Cable Communications Policy Act. Dkt. No. 67. Following the filing of the Consolidated Complaint, the Parties immediately began engaging in extensive discovery, pursuant to scheduling orders from the Court. On July 12, 2024, Plaintiffs and Comcast served their first sets of discovery on each other, and Plaintiffs served their first set of discovery on Citrix.

On August 15, 2024, Comcast and Citrix filed lengthy motions to dismiss. Dkt. Nos. 83, 84. Plaintiffs filed a 97-page omnibus response on September 30, 2024. Dkt. No. 99. On October 30, 2024, Defendants filed their replies in support of their motions to dismiss, and Comcast filed a motion to strike certain facts and arguments from Plaintiffs' response in opposition to Comcast's motion to dismiss. Dkt. Nos. 101–06. On November 13, 2024, Plaintiffs filed their opposition to Comcast's motion to strike. Dkt. No. 112.

While discovery and the pleadings were ongoing, Plaintiffs and Comcast agreed to an early in-person mediation on August 19, 2024, before the Honorable Diane M. Welsh (Ret.) in Philadelphia. Dkt. No. 75. In advance of the mediation, the Parties engaged in informal discovery, wherein Comcast provided information related to the issues in the lawsuit. Counsel Decl. ¶ 33. While Plaintiffs and Comcast made some progress towards a resolution, the mediation was ultimately unsuccessful, with the Parties reaching an impasse. *Id*.

On December 18, 2024, the Parties appeared before the Court for the purpose of presenting oral argument on the pending motions. However, after a conference with the Court prior to the argument, the Parties agreed to postpone the argument until March 27, 2025, to facilitate mediation and to allow Plaintiffs to file an Amended Consolidated Complaint. Dkt. Nos. 117, 119.

On January 24, 2025, Plaintiffs filed their Amended Consolidated Complaint. Dkt. Nos. 139, 140. The Amended Consolidated Complaint was the result of additional investigation by Co-Lead Counsel into the breach, including investigation conducted by outside experts that Co-Lead Counsel had retained, and incorporated new allegations regarding Comcast and Citrix's negligence, as well as the addition of Named Plaintiff Charolet Fail. *See id.*; Counsel Decl. ¶ 56.

On February 14, 2025, Defendants filed renewed Motions to Dismiss. Dkt. Nos. 158, 160, 161. Rather than renewing their facial challenge to Article III standing under Rule 12(b)(1) and

challenging Plaintiffs' claims under Rule 12(b)(6), Comcast made a factual challenge to this Court's jurisdiction to reach the merits under Rule 12(b)(1). *Id*. Citrix simultaneously filed a motion joining Comcast's standing arguments. *See* Dkt. No. 161 at 9. As part of its standing challenge, Comcast attached multiple declarations. In light of these declarations, and because Comcast for the first time raised a factual challenge to Article III standing, the Parties agreed to modify the briefing schedule to allow Plaintiffs to conduct targeted discovery related to Defendants' factual challenge to Plaintiffs' standing under Article III. Dkt. Nos. 166–67.

While this discovery was ongoing, the Parties also continued their mediation efforts. On March 12 and 13, 2025, all Parties met in person in Philadelphia for a two-day mediation with Judge Welsh. Although some progress was made, the Parties were unable to reach a settlement at that mediation. Following the mediation, and in order to protect the Class against Defendants' jurisdictional challenges, Plaintiffs filed companion cases in state court in Pennsylvania and California.[7] Counsel Decl. ¶ 74.

After conducting substantial jurisdictional discovery in response to Defendants' standing challenge, including taking multiple depositions, Plaintiffs filed their response in opposition to Defendants' Motions to Dismiss the First Amended Consolidated Class Action Complaint on April 30, 2025, along with a motion to strike Comcast's declarations. Dkt. Nos. 190, 191; Counsel Decl. ¶ 92. In support of their opposition, Plaintiffs retained several expert witnesses, who submitted supplemental declarations to support Plaintiffs' arguments as to Article III standing. *Id.* ¶ 93. Matthew Strebe opined that the hashed passwords impacted by the Data Breach are sensitive information that can easily be cracked, and therefore subject Plaintiffs and Class Members to a

---

[7] The Court has a full record regarding the procedural history of the state court actions. *See* Dkt. Nos. 174, 176, 177, 178, 180, 183, and 187. Both state court cases will be resolved through the Settlement before the Court.

risk of additional breaches and harms. *See* Dkt. No. 190-2. David Nelson opined that Plaintiffs' data was likely on the dark web. Dkt. No. 190-3. And Matthew K. O'Neill opined that Plaintiffs' experiences of fraud and identity theft were consistent with the information impacted by the Data Breach, and that Plaintiffs and Class Members are likely to face imminent and substantial near-term and long-term risks of fraudulent activity due to the Data Breach. Dkt. No. 190-4.

The Parties subsequently agreed to modify briefing deadlines to allow Comcast to take discovery regarding Plaintiffs' declarations. Dkt. Nos. 195, 196. On August 29, 2025, Defendants filed their replies in support of their motions to dismiss, Defendant Comcast filed a motion to exclude Plaintiffs' experts, and Defendants filed responses to Plaintiffs' motion to strike. Dkt. Nos. 222, 223, 224, 227, 229.

Additional briefing regarding the motions to dismiss and motions to strike were filed on September 19, 2025, and October 10, 2025. *See* Dkt. Nos. 238, 239, 240, 242, 243, 244, 253, 255, 257, 258. To accommodate this briefing, and to facilitate ongoing efforts by Co-Lead Counsel and defense counsel to mediate this litigation, on September 8, 2025, the Court rescheduled oral argument on the outstanding motions from September 24, 2025, to October 29, 2025. Dkt. No. 237.

On October 10, 2025, the Parties again met in person in Philadelphia for an all-day mediation with Judge Welsh. At the conclusion of the day, Plaintiffs and Comcast were able to reach a settlement in principle and signed a term sheet containing the essential provisions of their settlement. However, this resolution in principle did not release all Parties.

On October 21, 2025, the Court held a virtual status conference with the Parties to discuss the outcome of the October 10 mediation session, whether a global resolution with all Parties was possible, and whether the motion to dismiss hearing then-scheduled for October 29, 2025, would

proceed solely as to Citrix. Dkt. No. 268. During the status conference, the Court ordered the Parties back to mediation. Dkt. No. 269. Shortly thereafter, the Parties were able to schedule a mediation session with Judge Welsh, to be held on November 6, 2025.

On November 6, 2025, all Parties met in person in Philadelphia for an all-day mediation with Judge Welsh, but were ultimately unsuccessful in achieving global resolution of all Parties' claims. However, at Judge Welsh's urging, the Parties scheduled an immediate follow-up mediation on November 20, 2025, at which Plaintiffs and Comcast reached a settlement in principle that would achieve global resolution of the litigation whereby all Parties would be Released.

### C. Settlement Negotiations and Mediation

As demonstrated by the timeline above, settlement negotiations in this case were intense and protracted. All told, the Parties participated in six days of mediation with Judge Welsh: on August 19, 2024, March 12 and 13, 2025; October 10, 2025; November 6, 2025; and finally, November 20, 2025. Counsel Decl. ¶¶ 33, 72, 121, 127, 128. In preparation for the scheduled mediations, the Parties requested, exchanged, and reviewed extensive documents and information related to their claims and defenses. *Id.* The Parties also prepared for mediation by laying out their respective positions in the litigation—including with respect to the merits, class certification, damages, and settlement—in detailed mediation statements that they exchanged with each other and provided to the mediator. *Id.* Throughout the process, the Parties maintained an open dialogue concerning a potential settlement and engaged in scores of direct communications between counsel. Counsel Decl. ¶ 33. The Parties were therefore fully informed of the facts of the case, and the strengths and weaknesses of the litigation when reaching an agreement in principle to resolve the claims of Plaintiffs and Class Members.

In accordance with the terms of their Settlement, Class Counsel subsequently solicited competitive bids from multiple settlement administration companies, and Plaintiffs and Comcast agreed upon Kroll Settlement Administration LLC ("Kroll") to serve as Settlement Administrator. In conjunction with Kroll, Plaintiffs and Comcast prepared the Notice Plan, the form of the class notice, and other ancillary materials related to the Settlement.

Class Counsel now presents the Settlement Agreement to the Court for preliminary settlement approval and an order directing notice of the Settlement to the Settlement Class.

## III.    THE PROPOSED SETTLEMENT

The Settlement proposes, subject to Court approval, the following Settlement Class Definition:

> All persons residing in the United States and its territories who were sent individual notification of the Data Breach, which occurred in October 2023, and was publicly disclosed by Comcast in December 2023. Excluded from the Settlement Class are (i) Comcast, any entity in which Comcast has a controlling interest, and Comcast's officers, directors, employees, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; (iii) any individual who timely and validly opts out of the Settlement; and (iv) all individuals who on or before the filing of Plaintiffs' Motion for Preliminary Approval either (1) filed a written arbitration demand or petition against Comcast relating to the Data Breach but have not signed a release of their claims against the Released Parties, (2) provided written notice to Comcast that they are currently represented by counsel for an arbitration claim related to the Data Breach but have not signed a release of their claims against the Released Parties, or (3) released their claims against the Released Parties.

Settlement Agreement ¶ 2.36.

### A.  The Settlement Benefits

The Settlement Agreement provides for meaningful relief for all consumers impacted by the Data Breach through the establishment of a $117,500,000 non-reversionary Settlement Fund. SA ¶ 3.1. The Settlement Fund will be used to pay for Administrative Costs, any Court-approved Attorneys' Fees and Expenses and Service Awards, and any applicable taxes. The Settlement Fund

will also be used to pay for the costs of procuring Identity Defense Services and Restoration Services for all Settlement Class Members to help mitigate and prevent the harms flowing from the Data Breach. *See generally* Declaration of Gerald Thompson on Behalf of CyEx ("Thompson Decl."), attached at **Exhibit 4.**

All Class members are entitled to enroll in at least three years of CyEx Financial Shield Complete, which provides, among other things: 1-bureau credit monitoring; dark web monitoring; real-time authentication alerts; high-risk transaction monitoring; lost wallet protection; $1 million in identity theft insurance; security freeze assistance; victim assistance; financial transaction monitoring; monthly credit score tracking; fictitious identity monitoring; bank & financial account monitoring; address change monitoring; home title monitoring; and access to trained customer service agents to assist class members respond to suspicious activity. Thompson Decl. ¶ 4. The retail cost of buying the same Financial Shield Complete Service is $14.95 per month and $179.40 per year per individual. *Id.* ¶ 5. Importantly, the Notices will include an individual activation code and a link to a CyEx web page where Class members can immediately pre-enroll in the services, which will then be activated upon finality of the Settlement. *See* Notices and Claim Form.

After payment of the above costs out of the Settlement Fund, the remaining amount (the "Net Settlement Fund") will, subject to Court approval, be used to pay the Settlement benefits for the Settlement Class as detailed in the Consumer Settlement Benefits Plan. *See* Ex. B. Settlement Class Members will have the opportunity to submit claims for Out-of-Pocket Losses and Lost Time, or instead may request an Alternative Cash Payment. Comcast will also pay for any Notice Costs and Administrative Costs that, collectively, are in excess of $7.3 million (the "Excess Notice and Administrative Costs"), separate from and in addition to the $117.5 million payment required by Section 3.3 of the Settlement Agreement.

      1.  <u>Reimbursement of Out-of-Pocket Losses and/or Lost Time</u>

Any Settlement Class Members who have incurred verifiable unreimbursed costs or expenditures which the Settlement Class Member reasonably believes are fairly traceable to the Data breach may submit a claim seeking these "Out-of-Pocket Losses." Claims for Out-of-Pocket Losses must be supported by Reasonable Documentation supporting their claims. Settlement Class Members may also seek reimbursement for time spent remedying fraud, identity theft, or other misuse of their personal information that the Settlement Class Member reasonably believes is fairly traceable to the Data Breach and time spent taking preventative measures to avoid such losses. Claims for Lost Time must be supported by a certification detailing the amount of time expended and how the time was spent. Payments for Out-of-Pocket Losses and Lost Time will be subject to an aggregate claims cap of $10,000 per person. Benefits Plan §§ 3, 4, 7, 9.

      2.  <u>Alternative Cash Payments</u>

As an alternative to making a claim for Out-of-Pocket Losses and/or Lost Time, Settlement Class Members may request an Alternative Cash Payment of $50. Benefits Plan § 5. Settlement Class Members making a claim for Out-of-Pocket Losses and/or Lost Time are entitled to the greater of the approved claim for Out-of-Pocket Losses and Lost Time, or the amount available under this Alternative Cash Payments provision. *Id.* To the extent total valid claims are greater than or less than the Net Settlement Fund, all valid claims (including Alternative Cash Payments) will be adjusted upward or downward on a pro rata basis. Benefits Plan § 8.

**B.  The Notice and Claims Process**

      1.  <u>The Notice Plan</u>

The Notice Plan, as described in the attached declaration from Carla A. Peak of Kroll Settlement Administration LLC, provides for notice to be fully commenced (*i.e.*, substantially completed) no later than ninety (90) days after the Court enters the Preliminary Approval Order

(the "Notice Date"). *See* SA ¶ 2.23; Declaration of Carla A. Peak of Kroll Settlement Administration LLC ("Kroll Decl."), attached hereto as **Exhibit 5**.

### a. *Class Lists*

Within thirty (30) days after preliminary approval is entered, Comcast will provide the Settlement Administrator, Kroll, with a Class List that will include Settlement Class Members' full names and email addresses as reflected in Comcast's records, as well as a list of those individuals who on or before the filing of this preliminary approval motion, either (1) filed or served a written arbitration demand or petition against Comcast relating to the Data Breach but have not signed a release of their claims against the Released Parties, (2) provided written notice to Comcast that they are represented by counsel for an arbitration claim related to the Data Breach but have not signed a release of their claims against the Released Parties, or (3) released their claims against the Released Parties, and therefore are not Settlement Class Members. SA ¶ 2.36; *see also* Kroll Decl. ¶ 9.

### b. *Email Notice*

Upon receiving the Class List, the Settlement Administrator will then send a short-form notice via email (the "Email Notice") to all Settlement Class Members for which an email address is available on the Class List.[8] Kroll Decl. ¶ 12. Prior to distributing the Email Notice, all email addresses will be subject to a cleansing and validation process to, among other things, remove extra spaces and fix common domain name errors, as well as compare addresses against known bad email addresses and verify email existence with Internet Service Providers ("ISPs"). Kroll Decl. ¶ 13.

---

[8] A draft of the proposed Email Notice is attached as Exhibit A to the Kroll Declaration.

The Email Notice will be formatted to avoid common "red flags" that could cause the email to be blocked by spam filters. Kroll Decl. ¶ 14. For example, the content of the notice will be placed in the body of the email rather than as an attachment to avoid spam filters and improve deliverability. Additionally, the Email Notice will contain the Settlement Class Members' unique Claim ID and Identity Defense Services and Restoration Services enrollment code. *Id.*

The Settlement Administrator will attempt email delivery multiple times over a 48-hour period. *Id.* ¶ 15. The email campaign will return data regarding the number of emails successfully delivered and email "bouncebacks" for emails that were not delivered. *Id.* Typically, initial bouncebacks are temporary in nature and consist primarily of those that are blocked by ISPs, result from full inboxes on the Settlement Class Member's computers or result from some temporary technical difficulties. *Id.*

c. *Postcard Notice*

After the third email bounceback for an individual Settlement Class Member, Kroll will send a single postcard summary notice (the "Postcard Notice") to the Settlement Class Member's corresponding postal address on the Class List.[9] The Postcard Notice will contain the Settlement Class Members' unique Claim ID and Identity Defense Services and Restoration Services enrollment code. Kroll Decl. ¶ 16.

---

[9] A draft of the proposed Postcard Notice is attached as Exhibit B to the Kroll Declaration.

Prior to mailing, known postal addresses will be checked against the National Change of Address (NCOA)[10] database maintained by the USPS; certified via the Coding Accuracy Support System (CASS);[11] and verified through Delivery Point Validation (DPV).[12]

### d. *Settlement Website & Long Form Notice*

In addition to direct notice in the form of the Email Notice and Postcard Notice, Kroll will work with Class Counsel and Comcast's Counsel to create a dedicated Settlement Website.

The Settlement Website will provide the same information provided to Class Members in the Email Notice and Postcard Notice, and will also include a ten-page notice with additional details about the settlement (the "Long Form Notice").[13] The Long Form Notice contains more detailed descriptions of: all benefits provided under the Settlement; information about Class Counsel; all deadlines for Class Members related to the Settlement; how Class Members may make a claim for out-of-pocket losses or an Alternative Cash Payment; how to opt-out of the Settlement; how to object to the Settlement; and information about the Final Approval Hearing.

The Settlement Website will also: contain a summary of the Settlement; allow Settlement Class Members to contact the Settlement Administrator with any questions; provide notice of important dates such as the Final Approval Hearing, and the deadlines to submit Claim Forms, object, or opt out of the Settlement; allow Settlement Class Members to register their email address

---

[10] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[11] CASS is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[12] Records that are ZIP+4 coded are then sent through DPV to confirm known USPS addresses, as well as identify potential addressing issues that may hinder delivery.

[13] A draft of the proposed Long Form Notice is attached as Exhibit C to the Kroll Declaration.

and Identity Defense Services and Restoration Services code to receive a reminder email from CyEx when this service is ready for use; provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, such as Venmo, Zelle, PayPal, or ACH, or payment by check; and provide contact information if Class Members have questions about the Settlement, including a case-specific email address, P.O. Box, and toll-free help line (which will include the option to speak with a live operator). Kroll Decl. ¶¶ 23, 24.

The Settlement Website will additionally contain downloadable copies of relevant documents including the Complaint, Settlement Agreement, Preliminary Approval Order, Consumer Settlement Benefits Plan, Claim Form, Plaintiffs' Motion for Attorneys' Fees and Expenses and Service Awards, and any other materials agreed upon or required by the Court. *Id.* ¶ 23.

### 2. Claims Process and Administration

The timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to participate, opt out, or do nothing. Settlement Class Members will have one-hundred and twenty (120) days after the Notice Date to complete and submit their Claim Form to the Settlement Administrator either by mail or online. Benefits Plan § 9. The Claim Form is written in plain, easy-to-read English, and was developed with the assistance of the Settlement Administrator. *See generally* Claim Form, attached to Long Form Notice, Kroll Decl. at Ex. 3.

The Settlement Administrator will be responsible for reviewing the Claims Forms and any supporting documentation and determining if they are timely, complete, and valid. SA ¶ 8.1.1; Benefits Plan § 9. Should a claim be incomplete or defective, the Settlement Administrator shall

promptly notify the Claimant of the deficiencies and give the Claimant thirty (30) days to cure the defect(s). Benefits Plan § 11.

### 3. Requests for Exclusion and Objections

Settlement Class Members will have forty-five (45) days from the Notice Date to object or to submit a Request for Exclusion from the Settlement. SA ¶¶ 2.25, 2.26, 15.1, 16.1. This gives Settlement Class Members sufficient time to access and review the Settlement documents.

### C. Residual Funds after Distribution of Settlement Payments

Any remaining funds resulting from the failure of Settlement Class Members to timely negotiate a settlement check or to timely provide required tax information such that a settlement check could issue, shall be distributed to Settlement Class Members, used to extend Identity Defense Services and Restoration Services, or as otherwise ordered by the Court. Benefits Plan § 8. No funds may revert to Comcast. *Id.*; SA ¶ 3.2.

### D. Proposed Class Representative Service Awards

Settlement Class Representatives have been dedicated and active participants on behalf of the Class. Counsel Decl. ¶¶ 22, 94, 133. They assisted Class Counsel's investigation, participated in multiple interviews, provided supporting documentation and personal information throughout the litigation and in preparation for mediation, and assisted in compiling answers and documentation to respond to formal discovery. *Id.* ¶ 133. Almost all Settlement Class Representatives also sat for depositions, many of which were held in-person. *Id.* Plaintiffs also reviewed the complaints and the terms of the Settlement and communicated with their counsel regarding the Settlement. *Id.* Class Counsel kept in close contact with Plaintiffs during the litigation through numerous emails and personal telephone calls. *Id.* Plaintiffs have been vital in litigating this matter, have been personally involved in the case, and support the Settlement. *Id.*

Plaintiffs sacrificed more of their privacy for the sake of the Class, and the recovery would not have been possible if they had not done so. *Id.*

In view of these efforts on behalf of the Settlement Class, Class Counsel will separately move the Court for approval of Service Awards in the amount of $5,000 to each of the 11 proposed Class Representatives (a total of $55,000). SA ¶ 17.1.

### E. Attorneys' Fees and Reimbursement of Costs

Class Counsel separately will file a motion for an award of Attorneys' Fees and Expenses no later than 14 days prior to the deadline for objections and Requests for Exclusion. SA ¶¶ 2.25, 2.26, 2.23, 18.1. Class Counsel intend to request a fee award of up to one-third of the Settlement Fund, consistent with numerous precedents in this District and the Third Circuit. *Id.* ¶ 18.1. Any approved Fee Award and Costs will be paid out of the Settlement Fund. *Id.* ¶¶ 2.4, 3.2, 18.1. The Settlement is not conditioned upon the Court's award of Attorneys' Fees or Expenses. *Id.* ¶ 18.2.

### F. Release

In exchange for the valuable consideration described above, members of the Settlement Class will release Defendants from claims arising out or related to the Data Breach. SA ¶ 2.30. The release is tailored to cover the claims that were asserted or that could have been asserted by Settlement Class Members related to the Data Breach. *Id.* Defendants Comcast, Citrix Systems, Inc. and Cloud Software Group, Inc. are included in the definition of Released Parties. *Id.* at ¶ 2.32.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 23(e), "explicitly discusses the requirements for class settlements." *Hall v. Accolade, Inc.*, No. 17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019). At the preliminary approval stage, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The Court then decides whether "giving notice is justified by the parties' showing that

the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). "As part of a preliminary approval motion, courts can conduct a 'less rigorous analysis' than the final approval stage requires." *Barletti v. Connexin Software, Inc.*, No. 2:22-cv-04676, 2024 WL 1096531, at *2 (E.D. Pa. Mar. 13, 2024) (citing *In re Amtrak Train Derailment in Philadelphia, Pa.*, No. 15-md-2654, 2016 WL 1359725, at *4 (E.D. Pa. Apr. 6, 2016)). For preliminary approval, a court need only determine "[u]nder Rule 23(e)(2), [that] a settlement must be 'fair, reasonable, and adequate.'" *In re Phila. Inquirer Data Sec. Litig.*, No. 24-cv-2106, 2024 WL 4582881, at *8 (E.D. Pa. Oct. 25, 2024) (quoting Fed. R. Civ. P. 23(e)(2)). *Cf. Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (listing additional and more extensive factors a court must consider when determining the fairness of a class action settlement at the final approval stage).

In conducting their preliminary review, courts are also cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). If the district court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *1, *5 (E.D. Pa. Jan. 23, 2019) (granting preliminary approval of data breach settlement "because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement"). The Settlement Agreement easily meets these criteria.

**A. The Settlement Is Likely to Be Found "Fair, Reasonable, and Adequate" Under Rule 23(e)(2) and *Girsh* and Therefore Should Be Preliminarily Approved**

Rule 23(e)(2) sets forth the factors a court considers in determining the fairness of a class action settlement. Factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). *See also Girsh*, 521 F.2d at 157. As explained below, because the Court "will likely be able to approve" the Settlement at the final approval stage, the Rule 23(e)(1)(B) test for preliminary approval is clearly satisfied.

    1.   <u>The Class Representatives and Class Counsel Adequately Represented the Class.</u>

The Class Representatives and Proposed Class Counsel diligently and zealously advocated for the Class at all stages of this litigation, including through the multiple mediations that ultimately led to the Settlement.

Class Counsel are experienced and respected class action litigators with significant experience in data breach cases. *See* Lynch Carpenter LLP Resume, Ex. B to Majority Plaintiffs' Joint Application for Appointment of Leadership, Dkt. No. 22-3; Stueve Siegel Hanson LLP Resume, Ex. C to Majority Plaintiffs' Joint Application, Dkt. No. 22-4; Francis Mailman Soumilas, P.C. Resume, Ex. K to Majority Plaintiffs' Joint Application, Dkt. No. 22-12; Levin Sedran & Berman LLP Resume, Ex. L. to Majority Plaintiffs' Joint Application, Dkt. No. 22-13.

Prior to the November 2025 mediation, Class Counsel vigorously litigated the Action, including negotiating discovery orders, litigating scheduling disputes, opposing dispositive motions, and conducting discovery. Counsel Decl. ¶¶ 36, 39, 92, 93. Class Counsel reviewed approximately 8,000 pages of documents produced in discovery thus far, took seven depositions, and defended or were involved in preparations for all depositions of Settlement Class Representatives, and defended the three depositions of plaintiffs' experts. *Id.* ¶¶ 66, 91, 102, 103. And they had previously engaged in multiple full days of mediation in the midst of the ongoing litigation. *Id.* ¶¶ 33, 72, 121, 127, 128. Thus, all Parties had the benefit of substantial information about the facts of the case and the Parties' respective positions entering the concluding mediation.

Following the mediation, Class Counsel spent significant amounts of time drafting the Settlement Agreement and its exhibits, revising those drafts, and negotiating details of the final written Settlement Agreement (and securing the cost-efficient services of a skilled Settlement Administrator through competitive bidding). *Id.* ¶¶ 129, 130, 132.

## 2. The Proposed Settlement Was Negotiated at Arm's Length

As noted above, the Settlement is the product of hard-fought, arm's-length negotiations and a protracted mediation overseen by retired Judge Diane M. Welsh, an experienced mediator. This factor supports approval of the Settlement. *See In re Wawa, Inc. Data Sec. Litig.*, 141 F.4th 456, 462 n.2 (3d Cir. 2025) (describing Judge Welsh as "an experienced mediator . . . who had previously resolved over 5,000 cases"); *Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-cv-784, 2021 WL 5235221, at *6 (E.D. Pa. Nov. 9, 2021) (observing that "the parties worked with the Honorable Diane M. Welsh, an experienced mediator, to facilitate arms' length negotiations, which weighs in favor of finding adequacy"); s*ee also In re Onix Grp., LLC Data Breach Litig.*, No. CV 23-2288-KSM, 2024 WL 3015528, at *4 (E.D. Pa. June 14, 2024) ("*Onix Group I*") (observing

that the parties worked with an "experienced mediator . . . to facilitate arms' length negotiations, which weighs in favor of finding adequacy."). Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *Galt v. Eagleville Hosp.,* 310 F. Supp. 3d 483, 493 (E.D. Pa. 2018) (finding arm's-length negotiations between experienced counsel, before an experienced and independent mediator, with the benefit of a pre-settlement investigation into relevant facts, were factors that weighed in favor of finding that settlement was presumptively fair); *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator).

At all times, the Parties' negotiations were at arm's length and, while courteous and professional, were contentious and hard-fought on all sides. Accordingly, this factor weighs strongly in favor of preliminary approval.

### 3.  The Relief Provided for the Class is Adequate

This case and the proposed Settlement are the product of significant investigation and prosecution of Plaintiffs' and Settlement Class Members' claims. Class Counsel: (1) conducted extensive and lengthy interviews of Plaintiffs; (2) reviewed the Plaintiffs' documentation and all documents that Comcast produced regarding the Data Breach prior to mediation; (3) conducted substantial discovery including taking several 30(b)(6) depositions of Comcast employees, reviewing thousands of documents produced by Defendants, and issuing third-party subpoenas; (4) retained and consulted with experts; (5) fully briefed two sets of motions to dismiss, including defending a factual challenge to Article III standing; and (6) analyzed the applicable laws of Pennsylvania and other jurisdictions regarding breaches of customers' Personal Information. The

Parties also engaged in substantial mediation discovery, exchanging documents pursuant to Fed. R. Evid. 408 as well as detailed mediation statements.

Based on the information obtained from this discovery and prosecution of Plaintiffs' claims, Class Counsel's independent investigation of the relevant facts and applicable law, and Class Counsel's broad experience with other complex and novel cases, Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.[14]

> a. *The Proposed Settlement avoids the considerable costs, risks, and delay of continued litigation*

To determine whether a settlement provides adequate relief to the Class, the Court must evaluate "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), which involves considering the "complexity, expense, and likely duration of the litigation," were this case to proceed to trial, in relation to the Plaintiff's "likelihood of success" on the merits. *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-cv-6160, 2018 WL 10133574, at *3 (D.N.J. June 29, 2018).

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Class Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. Had the case not resolved, the parties here would be facing "significant expenses in briefing and arguing class certification, summary

---

[14] Additionally, the Settlement provides relief as good or better than the relief provided by other settlements in cases of similar scale. *See, e.g., In re T-Mobile Customer Data Sec. Breach Litig.*, No. 4:21-MD-03019-BCW, 2023 WL 11878508, at *3 (W.D. Mo. June 29, 2023) ($350 million for 100 million class members), *rev'd on other grounds*, 111 F.4th 849 (8th Cir. 2024); *In re Cap. One Consumer Data Sec. Breach Litig.*, MDL No. 1:19-md-2915 (AJT/JFA), 2022 WL18107626, at *1, 6 (E.D. Va. Sept. 13, 2022) ($190 million for 98 million class members); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1257–58 (11th Cir. 2021) ($380.5 million for 147 million class members); *In re Yahoo! Inc. Customer Data Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *10 (N.D. Cal. July 22, 2020) ($117.5 million for 194 million class members).

judgment, expert reports, and maintaining class certification throughout trial." *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023). *See also In re Philadelphia Inquirer Data Sec. Litig.*, No. CV 24-2106-KSM, 2025 WL 845118, at *9-10 (E.D. Pa. Mar. 18, 2025) (acknowledging expense and challenges of class certification, summary judgment, and trial in data breach class action); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Craig v. Rite Aid Corp*., No. 4:08-cv-2317, 2013 WL84928, at *9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources.").

These risks are not theoretical. If not for the Settlement, Plaintiffs would be faced with the task of extensive and contentious motion practice including moving for class certification and/or opposing Defendants' motions for summary judgment, which could have resulted in dismissal of this case. And numerous courts have recognized the substantial risks associated with litigating data breach class actions. *See*, *e.g.*, *Onix Group I*, 2024 WL 3015528, at *10, *granting final approval,* 2024 WL 5107594, at *1–2 (E.D. Pa. Dec. 13, 2024) ("*Onix Group II*") ("Plaintiffs face a significant risk in this case because they must prove not only that Defendant owed a duty to Plaintiffs to safeguard their information, but also that their conduct was the proximate cause of that breach."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 12-cv-1415, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class

certification stage.") (internal citations omitted); *Maldini v. Marriott Int'l, Inc.*, 140 F. 4th 123 (4th Cir. 2025) (reversing class certification for second time in data breach litigation); *Theus v. Brinker Int'l Inc.*, No. 3:18-CV-686-TJC-MCR, 2025 WL 1786346, at *4 (M.D. Fla. June 27, 2025) (denying class certification in data breach litigation).

Even if Plaintiffs prevailed at class certification and summary judgment, Plaintiffs would have incurred significant costs proving their case through discovery and at trial. *See, e.g., Fulton-Green v. Accolade, Inc.*, No. 18-cv-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (recognizing that continued litigation "would be a time consuming and expensive process that would delay relief for class members"); *In re Yahoo!*, 2020 WL 4212811 (LHK), at *8 (approving settlement after finding, among other things "[l]itigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony"), *appeal dismissed*, No. 20-cv-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense").

Although Class Counsel are confident in their ability to overcome these challenges, they create risks for the Class that must be weighed against value of any potential recovery after trial and any appeals of a verdict. The $117,500,000 monetary recovery here appropriately balances the strength of Plaintiffs' case against the risks and potential outcomes of continued litigation. *See Geis v. Walgreen Co.*, No. 07-cv-4238, 2010 WL 11570447, at *12 (D.N.J. Sept. 30, 2010) (finding that several obstacles at trial meant that "the risks of continued litigation and the benefits of immediate settlement favor settlement").

> b. *The Settlement provides for an effective method of distributing relief to the class, including through a simplified claims process*

The Settlement creates a straightforward procedure for Settlement Class Members to submit a Claim Form that can be used to participate in the Settlement. *See generally* Benefits Plan, Ex. 2. The Settlement also provides for effective Notice to Settlement Class Members via the Email Notice, and, where email is unavailable, Postcard Notice, using available Settlement Class Member contact information provided to the Settlement Administrator by Comcast and further supplemented by posting the Long Form Notice to the Settlement Website, and additional means as may become necessary. SA ¶ 9; Kroll Decl. ¶¶ 11-19. This factor further supports the fairness of the Settlement. *See Barletti*, 2024 WL 1096531, at *6 (preliminarily approving settlement where class members would be notified of data breach settlement by the same means they received notice of the breach and were given a "straight-forward claims process that offers them a choice of relief"); *see also In re Canon USA Data Incident Litig.*, No. 20-cv-6239, 2023 WL 7936207, at *4 (E.D.N.Y. Nov. 15, 2023) (granting preliminary approval to data breach settlement under which class members could claim ordinary losses, extraordinary losses, and credit monitoring).

> c. *The proposed attorneys' fee award is reasonable*

Class Counsel have devoted significant time and financial resources on this litigation and will continue to do so throughout the duration of settlement approval, any appeals, and the claims administration process. Class Counsel have committed these resources despite the uncertainty of obtaining and maintaining class certification, surviving summary judgment, and ultimately prevailing on the merits, including establishing class-wide damages that could withstand appeal.

In accordance with the terms of the Settlement Agreement and as stated in the Notices to Class Members, at least fourteen (14) days before the deadline for Objections and Requests for Exclusion, Class Counsel will file a motion requesting costs plus attorneys' fees of up to one-third

of the Settlement Fund, to be paid from the Settlement Fund subject to Court Approval. SA ¶ 18.1. As will be discussed in detail in the forthcoming Fee Award and Cost motion, this amount is reasonable and well within the range of fees approved by this Court in other common fund class action settlements. *See*, *e.g.*, *Phila. Inquirer*, 2025 WL 845118, at \*15 (approving a 33.33% fee and noting that "[c]ourts in the Third Circuit have identified contingent fee requests of this magnitude as squarely within the range of awards found to be reasonable") (citation omitted); *Onix Group II*, 2024 WL 5107594, at \*14 (approving 33% fee where no motion to dismiss was filed and recognizing that "courts regularly approve fee awards around this size"); *Gravely v. PetroChoice LLC*, No. 19-cv-5409, 2022 WL 2316174, at \*2 (E.D. Pa. June 28, 2022) (finding 35% fee "in line with fee awards approved by courts in the Third Circuit").

> ### d. There are no additional agreements required to be identified under Rule 23(e)

Rule 23(e) requires "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). In this case, the Settlement Agreement and related exhibits contain all the agreements and understandings between Plaintiffs and Comcast; there are no "side agreements" that could negatively impact the Settlement Class. Counsel Decl. ¶ 131.

### 4. The Settlement Treats Class Members Equitably Relative to Each Other

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)).

The proposed Settlement treats all Settlement Class Members fairly and equally relative to each other and in relation to the strengths of their claims. For purposes of setting recovery amounts,

the Settlement fairly protects the interests of all parties by providing cash compensation for demonstrated out-of-pocket losses and lost time, the option of an alternative cash payment with a lower proof threshold, and three years of valuable Identity Protection Services made available to all Settlement Class Members regardless of whether they make a claim. Courts have approved similar settlement allocation structures in other data breach settlements. *See*, *e.g.*, *Onix Group I,* 2024 WL 3015528, at *5–11 (granting preliminary approval to settlement giving class members choice of up to $5,000 for documented losses or a *pro rata* share of net settlement fund without documentation of loss); *Onix Group II*, 2024 WL 5107594, at *1–2 (granting final approval); *Barletti*, 2024 WL 1096531, at *6 (granting preliminary approval of settlement that allowed claimants to choose between credit monitoring and insurance services, reimbursement of actual out-of-pocket losses, or a cash payment), granting final approval, 2024 WL 3564556 (E.D. Pa. July 24, 2024); *Bianucci v. Rite Aid Corp.*, No. 2:24-CV-03356-HB, 2025 WL 704284 (E.D. Pa. Mar. 4, 2025) (granting preliminary approval to data breach settlement with similar structure).

In sum, the Settlement ensures the Settlement Class Members will be treated equitably relative to each other and should be approved as fair, reasonable, and adequate.

### B. The Settlement Satisfies All the Applicable *Girsh* Factors

In addition to addressing the Rule 23(e)(2) preliminary approval factors, courts in this Circuit may also consider the *Girsh* factors when assessing the fairness of a settlement. The nine *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Suboxone (Buprenorphine Hydorchloride and Naloxone) Antitrust Litig.*, No. 13-md-2445, 2023 WL 8437034, at *5 (E.D. Pa. Dec. 4, 2023) (quoting *Girsh*, 521 F.2d at 157).

Because the Rule 23(3)(2) factors and the *Girsh* factors overlap with each other to a significant extent, courts need not separately address the two sets of factors. *See Dixon v. Lincoln Univ.*, No. CV 24-1057-KSM, 2025 WL 1373676, at *8 n.3 (E.D. Pa. May 12, 2025) (explaining that after analyzing the *Girsh* factors, the court would not separately address Rule 23(e)(2) considerations because they "substantially overlap" with the *Girsh* factors and other guidance[15] from the Third Circuit Court of Appeals). Courts have additionally noted that not all *Girsh* factors must be considered at preliminary approval, as the factors are primarily meant to guide the Court's analysis at *final* approval. *See, e.g., Curiale v. Lenox Grp., Inc.*, No. CIV A 07-1432, 2008 WL 4899474, at *9 n.4 (E.D. Pa. Nov. 14, 2008) ("At the preliminary approval stage, however, we need not address all of [the *Girsh*] factors, as the standard for preliminary approval is far less demanding."); *Copley v. Evolution Well Servs. Operating LLC*, No. 2:20-CV-01442-CCW, 2023 WL 1878581, at *2, n.1 (W.D. Pa. Feb. 10, 2023) (same).

Here, all the applicable additional *Girsh* factors also support preliminary approval of the proposed Settlement.

The first, fourth, fifth, and sixth *Girsh* factors favor preliminary approval in light of the significant risks that Plaintiffs face in establishing liability, establishing damages, and maintaining class certification through trial, and the substantial costs of protracted litigation. *See Phila. Inquirer*, 2025 WL 845118, at *9–10 (acknowledging expense and challenges of class

---

[15] *See In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (noting that it "may be helpful to expand the *Girsh* factors to include, when appropriate," several "non-exclusive factors" identified in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998)). The *Prudential* factors will be discussed in Plaintiffs' motion for final approval.

certification, summary judgment, and trial in data breach class action); *Wawa*, 2023 WL 6690705, at *7 (noting that absent settlement, plaintiffs would face "significant expenses in briefing and arguing class certification, summary judgment, expert reports, and maintaining class certification throughout trial."); *Onix Group II*, 2024 WL 5107594, at *10 ("Plaintiffs face a significant risk in this case because they must prove not only that Defendant owed a duty to Plaintiffs to safeguard their information, but also that their conduct was the proximate cause of that breach.").

The second *Girsh* factor is neutral, as it is too early to evaluate the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this Settlement, Class Notice will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the Settlement. Notably, however, Plaintiffs, whose interests are aligned with the Settlement Class, support the Settlement.

The third *Girsh* factor also weighs in favor of preliminary approval. This factor asks whether sufficient discovery has been completed to provide the parties with a "clear view of the strengths and weaknesses of their cases." *In re Ravisent Techs., Inc. Sec. Litig.*, No. CIV.A.00-CV-1014, 2005 WL 906361, at *8 (E.D. Pa. Apr. 18, 2005) (internal citations omitted). This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"). As described above, Class Counsel engaged in substantial discovery prior to this Settlement. Class Counsel reviewed approximately 8,000 pages of documents produced by Defendants, took seven depositions, defended the depositions of almost all of the Settlement Class Representatives, as well as three of Plaintiffs' experts. The Parties also exchanged confidential disclosures of additional information in advance of the multiple mediations that took place to date. Class Counsel therefore

had more than sufficient information, along with the help of Judge Welsh, to assess the Settlement in light of the strengths of the case and determined that the Settlement is fair, reasonable, and adequate.

The seventh *Girsh* factor also favors preliminary approval, or is at least neutral. "[C]ourts within the Third Circuit 'regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts.'" *Kelly v. Santander Consumer USA, Inc.*, No. CV 20-3698, 2023 WL 8701298, at *4 (E.D. Pa. Dec. 15, 2023) (quoting *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013)). However, this *Girsh* factor "is largely irrelevant" where, as here, "there is no reason to believe that [d]efendants face any financial instability." *Phila. Inquirer*, 2025 WL 845118, at *10 (citation omitted).

Finally, the Settlement should also be preliminarily approved under the eighth and ninth *Girsh* factors because it is reasonable "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. The reasonableness inquiry compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, [against] the amount of the proposed settlement." *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)). Here, the risk of continued litigation is significant, making the instant settlement—which provides significant relief to the class immediately, without the risk of years of protracted litigation that will result in a $0 recovery—even more reasonable. *See Braun v. Philadelphia Inquirer, LLC*, No. 22-CV-4185-JMY, 2025 WL 1314089, at *10 (E.D. Pa. May 6, 2025) (Younge, J.) (finding this *Girsh* factor supported approval where plaintiffs "potentially face[d] litigating a costly and time-

consuming case with the possible risk of recovering no financial compensation for the Settlement Class").

For these reasons, the Court should find that it will likely be able to approve the proposed settlement, and order notification of the proposal to be disseminated to the Class.

### C. The Proposed Settlement Class Satisfies the Criteria of Rule 23 and Should be Certified for Settlement Purposes.

The Court should also find that it will likely be able to certify a settlement class under Rule 23. "In addition to reviewing the terms of settlement, a court at the preliminary approval stage may conditionally certify the class for purposes of providing notice, with the final certification decision to be made at the subsequent fairness hearing." *Checchia v. Bank of Am., N.A.*, No. 21-cv-3585, 2023 WL 2051147, at *2 (E.D. Pa. Feb. 16, 2023) (citing *In re Nat'l Football League*, 301 F.R.D. at 199–200). Courts typically certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620–22 (1997); *Phila. Inquirer*, 2025 WL 845118, at *4; *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-CB-27242, 2025 WL 754567, at *3–4 (E.D. Pa. Mar. 7, 2025); *Fulton-Green*, 2019 WL 316722, at *2. The Settlement Class meets the applicable criteria for conditional certification.

#### 1. The Settlement Class is Ascertainable

As a preliminary matter to certification, a class must be ascertainable. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). Ascertainability requires that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasibly mechanism for determining whether putative class members fall within the class definition.'" *Portillo v. Nat'l Freight, Inc.*, 336 F.R.D. 85, 96–97 (D.N.J. 2020) (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)). The proposed Settlement Class is readily ascertainable because Settlement Class Members can be identified and notice provided using

Comcast's own records. *See Onix Group I*, 2024 WL 3015528, at *2 ("The class here is clearly ascertainable because the parties were able to determine the exact number and identities of individuals whose data could have been compromised using Defendant's records . . . .").

### 2. <u>The Settlement Class Satisfies the Criteria of Rule 23(a)</u>

The proposed Settlement Class satisfies all requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

#### a. *Numerosity*

The Settlement Class contains approximately 31,658,000 members. SA ¶ 3.4. The Class thus easily satisfies the Rule 23(a)(1) numerosity requirement. *See Fulton-Green*, 2019 WL 316722, at *3 ("proposed class [of] 973 people, easily meet[s] the numerosity requirement").

#### b. *Commonality*

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527–28 (3d Cir. 2004). The commonality threshold is low, and a finding of commonality "does not require that all class members share identical claims." *Braun*, 2025 WL 1314089, at *4 (citing *In re Warfarin*, 391 F.3d at 530). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted).

Here, the facts relating to Data Breach are the key issues in the case. There are multiple common questions, including how the Data Breach occurred, whether the Defendants had a duty

to protect Settlement Class Members' Personal Information, and whether Settlement Class Members were harmed by the alleged breach. By example, Judge Pratter, when deciding whether to certify a settlement class in the *In re Wawa* data breach litigation, found the commonality requirement easily met, noting that "each of the class members would have to prove by a preponderance of the evidence that Wawa owed a duty to each [class member] to protect its credit card data. They would all have to show that Wawa's specific negligent acts or omissions caused the data breach to occur and whether proximate cause existed." *In re Wawa*, 2023 WL 6690705, at *4.

The Class therefore raises common questions of law and fact which arise from a "common nucleus of operative facts" with respect to their claims against Defendant. *See In re Centocor, Inc. Secs. Litig. III*, No. 2:98-CV-00260, 1999 WL 54530 at *2 (E.D. Pa Jan. 27, 1999).

### c. Typicality

Rule 23(a)(3) requires that "the claims of the named Plaintiffs must be typical of the claims of the class" and "[t]he Court must discern whether the named Plaintiffs and the other members of the class are challenging the same unlawful conduct." *Braun*, 2025 WL 1314089, at *5 (Younge, J.). The typicality inquiry is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *In re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724, 2025 WL 1550100, at *1 (E.D. Pa. May 30, 2025) (citation and internal quotation marks omitted); *Hall*, 2019 WL 3996621, at *7 (same). "When a defendant has engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Sherman v. American Eagle Exp., Inc.*, No. 09-575, 2012 WL 748400, at *5 (E.D. Pa. March 8, 2012) (citing

*In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001)). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Inj. Litig.,* 821 F.3d 410, 428 (3d Cir. 2016).

Here, typicality is satisfied because the claims of the Class Representatives are "virtually identical to those of the class," as they "arise from the same conduct" and involve the same questions, *i.e.*, whether Comcast's security measures "were adequate to protect [Plaintiffs'] sensitive data." *Onix Group I*, 2024 WL 3015528, at *3 (citing *In re Wawa*, 2023 WL 6690705, at *4) (internal quotation marks omitted). *See also Braun*, 2025 WL 1314089, at *5 (Younge, J.) (finding plaintiffs' claims "essentially identical to those of the other Settlement Class members" because they all relate to "the same alleged conduct by Defendant, and Defendant's liability does not depend on the individualized circumstances of Plaintiffs"). Accordingly, typicality is satisfied here.

### d. Adequacy

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class."

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. & Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (citations and internal quotation marks omitted). *See also Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *3 (E.D. Pa. Dec. 1, 2004) (same).

Here, adequacy is readily met. The Representative Plaintiffs have been actively involved in the litigation of this case and have assisted throughout the process: answering Class Counsel's many questions, providing documents pertaining to the lawsuit when requested, responding to discovery requests, sitting for depositions, and reviewing the complaint and terms of the Settlement. Their interests are wholly aligned with those of the other Settlement Class Members: all are equally interested in proving the factual averments in the Complaint, establishing the Defendants' liability, and obtaining compensation from the Defendants.

Moreover, Class Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including many similar class action suits related to data breaches. *See Braun*, 2025 WL 1314089, at *5 (Younge, J.) (finding adequacy met where class counsel "represented to the Court that they possess extensive experience in class action litigation"). Class Counsel have vigorously prosecuted this action from the outset, even before their appointment, and have devoted substantial effort and resources on behalf of the Class and have achieved an outstanding result. Counsel Decl. ¶¶ 1, 2, 134.

### 3. The Settlement Class Satisfies the Criteria of Rule 23(b)

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Under Rule 23(b)(3), a class may be certified when the court finds that (1) common questions of law or fact predominate over individual issues and (2) a class action would be superior to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential*, 148 F.3d at 316.

Plaintiffs readily meet both requirements.

      *a.  Predominance*

"Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if common questions of law or fact predominate questions arguably affecting only individuals." *Fulton-Green*, 2019 WL 4677954, at *6. "When examining whether certain issues predominate, a court looks to see if 'common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *4 (E.D. Pa. July 30, 2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)); *see also Onix Group I*, 2024 WL 3015528, at *4 ("In this data breach litigation, Defendant's conduct is common to all class members, and all class members were harmed by that conduct."). Importantly, "the presence of individual questions does not *per se* rule out a finding of predominance" and if common issues "overwhelm individual issues, predominance should be satisfied." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 371 (3d Cir. 2015). The Third Circuit has also emphasized that it is "more inclined to find the predominance test met in the settlement context." *In re NFL*, 821 F.3d at 434 (quoting *Sullivan*, 667 F.3d at 304 n.29).

      Here, as in the *Wawa* data breach litigation, "a myriad of questions of law and fact predominate. 2021 WL 3276148, at *4. These questions include whether the Defendants owed a duty to Settlement Class Members to safeguard their sensitive information; whether the Defendants breached that duty; whether the Defendants violated state consumer protection laws; whether the Defendants complied with industry standards; whether the Defendants' conduct or failure to act was the proximate cause of the breach; and whether plaintiff and the class members are entitled to recovery. *See id.*

b. *Superiority*

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 264 (E.D. Pa. 2012). Rule 23(b)(4) suggests that courts consider the following non-exhaustive list of factors when making a superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

All four considerations weigh in favor of certifying the Settlement Class here. There is no indication that Settlement Class Members would be interested in litigating individually there are no litigation should proceed in a non-class action. In addition, the cost and complexity of litigation would preclude the vast majority of Settlement Class Members from filing suit individually.[16] The Settlement, in contrast, provides Settlement Class Members with an immediate monetary benefit and access to Identity Defense Services and Restoration Services.

As this Court summarized in another data breach case:

[A]ll of the claims are almost identical because they arise from the same underlying activity and the damages should be easily provable and quantifiable. Furthermore, the value of the individual claims may be modest and thus impractical to litigate on a case by case basis. This is particularly true for people . . . who have not suffered identity theft but have had to spend time notifying institutions and signing up for identity theft protection programs.

---

[16] Because Plaintiffs and Comcast request certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems . . . [because] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord Sullivan*, 667 F.3d at 322 n.56; *Processed Egg Prods.*, 284 F.R.D. at 264.

*Fulton-Green*, 2019 WL 316722, at *4 (preliminarily certifying Rule 23(b)(3) class).

For the foregoing reasons, the Court should preliminarily certify the Settlement Class as the criteria of Rules 23(a) and 23(b)(3) are clearly met.

### D. The Proposed Notice Program to Class Members Should be Approved.

Pursuant to Rule 23(c)(2)(B), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." There are three aspects to notice requirements under Rule 23 and fundamental due process: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content must be of "such nature as reasonably to convey the required information"; and (3) the notice must "afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted); *see also In re NFL*, 821 F.3d at 435. The proposed Notice Plan achieves all these objectives.

As set forth above, upon entry of preliminary approval, Comcast will provide the Settlement Administrator with a Class List, which will include Class Members' full names and email addresses. The Settlement Administrator will then send the Email Notice directly to Class Members, using the information that Comcast provides. The Email Notice will be enhanced by the mailed Postcard Notice, which will reach the majority of Class Members who are unable to be reached via email. The Email Notice and Postcard Notice will be further supplemented by the Settlement Website, which the Settlement Administrator will establish and maintain, as well as posting of the Long Form Notice on the Settlement Website. The Settlement Administrator will also establish a case-specific email address, P.O. Box, and toll-free help line (including live

operators) to provide Class Members with information about the Settlement and to respond to Class Members' questions after Notice is provided.

Direct notice alone is estimated by Kroll to reach at least 90% of Settlement Class Members. Kroll Decl. ¶ 19. This notice would fall at the upper end of what courts have found to be a reasonable notice plan, and is consistent with Federal Judicial Center guidelines, which state that a notice plan reaching over 70 percent of the class is reasonable.[17] *See*, *e.g.*, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 527 F. Supp. 3d 269, 273 (E.D.N.Y. 2021) (citing Federal Judicial Center guidelines and endorsing notice plan with 80% expected reach).

The Email Notice, Postcard Notice, and Long Form Notice also use "plain, easily understood language," as required by Rule 23(c)(2)(B) to describe the terms of the Settlement. All three Notices: provide information about the forthcoming request for $5,000 service awards for the Settlement Class Representatives; state that Class Counsel will apply for an award of attorneys' fees equal to one-third of the Settlement Fund and, separately, reimbursement of expenses; inform Class Members how to object to the Settlement or opt-out and the deadline for doing so; provide the date, time, and place of the Final Approval Hearing, and the procedures for appearing at the hearing; and provide contact information for Class Counsel and the Settlement Administrator. *See* Email Notice, Kroll Decl. at Ex. A; Postcard Notice, Kroll Decl. at Ex. B; Long Form Notice, Kroll Decl. at Ex. C.

The Notices specifically inform Settlement Class Members of the deadlines for objecting to the Settlement (45 days after the Notice Date) and excluding themselves from the Class (45 days after the Notice Date). These deadlines are also objectively reasonable. *See In re Nat'l Football*

---

[17] Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last accessed December 23, 2025)

*League*, 301 F.R.D. at 203 ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves.").

Accordingly, the Court should approve the Notice Plan as the best notice practicable under the circumstances.

### E.  The Court Should Appoint Settlement Class Counsel

Plaintiffs request that the Court appoint Co-Lead Counsel Gary F. Lynch of Lynch Carpenter LLP and Norman E. Siegel of Stueve Siegel Hanson LLP, and Co-Liaison Counsel James A. Francis of Francis Mailman Soumilas, P.C. and Charles E. Schaffer of Levin Sedran & Berman LLP, collectively, as Class Counsel for the Settlement Class. The Court previously appointed these lawyers, Dkt. No. 51, who have vigorously represented Plaintiffs' and Settlement Class Members' interests at all times since the inception of this litigation and have secured an outstanding settlement for the Class. For the same reasons that appointment was appropriate when the Court granted the Rule 23(g) motion, it should appoint Class Counsel for Settlement purposes, because they continue to meet all the Fed. R. Civ. P. 23(g)(1)(A) criteria.

## V.    CONCLUSION

Plaintiffs respectfully request that the Court enter an Order: (1) preliminarily approving the Settlement (described herein and attached hereto) as fair, reasonable and adequate for the Settlement Class; (2) conditionally certifying the Settlement Class for settlement purposes only; (3) approving the proposed Notice Plan; (4) approving the opt-out and claims procedures and deadlines set forth in the Settlement Agreement; (5) appointing the Settlement Class Representatives to serve as Class Representatives; (6) appointing Co-Lead Counsel Gary F. Lynch of Lynch Carpenter LLP and Norman E. Siegel of Stueve Siegel Hanson LLP, and Co-Liaison

Counsel James A. Francis of Francis Mailman Soumilas, P.C. and Charles E. Schaffer of Levin Sedran & Berman LLP, to serve as Class Counsel; (7) appointing Kroll to serve as the Settlement Administrator; (8) appointing CyEx to serve as the Provider of Identity Defense Services and Restoration Services; and (9) scheduling a Final Approval Hearing.

Dated: December 23, 2025                    Respectfully submitted,

*/s/ Norman E. Siegel*                      */s/ Gary F. Lynch*
Norman E. Siegel                            Gary F. Lynch (PA No. 56887)
**STUEVE SIEGEL HANSON LLP**                **LYNCH CARPENTER LLP**
460 Nichols Rd., Ste. 200                   1133 Penn Avenue, 5th Floor
Kansas City, MO 64112                       Pittsburgh, PA 15222
T: (816) 714-7100                           Telephone: (412) 322-9243
siegel@stuevesiegel.com                     gary@lcllp.com

*Co-Lead Interim Class Counsel*             *Co-Lead Interim Class Counsel*

Charles E. Schaffer (PA No. 76259)          James A. Francis (PA No. 77474)
**LEVIN SEDRAN & BERMAN LLP**               **FRANCIS MAILMAN SOUMILAS, P.C.**
510 Walnut Street, Suite 500                1600 Market Street, Suite 2510
Philadelphia, PA 19106                      Philadelphia, PA 19103
T: (215) 592-1500                           T: (215) 735-8600
cschaffer@lfsblaw.com                       jfrancis@consumerlawfirm.com

*Co-Liaison Counsel*                        *Co-Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 23rd day of December, 2025, a true and correct copy of the above and foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

*/s/ Gary F. Lynch*
Gary F. Lynch
